UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. GARY S. KATZMANN, JUDGE

ETEROS TECHNOLOGIES USA, INC.,

Plaintiff,

v.

UNITED STATES,

Defendant.

Court No. 25-00036

**ORDER**

Upon reading plaintiff's motion for entry of an expedited scheduling order, defendant's response thereto; and upon consideration of other papers and proceedings had herein, it is hereby

**ORDERED** that plaintiff's motion be, and hereby is, denied.

_______________________________
GARY S. KATZMANN, JUDGE

Dated: ____________________, 2025
New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. GARY S. KATZMANN, JUDGE

ETEROS TECHNOLOGIES USA, INC.,

Plaintiff,

v.

UNITED STATES,

Defendant.

Court No. 25-00036

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR ENTRY OF AN EXPEDITED SCHEDULING ORDER PURSUANT TO USCIT R. 3(g)**

MICHAEL GRANSTON
Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

AIMEE LEE
Assistant Director

GUY R. EDDON
Senior Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
(212) 264-9232 or 9230
*Attorneys for Defendant*

Of Counsel:
Alexandra Khrebtukova
Zachary Simmons
Office of the Assistant Chief Counsel
U.S. Customs and Border Protection

## TABLE OF CONTENTS

BACKGROUND AND PROCEDURAL POSTURE ........................................................1

ARGUMENT ........................................................................................................3

I. STANDARD OF REVIEW ..........................................................................3

II. ETEROS'S MOTION TO EXPEDITE SHOULD BE DENIED ............................4

A. Eteros Fails To Demonstrate Good Cause To Grant The Motion To Expedite .4

B. The Court Lacks Subject Matter Jurisdiction Over Eteros's Claims .................7

C. Eteros's Request For Declaratory Relief Is Unfounded ....................................9

CONCLUSION ....................................................................................................13

# TABLE OF AUTHORITIES

**Cases**

*Aetna Cas. & Surety Co. v. Quarles*,
92 F.2d 321 (4th Cir. 1937) ....................10

*Eteros v. United States*,
Case No. 25-181 (W.D. Wa. Jan. 29, 2025) ....................11

*Eteros Technologies USA, Inc. v. United States*,
592 F. Supp. 3d 1313 (Ct. Int'l Trade 2022) ....................1, 8

*J.D. Irving, Ltd. v. United States*,
570 F. Supp. 3d 1349 (Ct. Int'l Trade 2022) ....................3, 5, 6, 7

*John v. Essentia Ins. Co.*,
708 F. Supp. 3d 694 (D. Md. 2023) ....................10

*Ontario Forest Indus. Ass'n v. United States*,
444 F. Supp. 2d 1309 (Ct. Int'l Trade 2006) ....................4, 5, 6

**Statutes**

8 U.S.C. § 1101 ....................10

8 U.S.C. § 1182 ....................11

8 U.S.C. § 1182(a)(2)(C) ....................11

8 U.S.C. § 1182(a)(2)(C)(i) ....................10

8 U.S.C. § 1182(a)(7)(A) ....................10

21 U.S.C. § 841 ....................2, 11

21 U.S.C. § 863 ....................8

21 U.S.C. § 863(a) ....................10

21 U.S.C. § 863(f)(1) ....................6, 8

21 U.S.C. § 1907 ....................2, 11

28 U.S.C. § 1581(a) ....................3, 7, 8, 9

28 U.S.C. § 1581(b) ....................3

28 U.S.C. § 1581(c) ....................3
28 U.S.C. § 1581(i)(1)(D) ....................7, 9
28 U.S.C. § 1651 ....................2, 9, 10
28 U.S.C. § 1651(a) ....................9
28 U.S.C. § 2201 ....................9
28 U.S.C. § 2201(a) ....................9

**Rules**

USCIT Rule 3(g) ....................1, 3
USCIT Rule 3(g)(5) ....................2, 3

**Other Authorities**

H. Rep. No. 98–985 ....................6

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. GARY S. KATZMANN, JUDGE

ETEROS TECHNOLOGIES USA, INC.,

Plaintiff,

v.

