Slip Op. 25-30

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **ETEROS TECHNOLOGIES USA, INC.,**<br><br>Plaintiff,<br><br>v.<br><br>**UNITED STATES,**<br><br>Defendant. | Before: Gary S. Katzmann, Judge<br>Court No. 25-00036 |

### OPINION AND ORDER

[ The court denies Plaintiff's Motion to Expedite. ]

Dated: *March 26, 2025*

Richard F. O'Neill, John M. Peterson, and Patrick B. Klein, Neville Peterson, LLP, of Seattle, WA and New York, N.Y., for Plaintiff Eteros Technologies USA, Inc.

Guy R. Eddon, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, N.Y., for Defendant United States. With him on the brief were Michael Granston, Deputy Assistant Attorney General, Patricia M. McCarthy, Director, Justin R. Miller, Attorney in Charge, International Trade Field Office, Aimee Lee, Assistant Director. Of Counsel on the brief Alexandra Khrebtukova and Zachary Simmons, Office of the Assistant Chief Counsel, U.S. Customs and Border Protection, of New York, N.Y.

Katzmann, Judge: Plaintiff Eteros Technologies USA, Inc. moves to expedite the briefing schedule of this action for declaratory relief. See Pl.'s Mot. for Entry of Expedited Scheduling Order, Jan. 31, 2025, ECF No. 13 ("Motion to Expedite"). Plaintiff, which previously came before the court in Eteros Technologies USA, Inc. v. United States, 46 CIT __, 592 F. Supp. 3d 1313 (2022) ("Eteros I"), is a corporation "engaged in the importation, manufacture, and distribution of agricultural machinery for various industries, including the cannabis and hemp processing

Court No. 25-00036                                                                                              Page 2

industry." Compl. ¶ 3, Jan. 29, 2025, ECF No. 2.[1]  In the present action Plaintiff primarily[2] seeks a declaration pursuant to the Declaratory Judgment Act[3] that its importation of certain cannabis-related merchandise from Canada into the United States does not violate federal prohibitions on narcotics trafficking and distributing controlled substances.  See Compl. ¶¶ 41–57 (citing 21 U.S.C. §§ 841, 1907).  Plaintiff cites Eteros I and another decision of the court (Keirton USA, Inc. v. United States, 46 CIT __, 600 F. Supp. 3d 1270 (2022)) in support of allegations that U.S. Customs and Border Protection ("CBP") has unlawfully invoked these federal prohibitions to bar two of Plaintiff's Canadian corporate officers from entering the United States.  See Compl. ¶¶ 41–57.  These officers' ongoing absence from the United States,[4] Plaintiff avers, inflicts

---

[1] Plaintiff also asserts that it is "organized and existing under the laws of the State of Washington," and that it maintains its U.S. headquarters in Las Vegas, Nevada.  Id.

[2] Plaintiff also seeks unspecified relief under the All Writs Act, which provides for the federal courts' issuance of "all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. § 1651(a); see Compl. ¶¶ 58–64.

[3] The relevant subsection of the Declaratory Judgment Act provides as follows:

> In a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986, a proceeding under section 505 or 1146 of title 11, or in any civil action involving an antidumping or countervailing duty proceeding regarding a class or kind of merchandise of a free trade area country (as defined in section 516A(f)(9) of the Tariff Act of 1930), as determined by the administering authority, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

Id. § 2201(a).

[4] On February 11, 2025, two weeks after the filing of the Complaint, CBP issued a L-1A Nonimmigrant Worker visa to one of these officers.  See Suppl. Decl. of A. James ¶ 8, Feb. 13, 2025, ECF No. 14; see also 8 U.S.C. § 1101(a)(15)(L); 8 C.F.R. § 214.2(*l*)(1)(i).  This officer

a host of economic harms. See id. ¶¶ 37–39; Mot. to Expedite at 11–16. Plaintiff contends that this is accordingly an "action that . . . for good cause shown, warrants expedited treatment." USCIT R. 3(g)(5); see Mot. to Expedite at 10.

Defendant the United States opposes Plaintiff's motion. See Def.'s Resp. to Mot. to Expedite, Feb. 24, 2025, ECF No. 18.

To determine whether "good cause" supports expediting briefing on this matter, the court applies the standard articulated in Ontario Forest Industries Ass'n v. United States, 30 CIT 1117, 444 F. Supp. 2d 1309 (2006). Drawing from legislative history, the court explained in that case that good cause exists:

> [1] in a case in which failure to expedite would result in mootness or deprive the relief requested of much of its value, [2] in a case in which failure to expedite would result in extraordinary hardship to a litigant, or [3] actions where the public interest in enforcement of the statute is particularly strong.

Id. at 1127 (footnote omitted) (quoting H.R. Rep. No. 98-985, at 6 (1984), as reprinted in 1984 U.S.C.C.A.N. 5779, 5784); see generally J.D. Irving, Ltd. v. United States, 46 CIT __, 570 F. Supp. 3d 1349 (2022) (applying the Ontario Forest framework and finding no good cause to expedite). "The decision to grant expedited briefing" is also "a matter left to the Court's discretion." Order at 4, Husqvarna Constr. Prods. N. Am. v. United States, Ct. No. 12-00205 (USCIT Aug. 9, 2012), ECF No. 19. A generally-applicable provision of federal law reinforces this standard:

> Notwithstanding any other provision of law, each court of the United States shall determine the order in which civil actions are heard and determined, except that the court shall expedite the consideration of . . . any . . . action if good cause therefor is

---

declares that she nevertheless remains "concerned that CBP may take an adverse action against [her] at the border," and that she is "assessing [her] next steps and potential risks before traveling to the U.S." Suppl. Decl. of A. James ¶¶ 12, 15.

