UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. GARY S. KATZMANN, JUDGE

―――――――――――――――――――――――――
                                            :
ETEROS TECHNOLOGIES USA, INC.,              :
                                            :
                              Plaintiff,    :        Court No. 25-00036
                                            :
                v.                          :
                                            :
UNITED STATES,                              :
                                            :
                              Defendant.    :
―――――――――――――――――――――――――:

## <u>ORDER</u>

Upon reading defendant's motion to dismiss; plaintiff's response thereto; and upon consideration of other papers and proceedings had herein; and upon due deliberation, it is hereby

**ORDERED** that defendant's motion to dismiss be, and hereby is, granted, and it is further

**ORDERED** that this action is dismissed.

_____
GARY S. KATZMANN, JUDGE

Dated: _____, 2025
        New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. GARY S. KATZMANN, JUDGE

———————————————————————

|  |  |  |
|---|---|---|
| | : | |
| ETEROS TECHNOLOGIES USA, INC., | : | |
| | : | |
| Plaintiff, | : | Court No. 25-00036 |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |
| | : | |

———————————————————————

## <u>DEFENDANT'S MOTION TO DISMISS</u>

Defendant, the United States, pursuant to Rule 12(b)(1) of the Rules of the United States Court of International Trade, moves to dismiss the action for lack of subject matter jurisdiction. The grounds for this motion are set forth in the accompanying memorandum.

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

/s/ Aimee Lee
AIMEE LEE
Assistant Director

/s/ Guy Eddon
GUY EDDON
Senior Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
(212) 264-9232 or 9230
*Attorneys for Defendant*

Of Counsel:
Alexandra Khrebtukova
Zachary Simmons
Office of the Assistant Chief Counsel
U.S. Customs and Border Protection

Dated: May 2, 2025

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. GARY S. KATZMANN, JUDGE

_____

ETEROS TECHNOLOGIES USA, INC.,

                          Plaintiff,

                v.

UNITED STATES,

                        Defendant.

_____

:
:
:
:
:
:
:
:
:
:
:

Court No. 25-00036

## **DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS**

YAAKOV M. ROTH
Acting Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

AIMEE LEE
Assistant Director

GUY EDDON
Senior Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
(212) 264-9232 or 9230
*Attorneys for Defendant*

Of Counsel:
Alexandra Khrebtukova
Zachary Simmons
Office of the Assistant Chief Counsel
U.S. Customs and Border Protection

# **TABLE OF CONTENTS**

BACKGROUND ...................................................................................................1

ARGUMENT ......................................................................................................5

I.     ETEROS HAS THE BURDEN TO ESTABLISH JURISDICTION .....................5

II.    THE COURT LACKS JURISDICTION PURSUANT TO 28 U.S.C. § 1581(i)....6

     A.  This Action Does Not Arise Directly out of an Import Transaction or Involve a Matter of International Trade Law) ....................................................8

     B.  The CIT Does Not Have Exclusive Jurisdiction Over This Action.................10

     C.  Section 1581(i) Jurisdiction Is Residual And Cannot Be Circumvented........11

III.   THIS COURT CANNOT AND SHOULD NOT PROVIDE THE RELIEF THAT ETEROS SEEKS......................................................................................13

     A.  Because the Court Lacks Jurisdiction It Cannot Issue a Declaratory Judgment ...............................................................................................13

     B.  A Declaratory Judgment Is Inappropriate in this Case Because the Underlying Facts are Wholly Different than Those Before the Court in *Eteros I* .............14

CONCLUSION.............................................................................................16

# TABLE OF AUTHORITIES

**Cases**

*Aetna Cas. & Surety Co. v. Quarles,*
92 F.2d 321 (4th Cir. 1937) ............................................................................13

*Arbaugh v. Y&H Corp.,*
546 U.S. 500 (2006) ........................................................................................5

*Chemsol, LLC v. United States,*
755 F.3d 1345 (Fed. Cir. 2014) ................................................................11, 12

*Conoco, Inc. v. United States,*
18 F.3d 1581 (Fed. Cir. 1994) ....................................................................9, 11

*Elkem Metals Co. v. United States,*
23 CIT 170, 44 F. Supp. 2d 288 (1999) ...........................................................6

*Eteros Technologies USA, Inc. v. United States,*
592 F. Supp. 3d 1313 (Ct. Int'l Trade 2022) ........................................... *passim*

