# EXHIBIT 1

March 28, 2025

U.S. Department of Homeland Security

U.S. Citizenship and Immigration Services

California Service Center

2642 MICHELLE DRIVE

TUSTIN, CA 92780

ETEROS TECHNOLOGIES USA INC
c/o DOUGLAS A COWGILL
CROSS BORDER VISAS U S BUSINESS IM
808 NELSON STREET FLR 17
VANCOUVER, BRITISH COLUMBIA V6Z2H2
CANADA




Form I-129, Petition for a Nonimmigrant Worker

## NOTICE OF INTENT TO REVOKE

On October 25, 2024, you, ETEROS TECHNOLOGIES USA INC (petitioner), filed a Petition for a Nonimmigrant Worker (Form I-129) with U.S. Citizenship and Immigration Services (USCIS), seeking nonimmigrant classification for AMANDA JAMES (beneficiary) under section 101(a)(15)(L) of the Immigration and Nationality Act (INA). USCIS approved the petition on February 11, 2025.

After careful consideration of the record, and in accordance with the INA and Title 8 of the Code of Federal Regulations (8 CFR), USCIS intends to revoke the petition.

USCIS may revoke an L-1 petition at any time, even after the expiration of the petition, subject to the conditions set forth in 8 CFR 214.2(l)(9). USCIS is sending you this notice of intent to revoke your L-1 petition pursuant to 8 CFR 214.2(l)(9)(iii)(A)(5), based on its determination that the approval of the petition involved gross error.

Upon the initial filing of the instant petition, you provided a letter of support dated October 16, 2024, which was signed by Aaron McKeller, CEO on behalf of your company. In his letter, Mr. McKeller explains:

> "Eteros' sale of this equipment in the US does not present issues of illegality. However, should the Department of Homeland Security, USCIS, or USCBP, want to explore this issue, Eteros directs the reader to **Appendix 1**, which consists of a letter from Eteros' Customs Counsel supported by three attachments. The letter details the legal framework surrounding the importation of Eteros cannabis-related merchandise, citing the favorable determination from the U.S. Court of International Trade (CIT) that Eteros is authorized to import such merchandise under 21 U.S.C. § 863(f)(1)…
>
> The CIT rulings in Eteros Technologies USA Inc. v. United States…established that Eteros' importation of cannabis-related merchandise is lawful and not subject to federal prohibitions."

However, Mr. McKeller's characterization is not quite accurate. In the ruling of your case, the U.S. Court of International Trade ("CIT") did not find that your cannabis-related merchandise does not

constitute drug paraphernalia under the Controlled Substances Act ("CSA"). Instead, the court found that your cannabis-related merchandise fell under the exemption at 21 U.S.C. § 863(f) which states, in part:

> This section shall not apply to
>
> (1) any person authorized by local, State, or Federal law to manufacture, possess, or distribute such [paraphernalia] items;

In November 2012, the state of Washington amended its prohibitions on drug paraphernalia to exclude items related to marijuana. In doing so, the CIT found that the state of Washington effectively "authorized" your company to manufacture, possess, or distribute your cannabis-related merchandise in Washington State. However, the CIT ruling only applies to the state of Washington, and therefore, although you may have an exemption under 21 U.S.C. § 863(f)(1) for activities you conduct in Washington, the evidence in the record does not indicate that you restrict the marketing, distribution, and sale of your cannabis-related merchandise to only Washington State.

On November 15, 2024, USCIS issued a request for evidence ("RFE") notice but did not address the issue as to whether the activities your business conducts in areas outside of Washington would also qualify for an exemption under 21 U.S.C. § 863(f)(1).

You have stated that the beneficiary will spend 20% of her time "Directing the Sales department," 20% "Directing the Marketing department," and 20% "Directing the Customer Experience department," all of which are related to your cannabis-related merchandise, which, as will be discussed in more detail below, appears to indicate that the beneficiary's proposed employment involves aiding and abetting the cultivation of marijuana, a Schedule I controlled substance. USCIS's decision here is based on a finding that the beneficiary's employment would be in violation of 21 U.S.C. § 812, 841(a)(1) which is not discussed in the CIT ruling.