UNITED STATES,

Defendant.

Court No. 25-00036

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR ENTRY OF AN EXPEDITED SCHEDULING ORDER PURSUANT TO USCIT R. 3(g)**

Defendant, United States (the Government), submits this memorandum in opposition to plaintiff's motion, pursuant to Rule 3(g) of the Rules of the United States Court of International Trade (USCIT R.), for entry of an expedited scheduling order. The Court should deny plaintiff's motion because Eteros has failed to establish good cause for expediting this action and because the Court lacks jurisdiction over the immigration-related issues at the heart of this dispute.

**BACKGROUND AND PROCEDURAL POSTURE**

Plaintiff, Eteros Technologies USA, Inc. (Eteros), commenced this action to challenge various actions by U.S. Customs and Border Protection (CBP), including issuing "an expedited removal order, denying visas, revoking NEXUS memberships, and threatening criminal prosecution[.]" Compl. at ¶ 53. Eteros suggests that these various alleged actions by CBP "directly conflict with this Court's findings and ruling" (Compl. at ¶ 53) in a prior case that involved the importation by Eteros of marijuana-related drug paraphernalia into Washington. *Eteros Technologies USA, Inc. v. United States*, 592 F.

Supp. 3d 1313 (Ct. Int'l Trade 2022) (*Eteros I*). On this basis, Eteros seeks a declaratory judgment comprising three counts. Compl. at ¶ 2.

Count I seeks a judicial declaration that Eteros's "importation of cannabis-related merchandise" does "not per se constitute 'narcotics trafficking' under 21 U.S.C. § 1907, nor does it per se consist of aiding, abetting, assisting, conspiring, or colluding in such activities." *Id.* Count II seeks a judicial declaration that Eteros's "importation of cannabis-related merchandise does not *per se* involve the manufacture, distribution, dispensing, or possession with intent to manufacture, distribute, or dispense, a controlled substance in violation of 21 U.S.C. § 841, nor does it *per se* involve aiding, abetting, assisting, conspiring, or colluding in such conduct." *Id.* Finally, Count III "invokes the All Writs Act, 28 U.S.C. § 1651, to ensure Defendant's compliance with, and to prevent the further erosion of, this Court's inherent power and prior rulings." *Id.*

By its pending motion, Eteros seeks an expedited scheduling order in this action. Motion for Entry of an Expedited Scheduling Order (ECF No. 13). Eteros claims that it satisfies the good cause showing required under USCIT Rule 3(g)(5) for an expedited scheduling order. *Id.* at 10. For the reasons set forth below, Eteros fails to demonstrate good cause for an expedited schedule in this action. Further, and as we will explain in detail in our forthcoming motion to dismiss, there are serious questions both about the Court's subject matter jurisdiction as well as whether there is a case or controversy that the Court can decide. Accordingly, the Court should deny the motion.

## ARGUMENT

### I. Standard of Review

Under Rule 3(g)(5), a court may grant a motion to expedite a briefing schedule when the moving party successfully shows good cause. The Rule states, in pertinent part, that "[o]n motion for good cause or on its own the court may expedite the following actions and give them precedence over other pending actions: … (5) Any other action that the court determines, based on motion and for good cause shown, warrants expedited treatment." By referring only to subdivision (5) of Rule 3(g), Eteros appears to concede that the first four types of actions that are listed in Rule 3(g) as potentially subject to being expedited under the rule – "(1) An action involving the exclusion of perishable merchandise or redelivery of such merchandise; (2) An action described in 28 U.S.C. § 1581(c) to contest a determination under section 516A or 517(g) of the Tariff Act of 1930; (3) An action described in 28 U.S.C. § 1581(a) to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930, involving the exclusion or redelivery of merchandise; [and] (4) An action described in 28 U.S.C. § 1581(b) to contest a decision of the Secretary of the Treasury under section 516 of the Tariff Act of 1930" – are clearly inapplicable here.