> shown. For purposes of this subsection, "good cause" is shown if a right under the Constitution of the United States or a Federal Statute . . . would be maintained in a factual context that indicates that a request for expedited consideration has merit.

28 U.S.C. § 1657.

Plaintiff has not shown that good cause exists here. As to Ontario Forest's first basis for good cause, Plaintiff makes no allegation that adherence to a standard briefing schedule—as opposed to an expedited one—"would result in mootness or deprive the relief requested of much of its value." 30 CIT at 1127, 444 F. Supp. 2d at 1319 (quoting H.R. Rep. No. 98-985, at 6). Plaintiff states that "without expedited treatment, Eteros will continue to face operational disruption, financial losses, reputational harm, and erosion of employee morale," and describes a "prolonged inability of Eteros' senior personnel to oversee U.S. operations [that] creates a leadership vacuum." Mot. to Expedite at 10–11. As presented, these are not time-sensitive harms that will become irremediable in the near future. Plaintiff does not explain why the declaration it seeks would offer significant value if obtained in two months, but negligible value if obtained (for example) in five. Cf. H.R. Rep. No. 98-985, at 6 n.7 (describing "a case relating to voting rights which would be mooted or partially mooted by an upcoming election").

Plaintiff also does not show that adherence to a standard briefing schedule would cause extraordinary hardship during the interval between the requested sixty-day briefing timeline and a standard timeline. Plaintiff claims to experience a litany of ongoing harms that result from the absence of its corporate officers from the United States. This includes the officers' inability to directly oversee U.S. business operations, supervise U.S.-based staff, and attend industry events. See Mot. to Expedite at 11–12. The officers' absence has also allegedly caused "inventory mismanagement" at a Las Vegas facility, required costly "contract services" to fill the officers'

roles at U.S.-based functions, harmed relationships with customers, business partners, and employees, thwarted recruitment efforts, and hampered Plaintiff's ability "to rely on predictable enforcement of customs laws . . . ." See id. at 12–16.

    Even if these asserted harms are not insignificant, Plaintiff fails to show that they amount to extraordinary hardship. See USCIT R. 3(g)(5) (requiring "good cause shown"). All Plaintiff shows is that its international business suffers from barriers to international travel. Eteros can continue operating—albeit less efficiently in the U.S. market—during the course of litigation. More importantly, Plaintiff does not show that the hardship it suffers during the pendency of this case, even if significant, is more severe than that suffered by an ordinary plaintiff who awaits possible relief. Initial unremediated harm, after all, is a necessary feature of all litigation in federal court: Article III jurisdiction requires (inter alia) that a plaintiff have suffered an injury in fact.[5] See Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992). Even significant hardship that clears this threshold is not necessarily extraordinary. Compare Ont. Forest, 30 CIT at 1128, 444 F. Supp. 2d at 1320 ("Although the court can appreciate that the requirement of posting cash deposits may have deleterious effects on the competitive position of a firm (especially over time), this is a problem many (if not all) litigants face before the Court. Therefore, there is nothing 'extraordinary' here that warrants this case taking priority over other cases pending before the court."); with H.R. Rep. No. 98-985, at 6 n.8 (describing "a case challenging denial of disability benefits on which the plaintiff is dependent for subsistence" as a basis for extraordinary hardship).

    As to the third basis for good cause outlined in Ontario Forest, Plaintiff states that an

---

[5] Of course, Plaintiff will also bear the burden of establishing the court's jurisdiction over this matter. See McNutt v. Gen. Motors Acceptance Corp. of Ind., 298 U.S. 178, 188–89 (1936).

expedited briefing schedule would serve the public interest by resolving an uncertain legal question. Plaintiff states that "[e]nsuring this lawful activity proceeds without the threats of felony prosecution, imprisonment, deportation, or other penalties is essential," and that "[c]onsequently, the interpretation and enforcement of the laws under Title 21 [of the U.S. Code] by this Court is a matter of substantial public interest, warranting the establishment of an expedited scheduling order to govern this litigation." Mot. to Expedite at 18 (footnotes omitted).

If this were a sufficient basis for good cause, then virtually all cases—and therefore no cases—would receive expedited treatment. Any application or interpretation of the law has some conceivable impact on the public's expectations about rights and obligations going forward. It is not clear from Plaintiff's submissions why the particular interpretation they seek—whenever elicited—would serve the public's reliance interest any more than the interpretations inherent in an ordinary case.

The court construes its rules to "secure the just, speedy, and inexpensive determination of every action and proceeding." USCIT R. 1 (emphasis added). If Plaintiff is entitled to any of the relief it seeks, the court will so determine in due course.

It is hereby:

**ORDERED** that Plaintiff's Motion for Entry of an Expedited Scheduling Order, Jan. 31, 2025, ECF No. 13, is **DENIED**.

/s/ *Gary S. Katzmann*
Gary S. Katzmann, Judge

Dated: March 26, 2025
New York, New York