*Eteros v. United States,*
Case No. 25-181 (W.D. Wa. Jan. 29, 2025) ...........................................2, 4, 10

*Ex parte McCardle,*
74 U.S. 506 (1868) ..........................................................................................5

*Fed. Deposit Ins. Corp. v. Meyer,*
510 U.S. 471 (1994) ........................................................................................5

*Glenn v. Thomas Fortune Fay,*
222 F. Supp. 3d 31 (D.D.C. 2016) ..................................................................13

*Hartford Fire Ins. Co. v. United States,*
544 F.3d 1289 (Fed. Cir. 2008) ......................................................................12

*Int'l Custom Prods., Inc. v. United States*
467 F.3d 1324 (Fed. Cir. 2006) ......................................................................12

*John v. Essentia Ins. Co.,*
708 F. Supp. 3d 694 (D. Md. 2023) ................................................................13

*K Mart Corporation v. Cartier,*
485 U.S. 176 (1988) ................................................................................10, 11

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994)................................................................................5

*McNutt v. Gen. Motors Acceptance Corp.*,
298 U.S. 178 (1936)................................................................................6

*Ninestar Corp. v. United States*,
666 F. Supp. 3d 1351 (Ct. Int'l Trade 2023) ...............................5, 9

*Norman G. Jensen, Inc. v. United States*,
687 F.3d 1325 (Fed. Cir. 2012)...........................................................11

*United States v. King*,
395 U.S. 1 (1969)...................................................................................5

*United States v. Mitchell*,
445 U.S. 535 (1980)...............................................................................5

*United States v. Sherwood*,
312 U.S. 584 (1941)...............................................................................5

*Wally Packaging, Inc. v. United States*,
7 CIT 19, 578 F. Supp. 1408 (1984) ....................................................6

**Statutes**

8 U.S.C. § 1101 (INA) ...............................................................6, 14, 15

8 U.S.C. § 1182 (INA) ...........................................................................3

8 U.S.C. § 1182(a)(2)(C) (INA 212(a)(2)(C)) ....................................3

8 U.S.C. § 1182(a)(7)(A)(i)(I) (INA Section 212(a)(7)(A)(i)(I) .......2

21 U.S.C. § 863 (Section 863 of the CSA) .........................................8

21 U.S.C. § 863(a) ...............................................................................15

21 U.S.C. § 863(f)(1) .......................................................................8, 12

21 U.S.C. § 1907 ...................................................................................3

21 U.S.C. §§ 841 ...................................................................................3

28 U.S.C. § 1581.........................................................................9, 10, 11

28 U.S.C. § 1581(a) .................................................................................6, 7, 12

28 U.S.C. § 1581(i) ........................................................................... *passim*

28 U.S.C. § 1581(i)(1) .....................................................................................6

28 U.S.C. § 1581(i)(1)(D) ........................................................................6, 7, 14

28 U.S.C. § 1651 ...................................................................................3, 13, 14

28 U.S.C. § 1651(a) ........................................................................................13

28 U.S.C. § 2201 ............................................................................................13

**Regulations**

8 C.F.R. § 103.3 ...............................................................................................4

8 C.F.R. § 214.2(1)(9)(iii) ...............................................................................4

8 C.F.R. § 235 ................................................................................................14

Custom Courts Act of 1980, H. Rep. No. 96–1235, 96th Cong., 2d Sess. 18, 33, *reprnted* in 1980 U.S. Code Cong. & Ad. News 3729 .................................9, 11

**Rules**

USCIT Rule 3(g) ...............................................................................................3

USCIT Rule 12(b)(1) .........................................................................................1

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. GARY S. KATZMANN, JUDGE

| | | |
|---|---|---|
| | : | |
| ETEROS TECHNOLOGIES USA, INC., | : | |
| | : | |
| Plaintiff, | : | Court No. 25-00036 |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## **DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS**

Defendant, the United States (the Government), respectfully submits this memorandum in support of its motion to dismiss the action filed by plaintiff Eteros Technologies USA, Inc. (Eteros), for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Rules of the Court of International Trade (USCIT R.). Eteros brings this action to challenge immigration-related decisions by U.S. Customs and Border Protection (CBP) and U.S. Citizenship and Immigration Services (USCIS). However, this Court's jurisdiction is limited to hearing matters related to import transactions and international trade law. Accordingly, the Court should dismiss plaintiff's action because the Court lacks jurisdiction over the immigration-related issues at the heart of this case.