Due to the fact that USCIS did not address this issue prior to its initial decision, it is determined that approval of the petition involved gross error because the proposed employment involves aiding and abetting the cultivation, distribution, and possession of marijuana in violation of the Controlled Substances Act (CSA).

**Procedural History**

On June 10, 2021, the beneficiary appeared at the Port of Entry in Blaine, Washington with a prior Form I-129, Petition for Nonimmigrant Worker (receipt # ▮▮▮▮▮▮▮▮▮▮) requesting an L-1A classification. The beneficiary provided documentation indicating that your company is an "equipment manufacturer" and that the beneficiary would perform in an executive capacity as the Director of Strategy and Business Development. The evidence submitted with the initial Form I-129 also indicated that the beneficiary's job responsibilities would include directing the management, responsibility for the organization's strategic planning efforts, overseeing unique partnership and sales arrangements, and serving as a subject matter expert on Good Manufacturing Practices with respect to processing equipment. CBP approved the petition filed on behalf of the beneficiary for a validity period of three (3) years, from June 10, 2021 until June 9, 2024.

After the expiration of the beneficiary's first Form I-129, the beneficiary appeared at the Port of Entry in Blaine, Washington on June 11, 2024, requesting an L-1A classification with a new Form I-129 (receipt # ▮▮▮▮▮▮▮▮▮▮). This time, the beneficiary was interviewed. The interview revealed that

USCIS encourages you to sign up for a USCIS online account. To learn more about creating an account and the benefits, go to https://www.uscis.gov/file-online.

your company is engaged in the sale and distribution of agricultural equipment for processing of cannabis, including marijuana. As a result, on June 11, 2024, the beneficiary was refused admission into the United States. CBP forwarded the petition to USCIS with a recommendation for denial. On August 30, 2024, you requested to withdraw that petition. USCIS processed a withdrawal on September 11, 2024.

On November 25, 2024, you filed the current L-1A petition directly with USCIS. This petition was approved by USCIS on February 11, 2025, in error. USCIS now intends to revoke the approval of the petition.

## **Legality of Employment**

USCIS's primary responsibility is to adjudicate immigration benefit requests available under applicable immigration law. However, USCIS will also take into account other intersecting areas of law, including federal criminal law. In other words, USCIS cannot approve a visa petition that is based on employment that contravenes another federal law.

Here, USCIS must determine whether the employment in question violates federal law under the Controlled Substances Act (CSA) found at 21 of the U.S. Code, Section 801 et seq. Specifically, the CSA imposes restrictions on the manufacture and distribution of marijuana in the United States. 21 U.S.C. § 812, 841(a)(1). Although certain states have legalized and decriminalized marijuana, marijuana remains a Schedule I controlled substance under 21 USC § 812(c). The CSA states that "it shall be unlawful for any person knowingly or intentionally … manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance. 21 U.S.C. §841(a)(1). It is also illegal under federal law to conspire to **or aid and abet the cultivation, distribution, and possession of marijuana** as defined in the CSA. 21 U.S.C. § 846; 18 U.S.C. § 2; 18 U.S.C. § 371.

The CSA defines marijuana as the following:

> A. Subject to subparagraph (B), the term "marihuana" means all parts of the plant Cannabis sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds or resin.
>
> B. The term 'marihuana' does not include –
>
>> (i) hemp, as defined in section 297A of the Agricultural Marketing Act of 1946;

The term 'hemp' in section 297A of the Agricultural Marketing Act of 1946 is added as:

> The term 'hemp' means the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis. P.L. 115-334, Sec. 10113.

The mere presence of cannabidiol (CBD) does not determine whether a substance is within the scope of the CSA. If the CBD is derived from the viable seeds, leaves, and flower of a plant containing more than 0.3 percent of tetrahydrocannabinol (THC), then it is referred to as cannabis or marijuana CBD and is subject to CSA regulation. Although certain states have legalized and decriminalized marijuana for medicinal and/or recreational use, marijuana remains Schedule I controlled substance under 21

USC § 812(c).