Good cause to expedite exists "(1) in a case in which failure to expedite would result in mootness or deprive the relief requested of much of its value, (2) in a case in which failure to expedite would result in extraordinary hardship to a litigant, or (3) [in] actions where the public interest in enforcement of the statute is particularly strong." *J.D. Irving, Ltd. v. United States*, 570 F. Supp. 3d 1349, 1353 (Ct. Int'l Trade 2022)

(quoting *Ontario Forest Indus. Ass'n v. United States*, 444 F. Supp. 2d 1309, 1319 (Ct. Int'l Trade 2006)).

## II. Eteros's Motion To Expedite Should Be Denied

Eteros fails to establish the existence of good cause for granting its motion for an expedited schedule. Further, and as we will explain in detail in our forthcoming motion to dismiss, there are serious questions both about the Court's subject matter jurisdiction as well as whether there is a case or controversy that the Court can decide. Because of these questions, we believe that the Court would benefit from fulsome briefing on these issues. For all of these reasons, the Court should not expedite this matter.

### A. Eteros Fails To Demonstrate Good Cause To Grant The Motion To Expedite

First, Eteros's motion fails to adequately show how a standard, non-expedited schedule in this action would result in mootness or deprive the request for relief of much of its value. Eteros states that "[w]ithout expedited treatment, Eteros will continue to face operational disruption, financial losses, reputational harm, and erosion of employee morale." Mot. at 10-11. However, Eteros has not demonstrated any non-speculative operational disruption or financial losses. Notably, Eteros does not allege that it has been unable to import any marijuana-related drug paraphernalia in accordance with the Court's decision in *Eteros I*. In fact, since the Court issued its decision in *Eteros I*, it appears that Eteros has continued to import marijuana-related drug paraphernalia, identical or similar to that sanctioned by the Court in the prior decision, into the United States, and Eteros has not indicated otherwise. Expedited treatment is entirely unwarranted on these facts.

In *J.D. Irving*, the court held that the plaintiff's motion to expedite was improper because a court ruling prior to, or subsequent to, the plaintiff's proposed deadline would

have the same effect on the "rights and other legal relations" of the parties. *J.D. Irving*, 570 F. Supp. 3d at 1355. Similarly, here, Eteros has not pointed to anything tangible that demonstrates that failure to grant its motion would moot the case or otherwise deprive it of the value of the relief requested.

Likewise, Eteros's motion also fails to adequately show how a standard, non-expedited schedule in this action would lead to extraordinary hardship. Eteros states that "[t]he harms inflicted upon Eteros by CBP's targeted actions are both immediate and multifaceted, creating operational, financial, reputational, and workforce-related challenges." Mot. at 11. Eteros further alleges that the "inability of Eteros' senior personnel to oversee U.S. operations creates a leadership vacuum," resulting in "increased costs," "missed sales opportunities," and "customer attrition," as well as "reputational damage" due to "the stigma associated with CBP's allegations...". Mot. at 11-14.

Such allegations do not rise to the level of "extraordinary hardship" for purposes of a motion to expedite for good cause. In another context – the payment of countervailing duty cash deposits – this court found that plaintiff failed to demonstrate the existence of an "extraordinary hardship" in its motion to expedite because, although the "requirement of posting cash deposits may have deleterious effects on the competitive position of a firm," this is a problem that "many (if not all) litigants face." *Ontario Forest*, 444 F. Supp. 2d at 1320.

Similarly, here, Eteros has failed to demonstrate how proceeding with this case in the normal course would pose an extraordinary hardship beyond what could be expected of any company with cross-border business operations in such circumstances.

Companies with international business operations in the United States and with an international employee base may face immigration-related challenges, which, in any event, this Court lacks jurisdiction over, and the challenges that Eteros alleges are in no way extraordinary. Eteros's business and personal immigration-related issues are a far cry from the kinds of extraordinary hardships previously identified by this court. *See, e.g., Ontario Forest* at 1319 n.10 (quoting H. Rep. No. 98–985, at 6 n. 8 (1984) (citing "a case challenging denial of disability benefits on which the plaintiff is dependent for subsistence" as a circumstance in which extraordinary hardship was present).