## **BACKGROUND**

Eteros commenced this action to challenge various immigration-related determinations by CBP and USCIS, including issuing "an expedited removal order, denying visas, [and] revoking NEXUS memberships[.]" Compl. ¶ 53. Eteros suggests that these alleged actions "directly conflict with this Court's findings and ruling" (*id.*) in a prior case that involved the importation of marijuana-related drug paraphernalia into

Washington State by Eteros. *Eteros Technologies USA, Inc. v. United States*, 592 F. Supp. 3d 1313 (Ct. Int'l Trade 2022) (*Eteros I*).

On October 4, 2024, Aaron McKellar presented himself at the Blaine, Washington, border crossing for the purpose of entering the United States. Compl. Exh. A (ECF no. 2-1). Mr. McKellar is the "founder and CEO of Eteros Canada and Eteros USA" (Compl. ¶ 23) and citizen of Canada (ECF no. 2-1 at 12). Mr. McKellar was referred to secondary inspection, where CBP attempted to collect a sworn statement, but Mr. McKellar refused to answer questions. *Id.* Due to his refusal, CBP issued an Expedited Removal Order (ERO) against Mr. McKellar under Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1182(a)(7)(A)(i)(I), requiring him to return to Canada. *Id.*

On or about October 16, 2024, Eteros filed an administrative request for reconsideration to vacate the ERO against Mr. McKellar. Compl. Exh. B (ECF no. 2-1).

On October 25, 2024, Amanda James, through her attorney, filed an L-1A visa application with USCIS. Suppl. Decl. of Amanda James ¶ 6 (ECF No. 14). Ms. James is the "Director of Strategy and Business Development at Eteros Canada and Eteros USA, and a citizen of Canada." Compl. ¶ 20.

On November 12, 2024, CBP issued a decision denying Mr. McKellar's request to Reconsider and Vacate the ERO. Compl. Exh. C (ECF no. 2-1).

On January 29, 2025, Eteros filed the instant suit. On that same date, Eteros filed a parallel case in the U.S. District Court for the Western District of Washington. *Eteros v. United States*, Case No. 25-181 (W.D. Wash. Jan. 29, 2025).[1] By its complaint here,

---

[1] The W.D. Wash. complaint states:

Eteros seeks a declaratory judgment that Eteros's "importation of cannabis-related merchandise" does "not *per se* constitute 'narcotics trafficking' under 21 U.S.C. § 1907, nor does it *per se* consist of aiding, abetting, assisting, conspiring, or colluding in such activities;" that Eteros's "importation of cannabis-related merchandise does not *per se* involve the manufacture, distribution, dispensing, or possession with intent to manufacture, distribute, or dispense, a controlled substance in violation of 21 U.S.C. § 841, nor does it *per se* involve aiding, abetting, assisting, conspiring, or colluding in such conduct;" and "invokes the All Writs Act, 28 U.S.C. § 1651, to ensure Defendant's compliance with, and to prevent the further erosion of, this Court's inherent power and prior rulings."  Compl. ¶ 2.

The events below took place after this complaint was filed but are included here for the sake of completeness.

On January 31, 2025, Eteros moved for entry of an expedited scheduling order pursuant to USCIT R. 3(g).  ECF no. 13.  The Court denied that motion by its Opinion and Order of March 26, 2025.  ECF no. 20, Slip Op. 25-30.

On February 11, 2025, USCIS approved the L-1A visa application of Amanda James.  Suppl. Decl. of Amanda James at ¶ 8 (ECF No. 14); ECF No. 15.

On March 28, 2025, USCIS reopened James' I-129 L-1A petition and determined that "[a]fter careful consideration of the record, and in accordance with the INA and Title

---

Plaintiffs bring this action to challenge the unlawful and retaliatory actions of Defendants, including the issuance of an expedited removal order (ERO) against Plaintiff Aaron McKellar under the Immigration and Nationality Act (INA) § 212, 8 U.S.C. § 1182, the revocation of McKellar's trusted traveler NEXUS membership, and accusations of aiding and abetting narcotics trafficking under 21 U.S.C. §§ 841, 1907, and INA § 212(a)(2)(C), 8 U.S.C. § 1182(a)(2)(C).