On the other hand, if the CBD is derived from a plant containing less than 0.3 percent THC, it is referred to as hemp CBD and is not regulated by the CSA but may be subject to other regulations.

Notably, the Agriculture Improvement Act of 2018 (commonly known as the "2018 Farm Bill"), generally authorized the cultivation, processing, distribution, and possession of hemp that is produced in a manner consistent with the 2018 Farm Bill and any of its associated restrictions and regulations. P.L. 115-334, §§10113-10114.  The 2018 Farm Bill also removed hemp, as defined above, from the statutory definition of marijuana under the CSA. P.L. 115-334 §12619(a) and (b). Importantly, as mentioned above, products made from hemp generally contain no more than 0.3 percent THC.

In implementing the 2018 Farm Bill, the Drug Enforcement Agency states in 85 FR 51639:

> Therefore, the [Agriculture Improvement Act of 2018, Public Law 115-334 (AIA)] limits the control of tetrahydrocannabinols (for Controlled Substance Code Number 7370). For tetrahydrocannabinols that are naturally occurring constituents of the plant material, Cannabis sativa L., any material that contains 0.3% or less of $\Delta^9$-THC by dry weight is not controlled, unless specifically controlled elsewhere under the CSA. Conversely, for tetrahydrocannabinols that are naturally occurring constituents of Cannabis sativa L., any such material that contains greater than 0.3% of $\Delta^9$-THC by dry weight remains a controlled substance in schedule I.
>
> The AIA does not impact the control status of synthetically derived tetrahydrocannabinols (for Controlled Substance Code Number 7370) because the statutory definition of "hemp" is limited to materials that are derived from the plant Cannabis sativa L. For synthetically derived tetrahydrocannabinols, the concentration of $\Delta^9$-THC is not a determining factor in whether the material is a controlled substance. All synthetically derived tetrahydrocannabinols remain schedule I controlled substances.
>
> 85 FR 51639.

Any person who aids, abets, counsels, commands, induces or procures the commission of an offense against the United States is punishable as a principal. 18 U.S.C. §2

During the June 11, 2024 interview with CBP, the beneficiary stated that the petitioner manufactures and distributes machinery used for processing a Schedule I controlled substance, namely marijuana. While the beneficiary indicated that she does not know the THC level of products that the petitioner's clients are producing, the beneficiary stated that roughly ninety (90) percent of the machinery the petitioner sells is used in the production of marijuana and is specifically marketed for that purpose. When asked if she knew what percentage of the machines are sold to cannabis businesses versus hemp businesses, the beneficiary stated "Most of these businesses are producing products that are both cannabis and hemp so if they have 20 different skews some of them might be hemp product and some of them might be cannabis skews. So I would say roughly 10 percent would be for hemp products and the rest would be mixed."  The beneficiary was then asked a follow up question: "so roughly 90 percent of your product is used in the production of cannabis marijuana products?" She responded "it would be a step along the way. Our equipment separates flower from leaf but that doesn't make a complete product, so it is the first in the post-harvest production steps."

The beneficiary indicated that she knowingly and purposefully markets the equipment for that use, using various methods, such as trade shows, email campaigns, and web-based search engine optimization marketing.

4 of 7

www.uscis.gov

USCIS encourages you to sign up for a USCIS online account. To learn more about creating an account and the benefits, go to https //www.uscis.gov/file-online.

When asked about the equipment marketed and sold by the petitioner, the beneficiary stated that "we manufacture harvesting equipment" that is "used to break down plant material into different components" and is "primarily for cannabis plants but it could be used on any other plants with a similar morphology to it".

Also, when asked to elaborate regarding who the equipment is marketed to, the beneficiary stated that the petitioning business is "targeting cultivators and cannabis processors". The beneficiary further indicated that the petitioning business specifically targets "licensed cannabis and hemp producers. Some come from the pharmaceutical side and some come from the agriculture side. Both have similar needs".

The beneficiary has been working with your company in an executive capacity as the Director of Strategy and Business Development since 2017 and is thus intimately familiar with your company's operations and clients. The interview revealed that the beneficiary directs the management of your company and helps you market your machinery to the marijuana industry, business to business, and also provides demonstrations of your equipment at trade shows. The beneficiary stated that your business knowingly and purposefully markets the equipment for use in the production of marijuana. As such, the evidence in the record as well as the beneficiary's sworn testimony to CBP suggests that the proposed employment involves aiding and abetting the cultivation of marijuana, a Schedule I controlled substance.