Finally, Eteros's motion fails to demonstrate how an expedited schedule would serve the public interest. Eteros claims that the cannabis industry in states that have legalized marijuana could benefit from this Court's guidance on the interpretation and enforcement of 21 U.S.C. § 863(f)(1). Mot. at 16-18. In assessing whether the public interest merited an expedited schedule, the court in *J.D. Irving* looked to whether "any exigent circumstance" existed that distinguished the case in controversy from the cases of similarly situated movants. *J.D. Irving*, 570 F. Supp. 3d at 1356. In *J.D. Irving*, the court found that the plaintiff failed to demonstrate the existence of an "exigent circumstance" that would distinguish its action from other cases involving similarly situated movants. *Id*.

Here, Eteros similarly fails to point to an "exigent circumstance" that would warrant an expedited schedule on public interest grounds. Rather, Eteros's claims here seem to concern mostly private matters. Eteros's CEO, Mr. Aaron McKellar, "a Canadian citizen residing in British Columbia," states that he "was not attempting to enter the United States pursuant to my L-1A work authorization, but rather, for personal

reasons unrelated to my employment." McKellar Decl. at ¶¶ 1, 3 (ECF No. 13-2). In fact, Mr. McKellar states that he attempted to enter the United States "intending to complete a personal shopping trip in Bellingham, WA, at Trader Joe's grocery store." *Id.* Accordingly, the Court should not find a compelling public interest in expediting this matter ahead of other cases.

**B. <u>The Court Lacks Subject Matter Jurisdiction Over Eteros's Claims</u>**

For the reasons outlined below, and as will be further discussed in our forthcoming motion to dismiss, the Court lacks subject matter jurisdiction over Eteros's claims. As this is a threshold consideration that will likely be resolved on a motion to dismiss for lack of subject matter jurisdiction, Eteros's motion to expedite should be denied.

Eteros asserts subject matter jurisdiction under 28 U.S.C. § 1581(i)(1)(D), as a suit that "arises out of any law of the United States providing for … administration and enforcement with respect to the matters referred to in … subsection[] [1581](a)…." Compl. at ¶ 5. However, this case does not arise out of a law providing for administration and enforcement with respect to the importation of goods but, rather, implicates drug laws and immigration matters. Mot. at 9, fn. 11. Eteros relies on this Court's decision in *Eteros I* and complains of CBP's administration of the decision. Compl. at ¶ 2. However, the *Eteros I* decision pertains only to the admissibility of "certain motor frame assemblies for an agricultural machine, dubbed the 'Mobius M108S Trimmer,' designed to separate the leaf from the flower of cannabis and/or other plant material." *Eteros I*, 592 F. Supp. 3d at 1317. Eteros's imported merchandise, subject to the protest denial at issue in that case, was reviewed by this Court pursuant to its jurisdiction under 28 U.S.C. § 1581(a). Eteros does not allege that it has experienced any

difficulty importing this or similar merchandise into Washington, and we understand that such imports are ongoing.

Specifically, at issue in *Eteros I* was whether the imported merchandise may be lawfully excluded as inadmissible pursuant to the prohibition against the importation of drug paraphernalia that is included in Section 863 of the Controlled Substances Act (CSA), 21 U.S.C. § 863, which broadly prohibits the importation of such drug paraphernalia except by "any person authorized by local, State, or Federal law to manufacture, possess, or distribute such items." 21 U.S.C. § 863(f)(1). In *Eteros I*, this Court held that "Washington State 'authorize[s]' Eteros under the exemption at 21 U.S.C. § 863(f)(1) such that section 863 -- including the prohibitions of subsection (a) and the basis for seizure and forfeiture … is inapplicable to Eteros' Subject Merchandise." *Eteros I*, 592 F. Supp. 3d at 1332.