Compl. ¶ 1.

8 of the Code of Federal Regulations (8 CFR), USCIS intends to revoke the petition" of

Amanda James.  USCIS Notice of Intent to Revoke, March 28, 2025 (Exh. 1).  James had

the opportunity to submit a response and any evidence in rebuttal within thirty days.  8

C.F.R. 214.2(l)(9)(iii).  If USCIS ultimately revokes James's petition, Eteros may appeal

the decision to the administrative appeals office or seek review in district court.  *See* 8

C.F.R. § 103.3 (outlining the procedures for unfavorable decisions on petitions).

On April 18, 2025, CBP's Acting Area Port Director in Blaine, Washington, sent

notice to Eteros that after consideration, the Port decided "to vacate the Order of

Expedited Removal in [Mr. McKellar's] case.  Accordingly, CBP will update its records

to reflect that McKellar's Expedited Removal Order was vacated and his departure to

reflect a request to withdraw his application for admission."  CBP Request to Vacate

Expedited Removal Order, April 18, 2025 (Exh. 2).

On April 21, 2025, the Government moved to dismiss Eteros's lawsuit in the

Western District of Washington due to CBP vacating Mr. McKellar's ERO, which

suggests the matter is moot.  *See* Defs.'s Mot. to Dismiss, *Eteros v. United States*, Case

No. 25-181 (W.D. Wash).  Additionally, the Government argued that, even if Eteros's

claims remained viable, the court lacks jurisdiction based on the claim as presented.  The

Government does not contend that a potential legal remedy for Eteros's employees is

nonexistent, but only that, as presented in the case filed in the Western District of

Washington, the court does not have jurisdiction.

On April 29, 2025, George McKellar appeared on a flight manifest from

Vancouver to Las Vegas.  After Mr. McKellar was questioned at Vancouver International

Airport Preclearance, CBP determined that he was inadmissible to the United States and

allowed McKellar to withdraw his application for admission.  CBP Withdrawal of

Application for Admission, April 29, 2025 (Exh. 3).

For the reasons set forth in detail below, the Court lacks jurisdiction over the

immigration-related dispute at the heart of this case, and the case should be dismissed.

## ARGUMENT

## I.    ETEROS HAS THE BURDEN TO ESTABLISH JURISDICTION

"It is elementary that '[t]he United States, as sovereign, is immune from suit save

as it consents to be sued . . . , and the terms of its consent to be sued in any court define

that court's jurisdiction to entertain the suit.'"  *United States v. Mitchell*, 445 U.S. 535,

538 (1980) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)); *see also Fed.

Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1994) ("Sovereign immunity is

jurisdictional in nature.").  A waiver of sovereign immunity "'cannot be implied but must

be unequivocally expressed.'"  *Mitchell*, 445 U.S. at 538 (quoting *United States v. King*,

395 U.S. 1, 4 (1969)).

The Court of International Trade (CIT) is a court of limited jurisdiction.  *Ninestar

Corp. v. United States*, 666 F. Supp. 3d 1351, 1363 n. 11 (Ct. Int'l Trade 2023) (citing

and quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

"Without jurisdiction the court cannot proceed at all in any cause.  Jurisdiction is power

to declare the law, and when it ceases to exist, the only function remaining to the court is

that of announcing the fact and dismissing the cause."  *Ex parte McCardle*, 74 U.S. (7

Wall.) 506, 514 (1868).  Further, parties or the Court *sua sponte* may challenge the

Court's subject-matter jurisdiction at any time.  *Arbaugh v. Y&H Corp.*, 546 U.S. 500,

506 (2006).

Eteros has the burden of establishing jurisdiction in this case because, "[w]hen the court's jurisdiction is challenged, the party asserting jurisdiction has the burden of establishing that jurisdiction exists."  *Wally Packaging, Inc. v. United States*, 7 CIT 19, 20, 578 F. Supp. 1408, 1410 (1984); *see also McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 188-89 (1936); *Elkem Metals Co. v. United States*, 23 CIT 170, 175, 44 F. Supp. 2d 288, 292 (1999).  Eteros's complaint alleges jurisdiction under 28 U.S.C. § 1581(i)(1)(D) for CBP's administration and enforcement regarding matters of importations.  Compl. ¶ 5.  However, this case is not about Eteros's imports, but individual immigration matters related to two of its executives.  For the reasons discussed below, Eteros cannot establish that the Court has jurisdiction over this action.