Moreover, the evidence suggests that your company is directly involved in manufacturing and selling harvesting equipment that is specifically designed and marketed to process marijuana plants. It is noted that the petitioner's offices are located in the state of Nevada and the petitioning organization markets and sells the product nationwide and not only in the state of Washington. As such, while the petitioning organization may be "authorized" under 21 U.S.C. § 863(f)(1) and thereby exempted in Washington State from subsection 863(a)'s prohibition on importing the harvesting equipment, your organization's business activities and the beneficiary's employment appear to aid and abet the cultivation, distribution, and possession of marijuana in violation of the Controlled Substances Act.

Except where a different standard is specified by law, a petitioner must prove eligibility for the requested immigration benefit by a preponderance of the evidence. *Matter of Chawathe*, 25 I&N Dec. 369, 375-76 (AAO 2010). Under the preponderance of the evidence standard, the evidence must demonstrate that the petitioner claim is "probably true." Id. at 376. It is the petitioner's burden to show by a preponderance of the evidence that the proposed employment is lawful under federal law. However, it has not been demonstrated that it is more likely than not that the beneficiary's employment would not violate federal law.

The beneficiary's employment appears to aid and abet the cultivation, distribution, and possession of marijuana in violation of the Controlled Substances Act. Thus, in accordance with 8 CFR 214.2(l)(9)(iii)(A)(5), it is the intent of the USCIS to revoke the petition because the approval of the petition involved gross error.

You are afforded 30 days from the date of this notice to submit additional information, evidence or arguments to support the petition. Additionally, when USCIS serves a notice by mail, three days are added to the prescribed period in which to respond. Any such information, evidence or arguments will be carefully reviewed prior to a final determination in this matter. Failure to respond, however, will result in adjudication of the petition on the basis of the record, as it is now constituted, including the information referred to above.

USCIS encourages you to sign up for a USCIS online account. To learn more about creating an account and the benefits, go to https //www.uscis.gov/file-online.

**Your response must be received in this office by April 30, 2025.**

Any response to this notice should be sent to the following address:

<u>U.S. CITIZENSHIP AND IMMIGRATION SERVICES</u>
**Texas Service Center**
**6046 N Belt Line Rd**
**Irving, TX 75038**

For more information, visit our website at **www.uscis.gov** or call us at **1-800-375-5283**.

Telephone service for the hearing impaired: **1-800-767-1833**.

**PLACE THE ATTACHED COVERSHEET AND THIS ENTIRE LETTER ON TOP OF YOUR RESPONSE.**

Sincerely,

John M. Allen
SCOPS Deputy Associate Director of Adjudications

**COVERSHEET**
**SCANNING REQUIRED**
PLEASE RETURN THE REQUESTED INFORMATION AND
ALL SUPPORTING DOCUMENTS **WITH**
**THIS PAGE ON TOP TO:**
**USCIS TSC**
**Attn: RFE/NOIT/NOIR/NOID RESPONSE**
**6046 N Belt Line Rd. STE 172**
**Irving, TX 75038-0015**

Please check the appropriate box regarding if there is a new Form G-28, Notice of Entry of Appearance as Attorney or Accredited Representative, additional fees, additional forms, etc. Please place the new Form G-28, additional fees, additional forms directly under this sheet.

**Yes, there is:**

☐ **A New G-28**   ☐ **Additional Fees**
☐ **Additional Forms**   ☐ **Other:**

If you have moved, write your current address in the blank area below. Please be sure to write clearly.

**(Select appropriate check box)**

☐ **Applicant/Beneficiary**   ☐ **Petitioner**

**New Address:**

As required by Title 8, Code of Federal Regulations (8 CFR) section 265.1, *Reporting change of address*: Except for those exempted by section 263(b) of the Act, all aliens in the United States required to register under section 262 of the Act must report each change of address and new address within 10 days of such change in accordance with instructions provided by USCIS.