By contrast, in the instant case, CBP's immigration-related actions with respect to the people employed by Eteros in no way relate to the importation of merchandise or the exemption to the CSA's import ban on drug paraphernalia examined by the Court in *Eteros I*. Eteros's request for a declaratory judgment concerning the impact of the *Eteros I* decision on the admissibility of *people*, when the *Eteros* decision and the Court's jurisdiction are both generally limited to the admissibility of imported *merchandise*, is a request for the Court to opine on matters over which it lacks jurisdiction. This is not a matter of the "administration and enforcement" of "matters relating to exclusion and admission of goods pursuant to this Court's 28 U.S.C. § 1581(a) jurisdiction," because plaintiff's complaint is about people, not goods, and thus lies outside the scope of this

Court's 28 U.S.C. § 1581(a) jurisdiction, which applies to protests of certain CBP decisions as they relate to imported merchandise.

C. **Eteros's Request For Declaratory Relief Is Unfounded**

Eteros cites 28 U.S.C. § 2201 and 28 U.S.C. § 1651 as a basis for seeking a declaratory judgment from this Court. Compl. at ¶ 1; Mot. at 9. Section 2201(a) states that "[i]n a **case of actual controversy within its jurisdiction** … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought...." (emphasis added). Importantly, the underlying "case of actual controversy" in this action concerns immigration actions taken by CBP against two people employed by Eteros. Mot. at 5-9. Because the CIT lacks jurisdiction over immigration matters, the statutory requirements under 28 U.S.C. § 2201 for a declaratory judgment are not met in this case.

Eteros's other cited basis for seeking a declaratory judgment, 28 U.S.C. § 1651(a), states that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in **aid of their respective jurisdictions** and agreeable to the usages and principles of law." (emphasis added). Eteros concedes that "the Act does not provide an independent basis for jurisdiction," but goes on to claim that "[i]n this case, [the Act] is invoked to aid the Court's jurisdiction under 28 U.S.C. § 1581(i)(1)(D) by ensuring the administration and enforcement of its prior ruling in Eteros." Mot. at 9, fn. 12. However, the CIT does not have jurisdiction over immigration-related matters. Accordingly, the statutory requirements under 28 U.S.C. § 1651 for a declaratory judgment are not met in this case. Furthermore, "[a] declaratory judgment is 'an extraordinary remedy,' which rests 'in the sound discretion' of the

district court." *John v. Essentia Ins. Co.*, 708 F. Supp. 3d 694, 701 (D. Md. 2023) (quoting *Aetna Cas. & Surety Co. v. Quarles*, 92 F.2d 321, 324 (4th Cir. 1937)).

Eteros characterizes CBP's immigration actions specific to two of its employees as being based on the CSA's ban on imports of drug paraphernalia under 21 U.S.C. § 863(a), which they are not. Rather, CBP's immigration-related actions were based on provisions of a separate statute, the Immigration and Nationality Act (INA), 8 U.S.C. § 1101, *et seq*. Moreover, sections 1182(a)(2)(C)(i)[1] and 1182(a)(7)(A)[2] of the INA concern the admissibility of individuals involved in aiding and abetting the illicit trafficking in any controlled or listed substance, and the admissibility of individuals who do not possess certain required immigration documents, respectively, served as the legal basis of CBP's immigration actions, **not** the CSA. In seeming recognition of the CIT's

---

[1] Section 1182(a)(2)(C)(i) of the INA provides that:

> Except as otherwise provided in this chapter, aliens who are inadmissible under the following paragraphs are ineligible to receive visas and ineligible to be admitted to the United States: … Any alien who the consular officer or the Attorney General knows or has reason to believe … is or has been an illicit trafficker in any controlled substance or in any listed chemical (as defined in section 802 of title 21), or is or has been a knowing aider, abettor, assister, conspirator, or colluder with others in the illicit trafficking in any such controlled or listed substance or chemical, or endeavored to do so.

*See* Mot. at 6-8.