## II.     THE COURT LACKS JURISDICTION PURSUANT TO 28 U.S.C. § 1581(i)

Eteros asserts jurisdiction under 28 U.S.C. § 1581(i)(1)(D).  Compl. ¶ 5. However, jurisdiction under subsection 1581(i)(1)(D) does not exist here for several reasons.  First, subsection 1581(i)(1)(D) on its face does not cover Eteros's action because it does not arise out of an import transaction but rather consists of immigration-related matters for two separate individuals.  Immigration law is governed by the Immigration and Nationality Act (INA) and falls squarely under the jurisdiction of immigration courts and federal district courts. 8 U.S.C. § 1101 *et seq.*  Second, even if Eteros's complaint could somehow be construed to cover the importation of goods, any exclusion of those goods would be covered by section 1581(a), as section 1581(i) may not be used to circumvent the requirements of the Court's other jurisdictional provisions.

28 U.S.C. § 1581(i)(1) provides as follows:

> (1)  In addition to the jurisdiction conferred upon the Court of International Trade by subsections (a)-(h) of this section and

subject to the exception set forth in subsection (j) of this section, the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for—

    (A)  revenue from imports or tonnage;

    (B)  tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;

    (C)  embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or

    (D)  administration and enforcement with respect to the matters referred to in subparagraphs (A) through (C) of this paragraph and subsections (a)–(h) of this section.

Section 1581(i)(1)(D) is inapplicable because Eteros's action does not concern CBP's "administration and enforcement with respect to the matters referred to in paragraphs (A)-(C) of this paragraph and subsections (a)-(h) of this section."  28 U.S.C. § 1581(i)(1)(D).  As explained further below, CBP has not taken any administration or enforcement action related to any import transaction by plaintiff that is contrary to this Court's earlier *Eteros I* decision.  Eteros concedes as much when it states that, "[o]ther than the shipment at issue in Eteros, Plaintiff has never been accused of, or charged with, importing or dealing in cannabis-related 'drug paraphernalia' in violation of any federal laws."  Compl. ¶ 19.  Nor does Eteros allege that any of its merchandise, identical or similar to that at issue in *Eteros I*, has been seized, excluded, detained, or otherwise held up in any manner by CBP.

At issue in the *Eteros I* decision was the admissibility of "certain motor frame assemblies for an agricultural machine, dubbed the 'Mobius M108S Trimmer,' designed to separate the leaf from the flower of cannabis and/or other plant material."  *Eteros I*,

592 F. Supp. 3d at 1317. Eteros's imported merchandise, subject to the protest denial at issue in that case, was reviewed by this Court pursuant to its jurisdiction under 28 U.S.C. § 1581(a). This Court held that Eteros's merchandise fell within an exemption to Section 863 of the Controlled Substances Act (CSA), 21 U.S.C. § 863, which broadly prohibits the importation of such drug paraphernalia except by "any person authorized by local, State, or Federal law to manufacture, possess, or distribute such items." 21 U.S.C. § 863(f)(1). The Court held that "Washington State 'authorize[s]' Eteros under the exemption at 21 U.S.C. § 863(f)(1) such that section 863 -- including the prohibitions of subsection (a) and the basis for seizure and forfeiture … is inapplicable to Eteros' Subject Merchandise." *Eteros I*, 592 F. Supp. 3d at 1332.

In the over two years since the issuance of the *Eteros I* decision, we understand that Eteros's imports of cannabis paraphernalia products into Washington State have continued uninterrupted. Accordingly, without an importation of goods that has been prevented from entering the United States in contravention of the Court's decision in *Eteros I*, this Court does not have subject matter jurisdiction over this action.

A.  This Action Does Not Arise Directly out of an Import Transaction or Involve a Matter of International Trade Law

Further demonstrating that this action is not appropriately brought in this Court, section 1581(i) covers actions which arise directly out of an import transaction and implicate international trade law. Neither condition exists here. The legislative history of 28 U.S.C. § 1581(i) notes that:

> This section granted the court jurisdiction over those civil actions which arise directly out of an import transaction and involve one of the many international trade laws. The purpose of this section was to eliminate the confusion which currently exists as to the demarcation between the jurisdiction of the federal district courts and the Court of International Trade.