**NOTICE OF INTENT TO REVOKE**

Form I-129, Petition for a Nonimmigrant Worker

JAMES, AMANDA
,

USCIS encourages you to sign up for a USCIS online account. To learn more about creating an account and the benefits, go to https //www.uscis.gov/file-online.

March 28, 2025

**U.S. Department of Homeland Security**
U.S. Citizenship and Immigration Services
California Service Center
2642 MICHELLE DRIVE
TUSTIN, CA 92780

ETEROS TECHNOLOGIES USA INC
c/o AARON MCKELLAR
6175 SOUTH SANDHILL RD STE 600
LAS VEGAS, NV 89120



Form I-129, Petition for a Nonimmigrant Worker

## NOTICE OF INTENT TO REVOKE

On October 25, 2024, you, ETEROS TECHNOLOGIES USA INC (petitioner), filed a Petition for a Nonimmigrant Worker (Form I-129) with U.S. Citizenship and Immigration Services (USCIS), seeking nonimmigrant classification for AMANDA JAMES (beneficiary) under section 101(a)(15)(L) of the Immigration and Nationality Act (INA). USCIS approved the petition on February 11, 2025.

After careful consideration of the record, and in accordance with the INA and Title 8 of the Code of Federal Regulations (8 CFR), USCIS intends to revoke the petition.

USCIS may revoke an L-1 petition at any time, even after the expiration of the petition, subject to the conditions set forth in 8 CFR 214.2(l)(9). USCIS is sending you this notice of intent to revoke your L-1 petition pursuant to 8 CFR 214.2(l)(9)(iii)(A)(5), based on its determination that the approval of the petition involved gross error.

Upon the initial filing of the instant petition, you provided a letter of support dated October 16, 2024, which was signed by Aaron McKeller, CEO on behalf of your company. In his letter, Mr. McKeller explains:

> "Eteros' sale of this equipment in the US does not present issues of illegality. However, should the Department of Homeland Security, USCIS, or USCBP, want to explore this issue, Eteros directs the reader to **Appendix 1**, which consists of a letter from Eteros' Customs Counsel supported by three attachments. The letter details the legal framework surrounding the importation of Eteros cannabis-related merchandise, citing the favorable determination from the U.S. Court of International Trade (CIT) that Eteros is authorized to import such merchandise under 21 U.S.C. § 863(f)(1)…
>
> The CIT rulings in Eteros Technologies USA Inc. v. United States…established that Eteros' importation of cannabis-related merchandise is lawful and not subject to federal prohibitions."

However, Mr. McKeller's characterization is not quite accurate. In the ruling of your case, the U.S. Court of International Trade ("CIT") did not find that your cannabis-related merchandise does not constitute drug paraphernalia under the Controlled Substances Act ("CSA"). Instead, the court found that your cannabis-related merchandise fell under the exemption at 21 U.S.C. § 863(f) which states, in

part:

>This section shall not apply to
>
>(1)   any person authorized by local, State, or Federal law to manufacture, possess, or distribute such [paraphernalia] items;

In November 2012, the state of Washington amended its prohibitions on drug paraphernalia to exclude items related to marijuana. In doing so, the CIT found that the state of Washington effectively "authorized" your company to manufacture, possess, or distribute your cannabis-related merchandise in Washington State. However, the CIT ruling only applies to the state of Washington, and therefore, although you may have an exemption under 21 U.S.C. § 863(f)(1) for activities you conduct in Washington, the evidence in the record does not indicate that you restrict the marketing, distribution, and sale of your cannabis-related merchandise to only Washington State.

On November 15, 2024, USCIS issued a request for evidence ("RFE") notice but did not address the issue as to whether the activities your business conducts in areas outside of Washington would also qualify for an exemption under 21 U.S.C. § 863(f)(1).

You have stated that the beneficiary will spend 20% of her time "Directing the Sales department," 20% "Directing the Marketing department," and 20% "Directing the Customer Experience department," all of which are related to your cannabis-related merchandise, which, as will be discussed in more detail below, appears to indicate that the beneficiary's proposed employment involves aiding and abetting the cultivation of marijuana, a Schedule I controlled substance. USCIS's decision here is based on a finding that the beneficiary's employment would be in violation of 21 U.S.C. § 812, 841(a)(1) which is not discussed in the CIT ruling.