[2] Section 1182(a)(7)(A) of the INA provides that:

> Except as otherwise specifically provided in this chapter, any immigrant at the time of application for admission … who is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality if such document is required under the regulations issued by the Attorney General under section 1181(a) of this title, or … whose visa has been issued without compliance with the provisions of section 1153 of this title, is inadmissible.

*See* Compl. ¶ 27.

lack of jurisdiction, Eteros has also filed a complaint against the United States in the Western District of Washington, challenging CBP's immigration actions against one of its executives. *Eteros v. United States*, Case No. 25-181 (W.D. Wa. Jan. 29, 2025).[3]

Eteros argues that "Customs has taken action against Eteros' executives, for doing **nothing more** than engaging in the activity which this Court found to be lawful" in the *Eteros I* decision, *i.e.*, the importation of certain marijuana paraphernalia into the United States, specifically Washington State. Mot. at 3 (emphasis added). Eteros's statement is factually inaccurate. Rather, CBP's immigration actions regarding Eteros's employees were based on their separate encounters at the border and did not involve the importation of marijuana-related paraphernalia. During those encounters, CBP referred Ms. James and Mr. McKellar to secondary inspection, where CBP attempted to conduct interviews and collect sworn statements regarding their roles and business activities at Eteros, including the marketing, distribution, and sale of Eteros's cannabis harvesting equipment. These various factors collectively informed CBP's assessment of their admissibility to the United States.

Recently, Ms. James filed a supplemental declaration noting that on "February 11, 2025, the California Service Center of USCIS issued an approval notice for my I-129 Petition for Nonimmigrant Worker, granting my L-1A visa application." Suppl. Decl. of

---

[3] The W.D. Wa. complaint states:

> Plaintiffs bring this action to challenge the unlawful and retaliatory actions of Defendants, including the issuance of an expedited removal order (ERO) against Plaintiff Aaron McKellar under the Immigration and Nationality Act (INA) § 212, 8 U.S.C. § 1182, the revocation of McKellar's trusted traveler NEXUS membership, and accusations of aiding and abetting narcotics trafficking under 21 U.S.C. §§ 841, 1907, and INA § 212(a)(2)(C), 8 U.S.C. § 1182(a)(2)(C).

Compl. ¶ 1.

Amanda Jones at ¶ 8 (ECF No. 14). The USCIS approval email says: "APPROVAL" and further states that the "California Service Center has approved the following I-129 Petition for NonImmigrant [*sic*] Worker that has been filed under the Premium Processing Program: L-1A." ECF No. 15.

In any event, because the CIT clearly lacks jurisdiction over the immigration challenges at the heart of this dispute, Eteros has no cognizable basis to pursue a declaratory judgment here regarding the application of the *Eteros I* decision to entirely unrelated facts on the basis of laws with little in common to those considered in the Court's prior decision. This is especially true where both the facts and laws at issue have no connection to the importation of any merchandise.

## CONCLUSION

For the foregoing reasons, this Court should deny the plaintiff's motion for entry of an expedited scheduling order pursuant to USCIT R. 3(g).

Respectfully submitted,

MICHAEL GRANSTON
Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

/s/ Aimee Lee
AIMEE LEE
Assistant Director

/s/ Guy R. Eddon
GUY R. EDDON
Senior Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
(212) 264-9232 or 9230
*Attorneys for Defendant*

Of Counsel:
Alexandra Khrebtukova
Zachary Simmons
Office of the Assistant Chief Counsel
U.S. Customs and Border Protection

Dated: February 24, 2025

**CERTIFICATE OF COMPLIANCE**

I, Guy Eddon, an attorney in the Office of the Assistant Attorney General, Civil Division, Commercial Litigation Branch, International Trade Field Office, who is responsible for the Government's memorandum in opposition to plaintiff's motion for an expedited scheduling order, dated February 24, 2025, relying upon the word count feature of the word processing program used to prepare the memorandum, certify that this memorandum complies with the word count limitation under the Court's chambers procedures, and contains 3,288 words.

/s/ Guy Eddon