Customs Courts Act of 1980, H.R. Rep. No. 96-1235, 96th Cong., 2d Sess. 18, 33, *reprinted in* 1980 U.S. Code Cong. & Ad. News 3729, 3745. In other words, "the Court of International Trade has jurisdiction over those civil actions which arise out of a law of the United States pertaining to international trade." H.R. Rep. No. 96-1235 at 34, 1980 U.S. Code Cong. & Ad. News at 3745.

The Court of Appeals for the Federal Circuit in *Conoco, Inc. v. United States*, 18 F.3d 1581, 1586 (Fed. Cir. 1994), considered the scope of jurisdiction under section 1581(i) for review of certain orders of a Foreign Trade Zones Board. In doing so, the Federal Circuit recognized that jurisdiction in the CIT derives from import transactions involving laws related to international trade. The *Conoco* court observed that "[w]hen Congress amended 28 U.S.C. § 1581 to add subsection (i) in 1980, it reiterated its purpose to grant the Court of International Trade broad exclusive jurisdiction "over any civil action against the United States arising out of the federal statutes governing import transactions." *Conoco*, 18 F.3d 1586 (quoting H.R. Rep. No. 1235, at 21, *reprinted in* 1980 U.S.C.C.A.N. at 3722). Deciding that the CIT had jurisdiction, the *Conoco* court stated that "we are here dealing with issues of governmental law and policy regarding customs and tariffs, the type of issues with which the Court of International Trade is acknowledged to have expertise." *Id*. at 1589. *See also Ninestar Corp. v. United States*, 666 F. Supp. 3d 1351, 1363 n. 11. Accordingly, the elements of import transactions and issues of international trade law are intended to be present in actions covered by section 1581(i).

Here, there are no import transactions at issue, and no implications related to the laws of international trade. CBP has not prevented Eteros's merchandise from entering

9

the United States.  Instead, Eteros complains of ongoing immigration-related matters concerning L-1A petitions for two employees.  As noted above, Eteros has also filed a separate action concerning these same immigration issues in the United States District Court for the Western District of Washington.  *Eteros v. United States*, Case No. 25-181 (W.D. Wash. Jan. 29, 2025).

Eteros attempts to couch the allegations in its complaint in terms of its imports of drug paraphernalia as narcotics trafficking by Eteros's employees, but that is a separate matter, governed by separate statute, from the importation of its merchandise, and not one that uniquely pertains to international trade.  As the jurisdictional statute, legislative history, and judicial precedent make clear, this Court is not the forum to challenge an individual's admissibility into the United States, or related proceedings.

B. <u>The CIT Does Not Have Exclusive Jurisdiction Over This Action</u>

For a case to be brought pursuant to 28 U.S.C. § 1581, the Court of International Trade must have "exclusive jurisdiction."  Section 1581(i) provides that the CIT has exclusive jurisdiction over the matters covered in subsections (A) through (D) of this subsection.  However, the Court may not assume jurisdiction over this case because jurisdiction will not be exclusive.

In *K Mart Corporation v. Cartier*, 485 U.S. 176 (1988), a case involving the question of jurisdiction over the importation of gray-market goods, the Supreme Court found that the district court rather than the CIT had jurisdiction over the matter.  In making its determination, the Supreme Court recognized the principle of exclusive jurisdiction of the CIT and stated that "[t]he District Court would be divested of jurisdiction, however, if this action fell within one of several specific grants of exclusive jurisdiction to the Court of International Trade."  *Id*. at 182-83.  The Supreme Court

further acknowledged that Congress did not commit the jurisdiction of the CIT to every civil action involving imports. *Id*. at 188.  Likewise in *Conoco*, *supra*, the court of appeals stated that "if jurisdiction can be found to lie under the provisions of § 1581, such jurisdiction would place exclusive judicial review of the issues raised by appellants in the Court of International Trade."  *Conoco*, 18 F.3d 1586.

In this case, which at its heart is a dispute regarding two separate immigration matters, an exercise of jurisdiction would go against the jurisdictional mandate of this Court.  This case does "not involve questions of classification, valuation or rate of duty," and therefore "should be treated the same whether a court is dealing with domestic or imported goods and more appropriately should come within the jurisdiction of the district courts."  H.R. Rep. No. 96-1235 at 48, 1980 U.S. Code Cong. & Ad. News at 3759.  Accordingly, it would improperly expand the breadth of the jurisdictional statute for this Court to hear an immigration action.