Due to the fact that USCIS did not address this issue prior to its initial decision, it is determined that approval of the petition involved gross error because the proposed employment involves aiding and abetting the cultivation, distribution, and possession of marijuana in violation of the Controlled Substances Act (CSA).

### Procedural History

On June 10, 2021, the beneficiary appeared at the Port of Entry in Blaine, Washington with a prior Form I-129, Petition for Nonimmigrant Worker (receipt # ███████████) requesting an L-1A classification. The beneficiary provided documentation indicating that your company is an "equipment manufacturer" and that the beneficiary would perform in an executive capacity as the Director of Strategy and Business Development.  The evidence submitted with the initial Form I-129 also indicated that the beneficiary's job responsibilities would include directing the management, responsibility for the organization's strategic planning efforts, overseeing unique partnership and sales arrangements, and serving as a subject matter expert on Good Manufacturing Practices with respect to processing equipment. CBP approved the petition filed on behalf of the beneficiary for a validity period of three (3) years, from June 10, 2021 until June 9, 2024.

After the expiration of the beneficiary's first Form I-129,  the beneficiary appeared at the Port of Entry in Blaine, Washington on June 11, 2024, requesting an L-1A classification with a new Form I-129 (receipt # ███████████).  This time, the beneficiary was interviewed.  The interview revealed that your company is engaged in the sale and distribution of agricultural equipment for processing of cannabis, including marijuana.  As a result, on June 11, 2024, the beneficiary was refused admission

into the United States. CBP forwarded the petition to USCIS with a recommendation for denial. On August 30, 2024, you requested to withdraw that petition. USCIS processed a withdrawal on September 11, 2024.

On November 25, 2024, you filed the current L-1A petition directly with USCIS. This petition was approved by USCIS on February 11, 2025, in error. USCIS now intends to revoke the approval of the petition.

## **Legality of Employment**

USCIS's primary responsibility is to adjudicate immigration benefit requests available under applicable immigration law. However, USCIS will also take into account other intersecting areas of law, including federal criminal law. In other words, USCIS cannot approve a visa petition that is based on employment that contravenes another federal law.

Here, USCIS must determine whether the employment in question violates federal law under the Controlled Substances Act (CSA) found at 21 of the U.S. Code, Section 801 et seq. Specifically, the CSA imposes restrictions on the manufacture and distribution of marijuana in the United States. 21 U.S.C. § 812, 841(a)(1). Although certain states have legalized and decriminalized marijuana, marijuana remains a Schedule I controlled substance under 21 USC § 812(c). The CSA states that "it shall be unlawful for any person knowingly or intentionally … manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance. 21 U.S.C. §841(a)(1). It is also illegal under federal law to conspire to **or aid and abet the cultivation, distribution, and possession of marijuana** as defined in the CSA. 21 U.S.C. § 846; 18 U.S.C. § 2; 18 U.S.C. § 371.

The CSA defines marijuana as the following:

> A. Subject to subparagraph (B), the term "marihuana" means all parts of the plant Cannabis sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds or resin.
>
> B. The term 'marihuana' does not include –
>
> > (i) hemp, as defined in section 297A of the Agricultural Marketing Act of 1946;

The term 'hemp' in section 297A of the Agricultural Marketing Act of 1946 is added as:

> The term 'hemp' means the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis. P.L. 115-334, Sec. 10113.

The mere presence of cannabidiol (CBD) does not determine whether a substance is within the scope of the CSA. If the CBD is derived from the viable seeds, leaves, and flower of a plant containing more than 0.3 percent of tetrahydrocannabinol (THC), then it is referred to as cannabis or marijuana CBD and is subject to CSA regulation. Although certain states have legalized and decriminalized marijuana for medicinal and/or recreational use, marijuana remains Schedule I controlled substance under 21 USC § 812(c).

USCIS encourages you to sign up for a USCIS online account. To learn more about creating an account and the benefits, go to https://www.uscis.gov/file-online.