C.  Section 1581(i) Jurisdiction Is Residual And Cannot Be Circumvented

As discussed above, section 1581(i) jurisdiction is inapplicable here.  To allow jurisdiction under section 1581(i), which embodies this Court's residual grant of jurisdiction, would be a strained reading of the statute and circumvent the requirements of the other jurisdictional provisions in section 1581.  "While the residual jurisdiction provision is a 'catch all provision,' '[a]n overly broad interpretation of this provision . . . would threaten to swallow the specific grants of jurisdiction contained within the other subsections and their corresponding requirements.'"  *Chemsol, LLC v. United States*, 755 F.3d 1345, 1349 (Fed. Cir. 2014) (quoting *Norman G. Jensen, Inc. v. United States*, 687 F.3d 1325, 1329 (Fed. Cir. 2012)).  It is long settled that, "to prevent circumvention of the administrative processes crafted by Congress, jurisdiction under subsection 1581(i)

may not be invoked if jurisdiction under another subsection of section 1581 is or could have been available, unless the other subsection is shown to be manifestly inadequate." *Hartford Fire Ins. Co. v. United States*, 544 F.3d 1289, 1292 (Fed. Cir. 2008) (citing *Int'l Custom Prods.*, 467 F.3d at 1327). In other words, if a litigant has access to the Court under subsections (a) through (h), "'it must avail itself of this avenue of approach by complying with all the relevant prerequisites thereto,'" unless the remedy available under another subsection is "manifestly inadequate." *Chemsol*, 755 F.3d at 1349 (quoting *Hartford Fire Ins. Co. v. United States*, 544 F.3d 1289, 1292 (Fed. Cir. 2008)).

As noted, there is no importation that Eteros can point to forming the basis of jurisdiction in this Court. But even if CBP had excluded any of Eteros's merchandise, which we believe CBP has not, Eteros could file a protest and come to this Court under section 1581(a). The CIT is a court of limited jurisdiction that exclusively hears cases involving import transactions and other issues related to international trade law. Here, by contrast, CBP's immigration-related actions with respect to individuals employed by Eteros in no way relate to the importation of merchandise or the exemption to the CSA's import ban on drug paraphernalia examined by the Court in *Eteros I*. In *Eteros I*, the CIT held that Eteros's importation of its cannabis-related drug paraphernalia into Washington State was authorized for purposes of 21 U.S.C. § 863(f)(1). The *Eteros I* decision in no way pertains to the immigration status and admissibility of Eteros's employees under entirely separate statutory provisions. Eteros's request for a declaratory judgment concerning the impact of the *Eteros I* decision on the admissibility of *people* implicates immigration laws, when the *Eteros I* decision and the Court's jurisdiction are both

generally limited to the admissibility of imported *merchandise*. Such a request for the Court to opine on matters over which it lacks jurisdiction must be rejected.

III.    **THIS COURT CANNOT PROVIDE THE RELIEF THAT ETEROS SEEKS**

A.    Because the Court Lacks Jurisdiction It Cannot Issue a Declaratory Judgment

Because the Court lacks jurisdiction, it cannot issue a declaratory judgment, which is the relief sought by Eteros in this case. Eteros cites 28 U.S.C. § 2201 and 28 U.S.C. § 1651 as a basis for seeking a declaratory judgment from this Court. Compl. ¶ 1. A federal district court may issue a declaratory judgment, pursuant to the Declaratory Judgment Act, "[i]n a case of actual controversy within its jurisdiction," to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. "A declaratory judgment is 'an extraordinary remedy,' which rests 'in the sound discretion' of the district court." *John v. Essentia Ins. Co.*, 708 F. Supp. 3d 694, 701 (D. Md. 2023) (quoting *Aetna Cas. & Surety Co. v. Quarles*, 92 F.2d 321, 324 (4th Cir. 1937)). Only if the court has jurisdiction, can it then consider whether one of two criteria are met in deciding whether to issue a declaratory judgment: "1) whether the judgment will serve a useful purpose in clarifying the legal relations at issue, or 2) whether the judgment will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Glenn v. Thomas Fortune Fay*, 222 F. Supp. 3d 31, 35 (D.D.C. 2016).