On the other hand, if the CBD is derived from a plant containing less than 0.3 percent THC, it is referred to as hemp CBD and is not regulated by the CSA but may be subject to other regulations.

Notably, the Agriculture Improvement Act of 2018 (commonly known as the "2018 Farm Bill"), generally authorized the cultivation, processing, distribution, and possession of hemp that is produced in a manner consistent with the 2018 Farm Bill and any of its associated restrictions and regulations. P.L. 115-334, §§10113-10114.  The 2018 Farm Bill also removed hemp, as defined above, from the statutory definition of marijuana under the CSA. P.L. 115-334 §12619(a) and (b). Importantly, as mentioned above, products made from hemp generally contain no more than 0.3 percent THC.

In implementing the 2018 Farm Bill, the Drug Enforcement Agency states in 85 FR 51639:

> Therefore, the [Agriculture Improvement Act of 2018, Public Law 115-334 (AIA)] limits the control of tetrahydrocannabinols (for Controlled Substance Code Number 7370). For tetrahydrocannabinols that are naturally occurring constituents of the plant material, Cannabis sativa L., any material that contains 0.3% or less of $\Delta^9$-THC by dry weight is not controlled, unless specifically controlled elsewhere under the CSA. Conversely, for tetrahydrocannabinols that are naturally occurring constituents of Cannabis sativa L., any such material that contains greater than 0.3% of $\Delta^9$-THC by dry weight remains a controlled substance in schedule I.
>
> The AIA does not impact the control status of synthetically derived tetrahydrocannabinols (for Controlled Substance Code Number 7370) because the statutory definition of "hemp" is limited to materials that are derived from the plant Cannabis sativa L. For synthetically derived tetrahydrocannabinols, the concentration of $\Delta^9$-THC is not a determining factor in whether the material is a controlled substance. All synthetically derived tetrahydrocannabinols remain schedule I controlled substances.
>
> 85 FR 51639.

Any person who aids, abets, counsels, commands, induces or procures the commission of an offense against the United States is punishable as a principal. 18 U.S.C. §2

During the June 11, 2024 interview with CBP, the beneficiary stated that the petitioner manufactures and distributes machinery used for processing a Schedule I controlled substance, namely marijuana. While the beneficiary indicated that she does not know the THC level of products that the petitioner's clients are producing, the beneficiary stated that roughly ninety (90) percent of the machinery the petitioner sells is used in the production of marijuana and is specifically marketed for that purpose. When asked if she knew what percentage of the machines are sold to cannabis businesses versus hemp businesses, the beneficiary stated "Most of these businesses are producing products that are both cannabis and hemp so if they have 20 different skews some of them might be hemp product and some of them might be cannabis skews. So I would say roughly 10 percent would be for hemp products and the rest would be mixed."  The beneficiary was then asked a follow up question: "so roughly 90 percent of your product is used in the production of cannabis marijuana products?" She responded "it would be a step along the way. Our equipment separates flower from leaf but that doesn't make a complete product, so it is the first in the post-harvest production steps."

The beneficiary indicated that she knowingly and purposefully markets the equipment for that use, using various methods, such as trade shows, email campaigns, and web-based search engine optimization marketing.

When asked about the equipment marketed and sold by the petitioner, the beneficiary stated that "we

manufacture harvesting equipment" that is "used to break down plant material into different components" and is "primarily for cannabis plants but it could be used on any other plants with a similar morphology to it".

Also, when asked to elaborate regarding who the equipment is marketed to, the beneficiary stated that the petitioning business is "targeting cultivators and cannabis processors". The beneficiary further indicated that the petitioning business specifically targets "licensed cannabis and hemp producers. Some come from the pharmaceutical side and some come from the agriculture side. Both have similar needs".

The beneficiary has been working with your company in an executive capacity as the Director of Strategy and Business Development since 2017 and is thus intimately familiar with your company's operations and clients. The interview revealed that the beneficiary directs the management of your company and helps you market your machinery to the marijuana industry, business to business, and also provides demonstrations of your equipment at trade shows. The beneficiary stated that your business knowingly and purposefully markets the equipment for use in the production of marijuana. As such, the evidence in the record as well as the beneficiary's sworn testimony to CBP suggests that the proposed employment involves aiding and abetting the cultivation of marijuana, a Schedule I controlled substance.