Eteros's other cited basis for seeking a declaratory judgment, 28 U.S.C. § 1651(a), states that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." Eteros concedes that "the Act does not provide an independent basis for jurisdiction," but goes on to claim that "[i]n this case,

[the Act] is invoked to aid the Court's jurisdiction under 28 U.S.C. § 1581(i)(1)(D) by ensuring the administration and enforcement of its prior ruling in Eteros."  Pl.'s Mot. for Entry of an Expedited Scheduling Order (ECF no. 13) at 9, n.12.  However, the CIT does not have jurisdiction over immigration-related matters.  Accordingly, the statutory requirements under 28 U.S.C. § 1651 for a declaratory judgment are not met in this case.

    B.   <u>A Declaratory Judgment Is Inappropriate in this Case Because the Underlying Facts are Wholly Different than Those Before the Court in *Eteros I*</u>

Additionally, because the underlying facts in this case are wholly different than those before the Court in *Eteros I*, the issuance of a declaratory judgment would be inappropriate.  Eteros contends that "Customs has taken action against Eteros' executives, for doing **nothing more** than engaging in the activity which this Court found to be lawful" in the *Eteros I* decision, *i.e.*, the importation of certain marijuana paraphernalia into the United States, specifically Washington State.  Pl.'s Mot. for Entry of an Expedited Scheduling Order (ECF no. 13) at 3 (emphasis added).  Eteros's statement is factually inaccurate.  Rather, CBP's immigration actions regarding Eteros's employees were based on their separate encounters at the border and did not involve the importation of marijuana-related paraphernalia.  *See generally* 8 U.S.C. § 1101, *et seq.* (detailing admission, exclusion, removal, and naturalization of aliens).  During those encounters, CBP referred Ms. James and Mr. McKellar to secondary inspection, where CBP attempted to conduct interviews and collect sworn statements regarding their roles and business activities at Eteros, including the marketing, distribution, and sale of Eteros's cannabis harvesting equipment.  *See generally*, 8 C.F.R. § 235 (discussing the inspection of persons applying for admission).  These various factors collectively informed CBP's assessment of their admissibility to the United States.

Eteros characterizes CBP's immigration actions specific to two of its employees as being based on the CSA's ban on imports of drug paraphernalia under 21 U.S.C. § 863(a), which they are not. Rather, CBP's immigration-related actions were based on provisions of a separate statute, the Immigration and Nationality Act (INA), 8 U.S.C. § 1101, *et seq.*, and matters related to immigration are not appropriately before this Court.

In sum, because the CIT clearly lacks jurisdiction over the immigration challenges at the heart of this dispute, Eteros has no cognizable basis to pursue a declaratory judgment. Additionally, because the facts before the Court in *Eteros I* were entirely different from those present here, it would be inappropriate for the Court to issue a declaratory judgment concerning laws with no connection to international trade, the result of which would be a vast expansion of the *Eteros I* decision to reach facts and circumstances that were not present before the court in that case. For these reasons, the relief requested by plaintiff cannot be provided by the Court.

15

## **CONCLUSION**

For these reasons, we respectfully request that the Court dismiss this action for

lack of subject-matter jurisdiction.

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

/s/ Aimee Lee
AIMEE LEE
Assistant Director

/s/ Guy Eddon
GUY EDDON
Senior Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
(212) 264-9232 or 9230
*Attorneys for Defendant*

Of Counsel:
Alexandra Khrebtukova
Zachary Simmons
Office of the Assistant Chief Counsel
U.S. Customs and Border Protection

Dated: May 2, 2025

16

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. GARY S. KATZMANN, JUDGE

| | |
|---|---|
| ETEROS TECHNOLOGIES USA, INC., | : |
| | : |
| Plaintiff, | :          Court No. 25-00036 |
| | : |
| v. | : |
| | : |
| UNITED STATES, | : |
| | : |
| Defendant. | : |
| | : |

## **CERTIFICATE OF COMPLIANCE**

I, Guy Eddon, a trial attorney in the Office of the Assistant Attorney General,

Civil Division, Commercial Litigation Branch, International Trade Field Office, who is

responsible for the foregoing memorandum, relying upon the word count feature of the

word processing program used to prepare the memorandum, certify that this

memorandum complies with word count limitation under the Court's chambers

procedures, and 4,307 words.


/s/ Guy Eddon