Moreover, the evidence suggests that your company is directly involved in manufacturing and selling harvesting equipment that is specifically designed and marketed to process marijuana plants. It is noted that the petitioner's offices are located in the state of Nevada and the petitioning organization markets and sells the product nationwide and not only in the state of Washington. As such, while the petitioning organization may be "authorized" under 21 U.S.C. § 863(f)(1) and thereby exempted in Washington State from subsection 863(a)'s prohibition on importing the harvesting equipment, your organization's business activities and the beneficiary's employment appear to aid and abet the cultivation, distribution, and possession of marijuana in violation of the Controlled Substances Act.

Except where a different standard is specified by law, a petitioner must prove eligibility for the requested immigration benefit by a preponderance of the evidence. *Matter of Chawathe*, 25 I&N Dec. 369, 375-76 (AAO 2010). Under the preponderance of the evidence standard, the evidence must demonstrate that the petitioner claim is "probably true." Id. at 376. It is the petitioner's burden to show by a preponderance of the evidence that the proposed employment is lawful under federal law. However, it has not been demonstrated that it is more likely than not that the beneficiary's employment would not violate federal law.

The beneficiary's employment appears to aid and abet the cultivation, distribution, and possession of marijuana in violation of the Controlled Substances Act. Thus, in accordance with 8 CFR 214.2(l)(9)(iii)(A)(5), it is the intent of the USCIS to revoke the petition because the approval of the petition involved gross error.

You are afforded 30 days from the date of this notice to submit additional information, evidence or arguments to support the petition. Additionally, when USCIS serves a notice by mail, three days are added to the prescribed period in which to respond. Any such information, evidence or arguments will be carefully reviewed prior to a final determination in this matter. Failure to respond, however, will result in adjudication of the petition on the basis of the record, as it is now constituted, including the information referred to above.

**Your response must be received in this office by April 30, 2025.**

Any response to this notice should be sent to the following address:

**U.S. CITIZENSHIP AND IMMIGRATION SERVICES**
**Texas Service Center**
**6046 N Belt Line Rd**
**Irving, TX 75038**

For more information, visit our website at **www.uscis.gov** or call us at **1-800-375-5283**.

Telephone service for the hearing impaired: **1-800-767-1833**.

**PLACE THE ATTACHED COVERSHEET AND THIS ENTIRE LETTER ON TOP OF YOUR RESPONSE.**

Sincerely,

John M. Allen
SCOPS Deputy Associate Director of Adjudications

**COVERSHEET**
**SCANNING REQUIRED**
PLEASE RETURN THE REQUESTED INFORMATION AND
ALL SUPPORTING DOCUMENTS **WITH**
**THIS PAGE ON TOP TO:**
**USCIS TSC**
**Attn: RFE/NOIT/NOIR/NOID RESPONSE**
**6046 N Belt Line Rd. STE 172**
**Irving, TX 75038-0015**

Please check the appropriate box regarding if there is a new Form G-28, Notice of Entry of Appearance as Attorney or Accredited Representative, additional fees, additional forms, etc. Please place the new Form G-28, additional fees, additional forms directly under this sheet.

**Yes, there is:**

☐ **A New G-28**       ☐ **Additional Fees**
☐ **Additional Forms** ☐ **Other:**

If you have moved, write your current address in the blank area below. Please be sure to write clearly.

**(Select appropriate check box)**

☐ **Applicant/Beneficiary**    ☐ **Petitioner**

**New Address:**

As required by Title 8, Code of Federal Regulations (8 CFR) section 265.1, *Reporting change of address*: Except for those exempted by section 263(b) of the Act, all aliens in the United States required to register under section 262 of the Act must report each change of address and new address within 10 days of such change in accordance with instructions provided by USCIS.

**NOTICE OF INTENT TO REVOKE**

Form I-129, Petition for a Nonimmigrant Worker

JAMES, AMANDA
,