**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. GARY S. KATZMANN**
-------------------------------------------------------------------X

ETEROS TECHNOLOGIES USA, INC.,         :
         :

        **Plaintiff,**        :
         :

        *v.*        :      **Case No. 25-cv-36-GSK**
         :

UNITED STATES OF AMERICA,         :
         :
         :

        **Defendant.**        :
-------------------------------------------------------------------X

## <u>PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS</u>

NEVILLE PETERSON LLP

Richard F. O'Neill
701 Fifth Ave., Ste. 4200-2159
Seattle, WA 98104-4089
(206) 905-3648
roneill@npwny.com

John M. Peterson
Patrick B. Klein
One Exchange Plaza at 55 Broadway
New York, NY 10006
(212) 635-2730
jpeterson@npwny.com

*Counsel to Plaintiff Eteros Technologies USA, Inc.*

Dated: June 6, 2025

## <u>TABLE OF CONTENTS</u>

BACKGROUND ....................................................................................................2

I.  Federal Prohibition of "Drug Paraphernalia" and the Personal Authorization
    Exemption– 21 U.S.C. § 863(f)(1) ...............................................................2

    A.  *Eteros I* – CIT Confirms that "Persons Authorized" Under 21 U.S.C.
        § 863(f)(1) Are Exempt from Federal Prohibitions Otherwise Attendant to
        "Drug Paraphernalia." ........................................................................4

II. CBP's Retaliatory Actions Against Eteros's Executives (2024-2025). ...........5

    A.  Retaliation Against Eteros CEO Aaron McKellar: Issuance and Vacatur of
        Expedited Removal Order and Subsequent Vacatur of Same. ..............6

        1.  Expedited Removal of Eteros CEO Aaron McKellar................6

        2.  Defendant Gill Denies ERO Reconsideration............................7

        3.  Eteros Files Unrelated Actions in the U.S. Court of International Trade
            and the U.S. District Court for the Western District of Washington..........9

        4.  CBP Vacates McKellar's Removal Order but Maintains its Legal
            Position. .................................................................................12

        5.  CBP Refuses McKellar's April 29, 2025, Attempted U.S. Entry. ............13

    B.  Retaliation Against Other Eteros Executives. .....................................14

        1.  Amanda James, Director of Strategy & Business Development at
            Eteros: Denial, Grant, and Notice of Intent to Revoke Her L-1A Work
            Visa.........................................................................................14

        2.  Ryan Bjergso, Vice President of Operations at Eteros: NEXUS
            Revocation. ..............................................................................17

    C.  Eteros's FOIA Efforts and CBP's Non-Compliance. ..........................17

STANDARD OF REVIEW....................................................................................18

REQUEST TO INCORPORATE RECORD FROM *ETEROS I*...................................19

ARGUMENT.......................................................................................................20

I.  The CIT Has Jurisdiction Under 28 U.S.C. § 1581(i)(1)(D) to Prevent CBP From
    Undermining the Administration and Enforcement of this Court's Prior Judgment in
    *Eteros I*...................................................................................................20

    A.  The CIT's § 1581(i) Residual Jurisdiction Fills the Gap to Review Whether the
        Defendant has Corrupted the Administration and Enforcement of this Court's
        Prior § 1581(a) Judgment in *Eteros I*...............................................21

    B.  Eteros Seeks Declaratory Relief to Safeguard the Court's Prior *Eteros I* Ruling
        – Not to Obtain Immigration Benefits for Individual Employees Retaliated
        Against by Defendant.............................................................................23

C.    Section 1581(i)(1)(D) Is Properly Invoked to Preserve the Judicial Integrity of This Court and Its Prior Judgments, and to Prevent a Chilling Effect on CIT Litigants.................................................................................................................25

D.    The All Writs Act Supports Jurisdiction Under § 1581(i)(1)(D) and Empowers the Court to Protect its Judgment in *Eteros I*. ......................................................28

    1.    Statutory Authority for Invoking the All Writs Act in this Case. .............28

    2.    CBP's Retaliatory Actions Threaten the Integrity and Enforceability of this Court's Judgment in *Eteros I*............................................................30

    3.    The Government's Objections to All Writs Relief Are Unavailing..........33

II.    In the Alternative, the Court May Reopen *Eteros I* and Convert this Action to an Enforcement or Contempt Proceeding.............................................................................34

CONCLUSION....................................................................................................................36

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986) ...............................................19

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ......................................................................19

*Baker Perkins, Inc. v. Werner & Pfleiderer Corp.,* 710 F.2d 1561 (Fed Cir. 1983) ...................29

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) ........................................................19

*Cooper v. Pate,* 378 U.S. 546 (1964) ..........................................................................19

*Dietzsch v. Huidekoper,* 103 U.S. 494 (1880) ..............................................................29

*Duferco Steel, Inc. v. United States,* 403 F. Supp. 2d 1281 (Ct. Int'l Tr. 2005). ...............25, 26

*Eteros Technologies USA, Inc. v. United States,* 592 F. Supp. 3d 1313 (Ct. Int'l Tr. 2022).passim

*Former Emps. of Sonoco Prods. Co. v. United States,* 27 C.I.T. 812 (2003)...............................19

*Gould, Inc. v. United States,* 935 F.2d 1271 (Fed. Cir. 1991) ...........................................19

*Harris v. Nelson,* 394 U.S. 286 (1969) ........................................................................28

*Henke v. United States,* 60 F.3d 795 (Fed. Cir. 1995) ...................................................19

*In re March,* 988 F.2d 498 (4th Cir. 1993)....................................................................29

*Keirton, Inc. v. United States,* 600 F. Supp. 3d 1270 (Ct. Int'l Trade 2022) .......................4, 16

*McNutt v. Gen. Motors Acceptance Corp.,* 298 U.S. 178 (1936) ......................................19

*Miller & Co. v. United States,* 824 F.2d 961 (Fed. Cir. 1987). ........................................26

*Nat'l Fisheries Inst., Inc. v. United States Bureau of Customs & Border Prot.,* 637 F.
   Supp. 2d 1270 (Ct. Int'l Tr. 2009) ........................................................................22

*Nix v. Billington,* 448 F.3d 411 (D.C. Cir. 2006)........................................................35

*Norcal/Crosetti Foods v. United States,* 963 F.2d 356 (Fed. Cir. 1994)...............................21

*Norsk Hydro Can., Inc. v. United States,* 472 F.3d 1347 (Fed. Cir. 2006). ...............................18

*Peacock v. Thomas,* 516 U.S. 349 (1996) ...................................................................35

*Price v. Johnston,* 334 U.S. 266 (1948) ......................................................................28

*Reynolds v. Roberts,* 207 F.3d 1288 (11th Cir. 2000)......................................................35

*Scripps-Howard Radio, Inc. v. F.C.C.,* 316 U.S. 4 (1942).................................................32

*Shillitani v. United States,* 384 U.S. 364 (1966).............................................................35

*Shinyei Corporation of America v. United States,* 355 F.3d 1297 (Fed. Cir. 2004).........22, 26, 30

*Treez, Inc. v. DHS,* 2023 U.S. Dist. LEXIS 110823 (N.D. Cal. 2023)....................................17

*United States v. Islip,* 22 C.I.T. 852 (1998).................................................................19

*United States v. N.Y. Tel. Co.,* 434 U.S. 159 (1977).......................................................29

*Wood v. Santa Barbara Chamber of Commerce, Inc.,* 705 F.2d 1515 (9th Cir. 1983) ...............29

*Wyatt ex rel. Rawlins v. Rogers,* 92 F.3d 1074 (11th Cir. 1996)........................................35

*Zenith Elecs. Corp. v. United States,* 884 F.2d 556 (Fed. Cir. 1989) .................................30

*Zenith Radio Corp. v. United States,* 518 F. Supp. 1347  (Ct. Int'l Tr. 1981). ....................28, 32

**Statutes**

21 U.S.C. § 1907..........................................................................................passim

21 U.S.C. § 841............................................................................................passim

21 U.S.C. § 863............................................................................................passim

28 U.S.C. § 1331...............................................................................................11

28 U.S.C. § 1581..........................................................................................passim

28 U.S.C. § 1585........................................................................................23, 29

28 U.S.C. § 1651........................................................................................28, 29

28 U.S.C. § 2201.............................................................................................................2, 9
28 U.S.C. § 2643..........................................................................................................23, 30
8 U.S.C. § 1182..............................................................................................................passim
8 U.S.C. § 1225....................................................................................................................33
Agriculture Improvement Act of 2018, Pub. L. No. 115-334, 132 Stat. 4490 (2018)....................3

**Other Authorities**

Black's Law Dictionary (11th ed. 2019)......................................................................................21
*Customs Headquarters Ruling H327540 of March 7, 2024*.....................................................5, 16
H.R. Rep. No. 96-1235 (1980)..................................................................................................27
*New York Customs Ruling N335656 of November 9, 2023*..........................................................5
*New York Customs Ruling N340357 of June 18, 2024.*...............................................................5
*New York Customs Ruling N347153 of April 15, 2025*...............................................................5
*New York Customs Ruling N347161 of April 15, 2025*...............................................................5
*New York Customs Ruling N348157 of May 1, 2025*..................................................................5

**Regulations**

19 C.F.R. § 177.9.....................................................................................................................5
8 C.F.R. § 214.2....................................................................................................................15
8 C.F.R. § 235.4......................................................................................................................6

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. GARY S. KATZMANN
------------------------------------------------------------------X

ETEROS TECHNOLOGIES USA, INC.,                           :
                                                         :
                    Plaintiff,                           :
                                                         :
            v.                                           :      Case No.  25-cv-36-GSK
                                                         :
UNITED STATES OF AMERICA,                                :
                                                         :
                                                         :
                    Defendant.                           :
------------------------------------------------------------------X

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiff, Eteros Technologies USA, Inc. ("Plaintiff" or "Eteros"), by and through undersigned counsel, hereby responds in opposition to the motion to dismiss this action filed by Defendant, United States of America ("Defendant"). This case arises from Defendant's improper retaliation against Eteros and its executives following this Court's 2022 judgment in *Eteros Technologies USA, Inc. v. United States*, 592 F. Supp. 3d 1313 (Ct. Int'l Tr. 2022) ("*Eteros I*"), which held that the importation of cannabis-related equipment by state-authorized persons is exempt from federal prohibition under 21 U.S.C. § 863(f)(1). Despite that binding judgment, CBP has responded by retaliating directly against Eteros's Canadian executives—subjecting them to immigration removals, lifetime bans from entering the country, NEXUS revocations, and related adverse immigration actions—on the pretext that Eteros's cannabis-related equipment importations into the U.S. (determined lawful by this Court) constitute aiding and abetting narcotics trafficking under 21 U.S.C. §§ 841 and 1907. These actions are not only factually baseless, but legally impermissible: they rest on a deliberate perversion of stipulations made in *Eteros I,* a neutering of this Court's holding and the governing statute, and they undermine the

lawful administration and enforcement of the Court's final, unappealed, judgment.

Eteros brings this action under the Declaratory Judgments Act, 28 U.S.C. § 2201 *et seq*., and asserts that this Court has jurisdiction to hear it under 28 U.S.C. § 1581(i)(1)(D) to prevent further retaliation and preserve the judicial integrity of this Court by vindicating the core principle that federal agencies may not evade, punish, or reverse lawful judicial decisions through extrajudicial enforcement mechanisms. Defendant's motion to dismiss, which attempts to recast this case as an immigration matter outside this Court's competence, mischaracterizes the nature of the relief sought and the legal wrong at issue. As set forth below, the Court possesses jurisdiction under § 1581(i)(1)(D), and Plaintiff states a claim upon which declaratory relief may be granted.

## BACKGROUND

Eteros Technologies USA, Inc. ("Eteros") is a U.S. company that manufactures and distributes specialized agricultural equipment, including machinery used in cannabis processing, through operations in the U.S., and in coordination with its Canadian sister company, Eteros Technologies Inc. ("Eteros Canada").

## I.    Federal Prohibition of "Drug Paraphernalia" and the Personal Authorization Exemption– 21 U.S.C. § 863(f)(1)

Congress has established a single federal prohibition on "drug paraphernalia" in the Controlled Substances Act ("CSA"). *See* Mail Order Drug Paraphernalia Control Act of 1986, 21 U.S.C. § 863. In particular, § 863(a) makes it unlawful for any person "to sell or offer for sale drug paraphernalia," "to use the mails or any other facility of interstate commerce to transport drug paraphernalia," or "to import or export drug paraphernalia." Apart from § 863, no federal law specifically prohibits drug paraphernalia, or conduct relating thereto.

Congress built an exemption into § 863 that limits the reach of this federal ban. Section 863(f)(1) provides that "[t]his section shall not apply to … any person authorized by local,

State, or Federal law to manufacture, possess, or distribute such items." In other words, if a person is "authorized" under state, local, or federal law to engage in one of the listed activities with the items, then none of § 863's provisions – including the importation ban in § 863(a)(3) – apply.

Accordingly, depending on its use, cannabis-related equipment[1] could be considered "drug paraphernalia" under federal law (*see* 21 U.S.C. § 863 (d)), but Congress has expressly exempted from federal prohibition "<u>any person</u> authorized by local, State, or Federal law" to possess or distribute such items. 21 U.S.C. § 863 (f)(1) (emphasis added). Section 863(f)(1) thus operates as a *personal exemption* that attaches to individuals, corporate or natural persons, U.S. and foreign citizens alike. *See Eteros Techs. USA, Inc. v. United States*, 592 F. Supp. 3d 1313, 1321 (Ct. Int'l Tr. 2022) ("*Eteros I*") (citing the Government's brief, the CIT observed: "While it is true that 'subsection 863(f)(2) exempts an entire category of items, while **subsection 863(f)(1) … applies to … person[s]**,' Def.'s Br. at 17-18." (emphasis added)). In other words, state-authorized cannabis-related merchandise and conduct attendant thereto (*e.g.,* manufacture, possession, distribution) is legal under federal law. Eteros's products fall squarely within § 863(f)(1)'s exemption—confirming there is nothing "illicit" about Eteros's business that could constitute narcotics trafficking.[2]

---

[1] Notably, "cannabis" is an umbrella term encompassing both federally legal "hemp" and "marijuana," which remains a Schedule I controlled substance at the federal level. The Agriculture Improvement Act of 2018, Pub. L. No. 115-334, 132 Stat. 4490 (2018) (the "2018 Farm Bill") redefined "hemp" to exclude it from the definition of "marijuana" if it contains less than 0.3% THC. Equipment for processing low THC "hemp" is not considered "drug paraphernalia" because no controlled substances are involved; even though, the exact same equipment could be used with above 0.3% THC marijuana. In fact, the same cannabis crop will always originate as legal hemp without any detectable THC levels.

[2] *See* 21 U.S.C. § 1907(3) (defining "narcotics trafficking" as encompassing any "*illicit*" activity to cultivate, produce, manufacture, distribute, sell, finance, or transport controlled substances). Eteros's conduct is not "illicit" within the meaning of § 1907 because it is expressly authorized by federal law when undertaken by a "person authorized by local, State, or Federal law" pursuant to 21 U.S.C. § 863(f)(1). Both this Court and CBP have repeatedly confirmed that imports

A.  ***Eteros I* – CIT Confirms that "Persons Authorized" Under 21 U.S.C. § 863(f)(1) Are Exempt from Federal Prohibitions Otherwise Attendant to "Drug Paraphernalia."**

In *Eteros Techs. USA, Inc. v. United States*, 592 F. Supp. 3d 1313 (Ct. Int'l Trade 2022) ("*Eteros I*"), this Court squarely held that any person authorized under state law to engage in the conduct described in 863(f)(1)—*i.e.*, to manufacture, possess, or distribute the items otherwise prohibited by § 863(a)—is not subject to federal prohibitions attendant to "drug paraphernalia." *Id*. at 1321. In *Eteros I*, the company challenged CBP's exclusion of its merchandise – components of a machine used to process cannabis plant material – which CBP had treated as prohibited drug paraphernalia under the CSA, 21 U.S.C. § 863. The CIT held that Eteros is a person "'authorized' under 21 U.S.C. § 863(f)(1) and thereby exempted in Washington State from subsection 863(a)'s prohibition on importing drug paraphernalia." *Id.* at 1329. Accordingly, the Court ruled that "21 U.S.C. § 863 does not justify seizure or forfeiture of Eteros' merchandise," and ordered CBP to release the goods.

The Government did not appeal *Eteros I*, nor a similar decision in *Keirton, Inc. v. United States*, 600 F. Supp. 3d 1270 (Ct. Int'l Trade 2022), which reaffirmed this interpretation.[3] Indeed, in March 2024, CBP Headquarters issued *Customs Headquarters Ruling H327540 of March 7,*

---

of cannabis-related merchandise destined for states that have legalized cannabis, and undertaken by persons authorized under state law, are exempt from federal prohibitions on drug paraphernalia, and attendant consequences. *Eteros I*, 592 F. Supp. 3d 1313 (Ct. Int'l Trade 2022); *Keirton, Inc. v. United States*, 600 F. Supp. 3d 1270 (Ct. Int'l Trade 2022); CBP HQ Ruling H327540 (Mar. 7, 2024). Because Eteros's operations have been designed to always fall squarely within this exemption, and because the only potentially applicable federal prohibition (§ 863) is rendered inapplicable by express statutory exemption (§ 863(f)(1)), there is no basis to characterize Plaintiff's conduct—or the conduct of its officers—as "illicit." CBP knows this.

[3] Both *Eteros I* and *Keirton* stress the *personal* nature of the 863(f)(1) exemption, which turns on *whether the <u>person</u> is authorized under state law*. The exemption is personal and affirmative: a "person authorized" under state law and engaging in compliant § 863(f)(1) conduct is exempt not only from § 863's import ban, but also from related federal enforcement under Title 21, including criminal designations such as "narcotics trafficking."

*2024, formally* acknowledging that importing state-authorized cannabis paraphernalia is exempt from federal prohibitions.[4] As no other federal law prohibits conduct relating to "drug paraphernalia," once the § 863(f)(1) exemption applies, there is no federal authority available to criminalize or punish conduct compliant with § 863(f)(1).

This sequence provided that Eteros's import activities and U.S. operations are entirely lawful under federal law as interpreted by the CIT, and as adopted by CBP. And yet, despite these clear pronouncements, Defendants have treated Eteros and its personnel as illicit drug traffickers under 21 U.S.C. §§ 841 and 1907, inadmissible under the Immigration and Nationality Act, codified at 8 U.S.C. § 1182 ("INA § 212"), and specifically INA § 212(a)(2)(C), and leading to the dispute now before this Court.

## II.    CBP's Retaliatory Actions Against Eteros's Executives (2024-2025).

Despite the facts detailed above, CBP has taken repeated adverse actions against Eteros's executives—who are Canadian nationals—when they have attempted to travel to the United States

---

[4] CBP's own Headquarters Ruling aligns with the CIT judgments in *Eteros I* and *Keirton*. In *Customs Headquarters Ruling H327540 of March 7, 2024*, CBP explained:

> Recently, the Court of International Trade (CIT) in *Eteros Technologies USA. Inc. v. United States* examined the 21 U.S.C. § 863(f)(1) exception... The CIT discussed cannabis drug paraphernalia being directly imported into a state that has legalized cannabis use to a consignee in the same state. The court determined "…authorization by one legislative body – be it local, state, or federal – to engage in one of the enumerated activities... would be sufficient to trigger the (f)(1) exemption's applicability." …. Thus, drug paraphernalia that is destined for states that have legalized cannabis may be exempted under 21 U.S.C. § 863(f)(1).

*Id*. (emphasis added); *see also e.g.*, *New York Customs Ruling N335656 of November 9, 2023*, *New York Customs Ruling N347153 of April 15, 2025*, *New York Customs Ruling N347161 of April 15, 2025*, *New York Customs Ruling N348157 of May 1, 2025*, *New York Customs Ruling N340357 of June 18, 2024*. The CBP HQ Ruling's language acknowledges that the *Eteros I* decision applies broadly to "persons authorized" by state law in states other than Washington that have "legalized cannabis." Customs rulings constitute the official position of CBP, and are binding on all CBP officers. 19 C.F.R. § 177.9(a).

either for personal reasons or pursuant to L-1A work visas.

**A.    Retaliation Against Eteros CEO Aaron McKellar: Issuance and Vacatur of Expedited Removal Order and Subsequent Vacatur of Same.**

**1.    Expedited Removal of Eteros CEO Aaron McKellar.**

Plaintiff's CEO, Aaron McKellar,[5] was subjected to an expedited removal order ("ERO") at the Port of Blaine, WA,[6] and barred from reentry for five years. On October 4, 2024, McKellar attempted to enter the United States at the Blaine, Washington port of entry using his NEXUS trusted traveler card, intending to make a short *personal* trip. *See* Declaration of Aaron McKellar (January 31, 2025), ECF 13-2 ("McKellar First Decl."), at ¶ 3. CBP officers pulled him aside for secondary inspection and intensely questioned McKellar about Eteros's business, suggesting that Eteros "facilitated" illegal marijuana production. (*id.* ¶ 5). McKellar explained that Eteros's activities are entirely lawful and even referenced the CIT's 2022 decisions in *Eteros* and *Keirton* confirming the legality of importing Eteros's products in Washington State. CBP dismissed 21 U.S.C. § 863(f)(1) and the CIT's seminal decisions, claiming incorrectly that "the exemption doesn't apply to people" (*id.* ¶ 8)—a view that, notably, contradicts the text of § 863(f)(1), which exempts "**persons authorized**" by state law.

After several hours of hostile questioning, McKellar withdrew his application for admission and sought to return to Canada, as permitted by regulation, 8 C.F.R. § 235.4. *See* McKellar First Decl. ¶ 10. CBP refused and instead issued an ERO against McKellar. The ERO

---

[5] Aaron McKellar is a Canadian citizen and the founder and CEO of Eteros Technologies Inc., and Plaintiff Eteros Technologies USA, Inc. Until recently, McKellar frequently travelled to the U.S. to oversee Eteros's U.S. operations. He holds a valid L-1A intracompany transferee visa (valid through April 30, 2026) and, until last year, was a member of the NEXUS trusted traveler program (McKellar First Decl. ¶¶ 2, 4, 11).

[6] Blaine, WA, is the same port of entry that was responsible for the unlawful exclusion of Plaintiff's merchandise in *Eteros I*.

claimed McKellar was inadmissible not as a controlled substance trafficker under INA § 212(a)(2)(C)(i)—which would have afforded McKellar the right to a hearing before an immigration judge for adjudication of the legal issue underlying this dispute. Rather, the ERO was issued under INA § 212(a)(7)(A)(i)(I) (insufficient documentation), likely because document deficiency determinations are not reviewable legal issues.[7] McKellar's ERO carried an automatic five-year ban on reentry and resulted in the immediate revocation of McKellar's NEXUS membership. CBP officers warned McKellar that any attempt to re-enter the U.S. would be a federal felony (McKellar First Decl. ¶ 11). CBP then removed McKellar back to Canada that same day, on October 4, 2024.

### 2.    Defendant Gill Denies ERO Reconsideration.

Through counsel, McKellar promptly filed a motion for reconsideration with the Area Port Director at Blaine, Defendant Harmit S. Gill, seeking vacatur of the ERO (McKellar First Decl. ¶ 13). The motion documented multiple errors and abuses of discretion in the removal process, including CBP's refusal to allow withdrawal of McKellar's application for admission, the validity/sufficiency of travel documents and lack of questions/allegations relating to INA § 212(a)(7), and the legally incorrect premise that Eteros's lawful business made McKellar an illicit narcotics trafficker (*id.* ¶¶ 13-14).

Recall that, initially, the removal was nominally on alleged insufficient documentation grounds, but after Mr. McKellar sought administrative reconsideration by the Port Director for the Port of Blaine, WA, CBP shifted its rationale entirely. In a written "Denial of Reconsideration" dated November 12, 2024 (Compl. at ¶ 30; *id.* at Ex. C, ECF 21-1 at 118), the Area Port Director

---

[7] This in an artifice as McKellar did have all documents needed to enter the United States and presented same to CBP.

explicitly accused Eteros and McKellar of "aiding and abetting the narcotics trafficking of marijuana in the United States," in violation of 21 U.S.C. § 841.[8]

Crucially, the Port Director's justification for imposing the ERO and five-year ban rested *entirely* on the facts from the *Eteros I* case. Indeed, CBP's decision relied entirely on Eteros's stipulation made "in the lawsuit *Eteros Technologies USA, Inc. v. United States* argued before the [CIT]" that its imported merchandise met the federal definition of drug paraphernalia. CBP asserted that, "[b]y stipulating that their products are drug paraphernalia, Eteros has demonstrated that they are knowingly and intentionally contributing to the proliferation of the marijuana industry in the United States and are therefore in violation of 21 U.S.C. § 841." (Emphasis added). In CBP's view, the CIT's favorable ruling "simply granted [Eteros] an exemption from the importation prohibitions in Title 21 U.S.C. § 863," and "does not determine that [Eteros's] business was outside the scope of federally illegal marijuana production." *See* Compl. Ex. C, ECF 21-1 at 118. The Port Director further claimed that the CIT's judgment "solely addressed the import restrictions" on drug paraphernalia and "has no bearing on the federal legality or immigration consequences" of Eteros's involvement in the cannabis industry. Therefore – CBP concluded – the CIT ruling "does not form a basis to argue that Mr. McKellar is admissible" to the United States.[9] In sum, CBP treated the litigation stipulation from *Eteros I* as an admission of involvement in illicit drug trafficking, and on that basis found "reason to believe" the executives were traffickers,

---

[8] CBP found that McKellar was inadmissible, not under INA § 212 (a)(7) (as had been asserted in the October 4, 2025 ERO), but instead, under INA § 212(a)(2)(C)(i) because of "the involvement of Eteros in the production of marijuana and the proliferation of the marijuana industry." Compl. Ex. C.

[9] This is flatly incorrect. To avoid needless discovery and debates about whether the subject merchandise meets the incredibly broad definition of "drug paraphernalia" under § 863(d), Plaintiff "Stipulated for the purpose of the litigation that the Subject Merchandise satisfies the federal statutory definition of "drug paraphernalia" under 21 U.S.C. § 863(d)[,]" *Eteros I*, 592 F. Supp. 3d at 1319, while arguing that its importation was lawful under an exemption in § 863(f)(1).

rendering them inadmissible under INA § 212(a)(2)(C)(i) (8 U.S.C. § 1182(a)(2)(C)(i)).[10]

Plaintiffs filed this action to seek a declaratory judgment concerning whether, based on the pleadings in this case and record developed in this Court's prior *Eteros I* decision, Eteros can be held to be in violation of 21 U.S.C. §§841 and 1907.

### 3. Eteros Files Unrelated Actions in the U.S. Court of International Trade and the U.S. District Court for the Western District of Washington

These developments prompted Eteros to file two related lawsuits in January 2025: (1) this action seeking declaratory relief; and (2) an action in federal district court (W.D. Wash. No. 2:25-cv-00181) on behalf of Eteros and Mr. McKellar seeking injunctive and declaratory relief.

#### a. *Eteros Technologies USA Inc. v. United States*, CIT Case Number 25-36

In this CIT action, Eteros invokes the Court's residual jurisdiction under 28 U.S.C. § 1581(i), and the Declaratory Judgment Act, 28 U.S.C. § 2201, seeking a declaration that its importation of state-authorized cannabis-related equipment does not violate federal prohibitions on narcotics trafficking and distributing controlled substances (*i.e.* does not constitute a violation of laws under Title 21, particularly 21 U.S.C. §§ 841, 1907). Eteros alleges that CBP's pretextual use of §§ 841 and 1907 to bar its executives is unlawful and directly aimed to undermine the CIT's *Eteros I* and *Keirton* decisions. Eteros also pleads that CBP's actions were taken in retaliation for its victory in *Eteros I*, effectively punishing Eteros and its personnel for engaging in a lawful trade and for prevailing in litigation. In response, the Government has moved to dismiss the CIT action, arguing that the case is fundamentally about immigration law (the INA) rather than a customs or import matter, and thus lies outside the CIT's jurisdiction. The Government contends that § 1581(i)

---

[10] To be clear, Eteros' is not a plant-facing business. The company does not come into contact with marijuana. To be equally clear, Eteros' products are used with many nationally legal plant products, such as hemp and lavender.

cannot be invoked because the action "does not arise out of an import transaction" or any law providing for tariffs or embargoes, but instead involves "immigration-related matters" reserved to the district courts.[11] The Government further argues that since the 2022 CIT judgment, Eteros has been able to import its products without interference; in its view, CBP's targeting of the executives did not literally "exclude" any merchandise in violation of the court's order, and thus the *Eteros I* judgment is not being directly flouted.

The Government's claim is baseless; this action does in fact arise out of an import transaction – the one involved in this Court's 2022 *Eteros I* decision – a matter elevated to this Court pursuant to its 28 U.S.C. § 1581(a) "denied protest" jurisdiction. It relates directly to the "administration and enforcement" of a matter arising out of this Court's §1581(a) jurisdiction. CBP has elected to administer this Court's decision by allowing importation of Eteros' equipment, but taking retaliatory action against Eteros and its executives by accusing them of criminal activity arising out of their lawful importation activities.

### a.    *Eteros Technologies USA Inc. and Aaron McKellar v. United States of America, et al.*, **W.D. Wash. Case No. 25-181.**

Also on January 29, 2025, Plaintiffs Eteros and McKellar filed a Complaint for injunctive and declaratory relief in *Eteros Techs. USA Inc., et al. v. United States, et al*, No. 2:25-cv-00181 (W.D. Wash.), asking the U.S. District Court for the Western District of Washington to:

(1) vacate the October 4, 2024 ERO and resulting five-year entry ban;

(2) declare unlawful and set aside Defendants' *de facto* policy of treating individuals involved in authorized and federally exempt cannabis commerce as "illicit traffickers" under INA § 212(a)(2)(C);

---

[11] Plaintiff's Complaint seeks merely declaratory judgment and no immigration-related relief.

(3) enjoin Defendants from engaging in further retaliatory or unlawful actions against

Plaintiffs (such as unwarranted inadmissibility findings, visa cancellations, or NEXUS

revocations); and

(4) order affirmative relief including reinstatement of McKellar's NEXUS membership.

The WAWD action was brought under 28 U.S.C. § 1331, the Administrative Procedure Act (5

U.S.C. §§ 701–706), the Declaratory Judgment Act (28 U.S.C. §§ 2201–2202), and the United

States Constitution.[12]

---

[12] In accordance with WAWD local rules requiring the filing of a notice of pendency of other actions, Eteros filed a LCR 3(h) Notice (*see* WAWD Case No. 25-181, ECF No. 7) explaining the relationship of the two cases, as follows:

> Brief Description of Action in the U.S. Court of International Trade and Statement of the Relationship Between the Two Cases: Eteros commenced CIT Case No. 25-36 pursuant to the CIT's exclusive jurisdiction, 28 U.S.C. § 1581(i)(1)(D), which grants the CIT exclusive jurisdiction to entertain actions concerning the "administration and enforcement with respect to the matters referred to in … subsections (a) – (h) of this section," and particularly 28 U.S.C. § 1581(a), which is the CIT's protest jurisdiction and which served as the jurisdictional basis for the CIT's prior decision in *Eteros Technologies USA, Inc. v. United States*, 592 F. Supp. 3d 1313 (Ct. Int'l Trade 2022).
>
> Eteros seeks a determination from the CIT that when it imports merchandise in accordance with 21 U.S.C. § 863(f)(1), and pursuant to the CIT's prior decision in Eteros Technologies USA, Inc. v. United States, 592 F. Supp. 3d 1313 (Ct. Int'l Trade 2022) (arising under the CIT's exclusive 28 U.S.C. §1581(a) "protest denial" jurisdiction), the company and its employees are neither engaged in "narcotics Trafficking" in violation of 21 U.S.C. § 1907, nor are they engaged in aiding and abetting narcotics trafficking in violation of 21 U.S.C. § 841.
>
> The CIT previously ruled that Eteros' importation of cannabis-related merchandise in accordance with 21 U.S.C. § 863(f)(1) is not prohibited, nor contrary to federal law, when state law authorizes persons to possess, distribute, or manufacture cannabis-related merchandise. The current CIT action thus invokes that court's exclusive "residual" jurisdiction regarding the "administration and enforcement" of matters decided under its protest jurisdiction exercised in Eteros, supra, seeking a declaratory judgment "declar[ing] the rights and other legal relations" of Eteros concerning its importations of cannabis-related merchandise under 21 U.S.C. § 863(f)(1), and whether engaging in the § 863(f)(1) lawful conduct constitutes a per se violation of other sections of Title 21, particularly 21 U.S.C. §§ 841 and 1907

While the government here suggests that Eteros's concerns can be addressed in the Western District of Washington action, the Department of Justice has moved to dismiss that action as well.

### 4. CBP Vacates McKellar's Removal Order but Maintains its Legal Position.

In April 2025, faced with litigation in two federal courts, and after unsuccessful settlement negotiations in the WAWD action, Defendants took surprising and sudden corrective actions in an attempt to shield CBP's unlawful conduct from judicial review in the Western District.

On the same day the DOJ filed its motion to dismiss the WAWD action, Plaintiff learned (via the motion papers) that CBP had unilaterally vacated[13] the October 2024 removal order against Eteros's CEO—thereby purporting to erase his five-year reentry ban—the Government promptly moved to dismiss the case as moot.

Yet just days later, on April 29, 2025, CBP again barred Eteros's CEO, Aaron McKellar, from U.S. entry on the very same grounds, INA § 212(a)(2)(C) (which relies on the narcotics trafficking statutes in Title 21, 21 U.S.C. § 841, 1907) and § 212(a)(7), demonstrating that the harm to Eteros persists despite the removal order's vacatur.[14] The Government's motion papers

---

(relating to narcotics trafficking), as asserted by U.S. Customs and Border Protection in the unlawful actions taken against Eteros and Mr. McKellar.

The current CIT action seeks declaratory relief only. It does not request the CIT to provide any relief related to any immigration decision or action taken against Eteros, Mr. McKellar, or other affected Eteros executives and employees. Such matters are not encompassed by the CIT's subject matter jurisdiction.

[13] In a letter dated April 18, 2025, CBP's Acting Area Port Director in Blaine wrote that, upon further consideration, the Port had decided "to vacate the Order of Expedited Removal in [McKellar's] case." *See* CBP Letter of April 18, 2025, Gov't Br. at Ex. 3, ECF No. 24-2; *see also*, McKellar 2d Decl. at ¶ 3. The notice stated that CBP would update its records to reflect that McKellar's October 4, 2024 ERO was vacated and that his departure from the U.S. that day would instead be recorded as a "withdrawal" of his application for admission. *Id*. In effect, CBP unilaterally rescinded the ERO and the attendant five-year ban prohibiting McKellar's entry.

[14] A finding by CBP that a foreign citizen is a narcotics trafficker under 21 U.S.C. §§ 841 or 1907 results in a lifetime ban from travel to the U.S. under 8 U.S.C. § 1182(a)(2)(C). Thus, even

sought dismissal of the WAWD action *with prejudice*, asserting that the district court lacked

subject-matter jurisdiction to review CBP's actions—thus foreclosing any remedy.[15] These sleight

of hand litigation tactics exemplify a broader pattern of CBP acting with impunity while DOJ

thwarts judicial review by procedural maneuvers, effectively shielding retaliatory conduct from

Article III scrutiny. In such circumstances, it is this Court's duty to exercise its exclusive

jurisdiction under 28 U.S.C. § 1581(i)(1)(D), which must attach here to vindicate its prior

judgment and restore the lawful administration of the import laws as previously adjudicated in

*Eteros I.*

### 5.    CBP Refuses McKellar's April 29, 2025, Attempted U.S. Entry.

Just days after disingenuously claiming the WAWD case was mooted by CBP's ERO

vacatur, Defendant again barred McKellar from entering the United States on the very same

grounds—this time citing both INA §§ 212(a)(2)(C) and (a)(7). On April 29, 2025, McKellar

appeared for U.S. preclearance at Vancouver International Airport, seeking to board a flight to

Las Vegas, Nevada (*See* Second Declaration of Aaron McKellar (June 6, 2025) ("McKellar

Second Decl."), at ¶ 4).[16] CBP officers at the airport were presented with a packet of information

---

without a formal removal order, CBP has imposed a *de facto* ban against Eteros's executives from
entering the U.S.

[15] More specifically, the Government's Motion to Dismiss the WAWD action argued that
because McKellar's ERO had been vacated, Plaintiffs' claims were now moot. *See e.g.,* WAWD
Case No. 25-181, ECF 19 at 8. The Government's motion claimed that, even aside from mootness,
this Court lacks subject-matter jurisdiction over Plaintiffs' action and the case must be dismissed.
Plaintiffs' asserted that Defendants' belated vacatur of the ERO did not resolve the underlying
dispute or remedy the serious and ongoing harm to Eteros and its executives. CBP has never
disavowed its position that Eteros's employees are inadmissible "drug traffickers" under INA
§ 212(a)(2)(C), as informed by 21 U.S.C. §§ 841, 1907.

[16] The Government's brief misleadingly refers to "George McKellar," perhaps to suggest
that Aaron McKellar acted surreptitiously or somehow sought to conceal his identity. In fact,
McKellar presented himself openly to CBP officers at Vancouver International Airport
preclearance, fully identifying himself as Aaron McKellar and submitting a packet of materials
documenting his prior encounters with CBP, the litigation in *Eteros I*, and relevant legal

disclosing relevant documents related to McKellar's immigration saga. CBP reviewed the documents, subjected McKellar to secondary inspection and questioning, and ultimately determined that he was inadmissible to the United States under INA § 212(a)(2)(C) (*i.e.,* "reason to believe" involvement in illicit drug trafficking) and refused him entry. This time, CBP refused admission but allowed McKellar to "withdraw" his application for admission and return to Canada (as the encounter occurred on Canadian soil, an ERO could not be issued) (McKellar Second Decl. ¶¶ 4-7). The result was the same: McKellar was once again excluded from the U.S. based on the continued implementation of Defendants' *de facto* policy treating Eteros's state-authorized and federally exempt business as equivalent to drug trafficking.

As of this filing, McKellar remains unable to enter the U.S. based on Defendants' misapplication of 21 U.S.C. §§ 841 and 1907, and INA § 212(a)(2)(C), and his NEXUS trusted traveler privileges remain revoked (McKellar Second Decl. ¶ 11). Eteros's U.S. operations continue to suffer from the absence of its CEO and the near-guarantee of similar actions against other Eteros personnel (*see* McKellar First Decl ¶ 18). As CBP instructed McKellar in their encounter in October 2024, the agency clearly meant what it said when it posited that U.S. customers of cannabis processing equipment should buy from U.S. companies and citizens (McKellar First Decl. ¶ 9).

**B.    Retaliation Against Other Eteros Executives.**

**1.    Amanda James, Director of Strategy & Business Development at Eteros: Denial, Grant, and Notice of Intent to Revoke Her L-1A Work Visa.**

As noted in the Complaint (ECF 2), Eteros's Director of Strategy & Business Development,

---

arguments. CBP reviewed these materials in secondary inspection before nevertheless deeming him inadmissible. *See* CBP Form I-275, Apr. 29, 2025, Gov't Br. at Ex. 3, ECF No. 24-3; *see also,* McKellar Second Decl. at ¶ 4.

on June 11, 2024, Amanda James—a Canadian national who had for three years prior held L-1A work visa authorization, permitting her to work in the U.S. for Plaintiff—sought to renew her L-1A visa at the Port of Blaine, Washington. *See* Declaration of Amanda James (January 31, 2025), ECF 13-3 ("James First Decl."), at ¶ 4. CBP detained Ms. James in secondary inspection, questioned her about her employer's cannabis-related equipment, and repeatedly accused her of controlled substance trafficking under 21 U.S.C. §§ 841 and 1907. CBP refused her admission, confiscated her NEXUS card, and forwarded a recommendation to USCIS urging the denial of her L-1A visa application. Ms. James refused to sign the CBP-prepared "Sworn Statement," which she maintains was inaccurate and misleading. Ms. James later withdrew her L-1A visa application due to USCIS's failure to process it pursuant to agency regulations. James First Decl. at ¶ 5.

Eteros refiled Ms. James's L-1A petition with USCIS on October 25, 2024. *See* Supplemental Declaration of Amanda James (February 13, 2025), ECF 14 ("James Second Decl."), at ¶ 6. USCIS approved the L-1A petition on February 11, 2025, acknowledging Ms. James' executive role and the lawfulness of her employment as detailed in her L-1A application, which clearly identifies her role at Eteros, the company's machinery, and its potential use with cannabis.

Despite approving the petition, USCIS later issued a Notice of Intent to Revoke ("NOIR") dated March 28, 2025, pursuant to 8 C.F.R. § 214.2(l)(9)(iii)(A)(5), asserting that the initial approval may have involved "gross error" due to alleged violations of federal drug laws by Eteros and Ms. James. *See* Third Declaration of Amanda James (June 6, 2025) ("James Third Decl."), at ¶ 4. The NOIR relied on the litigation in *Eteros I*, as well as the unsigned CBP "Sworn Statement" from her June 11, 2024, encounter with CBP at the Port of Blaine, WA, to claim Ms. James' employment would violate the CSA. No separate facts beyond Eteros's business operations

reviewed by this Court were cited.

Eteros, on behalf of Ms. James, submitted a comprehensive response to the NOIR on April 24, 2025, defending the legitimacy of Ms. James's L 1A employment and addressing each of USCIS's stated concerns. *Id.* at ¶ 5. The response included a legal brief and extensive exhibits, rebutting CBP allegations and providing legal arguments with authorities demonstrating the lawful nature of Eteros's business and refuting the claim that Ms. James's employment with Eteros constitutes illicit narcotics trafficking. The response cited *inter alia*:

- *Eteros Techs. USA Inc. v. United States*, 592 F. Supp. 3d 1313 (Ct. Int'l Trade 2022), holding Eteros's imports were lawful under 21 U.S.C. § 863(f)(1);

- *Keirton, Inc. v. United States*, 600 F. Supp. 3d 1270 (Ct. Int'l Trade 2022) (reaffirming the *Eteros* decision's interpretation of § 863(f)(1));

- *Customs Headquarters Ruling H327540 of March 7, 2024* (adopting *Eteros* and applying the § 863(f)(1) exemption beyond Washington State);

- *Treez, Inc. v. DHS*,[17] No. 22-cv-07027-RS (TSH), 2023 U.S. Dist. LEXIS 110823 (N.D.

---

[17] In *Treez,* the U.S. District Court for the Northern District for California overturned USCIS's denial of an H-1B visa for a software engineer whose employer's clients were state-licensed marijuana dispensaries. The court held that, "while it may be true that Treez specifically targets marijuana dispensaries as its customers, [the beneficiary's] job responsibilities as a software engineer are too attenuated from any conduct by third parties that violates the CSA to warrant a conclusion that his employment comprises criminal aiding and abetting." *Id.* at 7. The *Treez* court held that to violate the CSA as an aider or abettor, a person must (1) commit an affirmative act that furthers the commission of a CSA offense, and (2) do so with intent to facilitate that offense. *Id.* at 5. By contrast, providing ancillary services or products to cannabis businesses, without more, was deemed insufficient to constitute a federal crime. *Id.* at 6. Eteros argued by analogy that Ms. James's executive role in a company making general agricultural equipment is even further removed from any actual handling of controlled substances than the conduct at issue in *Treez*. She has no control or knowledge of how end-customers use the equipment (which processes federally legal hemp or other legal plant material just as well as other forms of cannabis). The response likened holding Eteros responsible for customers misusing its lawful products to "holding BIC liable for every lighter used to light a joint."

Cal. June 27, 2023) (holding that employment tangential to cannabis commerce does not constitute aiding and abetting narcotics trafficking).

The response urged USCIS to withdraw the NOIR and reaffirm Ms. James's L 1A approval. *Id.*

As of the date of this filing, June 6, 2025, the NOIR remains pending and undecided. James Third Decl. at ¶ 6. Ms. James has remained in Canada since her June 11, 2024, encounter with CBP. *Id.*

### 2. Ryan Bjergso, Vice President of Operations at Eteros: NEXUS Revocation.

In May 2024, Ryan Bjergso, Vice President of Operations at Eteros—one of three Eteros executives holding L-1A work authorization—submitted a NEXUS application and was provisionally approved, receiving an invitation to schedule his interview. However, following the above-described adverse actions taken against the other two L-1A visa holders, Mr. McKellar and Ms. James, Mr. Bjergso has also now found himself in CBP's crosshairs and has received a denial notice for his NEXUS from CBP, despite no intervening conduct that would justify reversal of his provisional approval. *See* McKellar Second Decl. at ¶ 10. This reflects an ongoing pattern of targeted retaliation against Eteros personnel following this Court's prior ruling in *Eteros I*.

### C. Eteros's FOIA Efforts and CBP's Non-Compliance.

On July 12, 2024, Eteros submitted a FOIA request to CBP seeking all records relating to Ms. James's June 11, 2024 border encounter (when she presented an L-1A petition at the Port of Blaine). CBP's FOIA office summarily closed that request as "Closed – No Documents Sent," claiming no records were provided, even though the FOIA portal showed responsive documents, and it administratively closed the file without producing any records. Undeterred, on behalf of Ms. James and fellow Eteros executive Aaron McKellar, Eteros submitted new FOIA requests in November 2024, providing passport copies and other identifying information, and seeking records

relating to Ms. James' June 2024 encounter, as well as Mr. McKellar's October 2025 encounter. CBP responded by shifting and escalating its identity-verification demands in bad faith. Instead, after insisting on letters with full name, address, and date of birth (despite already having that information from the passport submissions), CBP then belatedly required that each request also include place of birth—a new condition that had never been mentioned initially (and is wholly irrelevant to a person's ability to request documents under FOIA). This piecemeal introduction of ever-changing requirements, rather than disclosing all purported requirements at the outset, evidences an evasion tactic by CBP and an effort to shield evidence from Plaintiff which could be valuable to its claims of retaliation and targeting as a result of is success in *Eteros I*. On February 4, 2025, CBP closed Ms. James's FOIA request yet again as "insufficient," falsely asserting that she had failed to include her date of birth, even though her FOIA request plainly listed her DOB. Ms. James promptly filed an administrative appeal, which CBP acknowledged and accepted on February 7, 2025—ostensibly allowing the FOIA request to proceed. To date, however, CBP has failed to produce any meaningful records in response to either Ms. James's or Mr. McKellar's FOIA requests, demonstrating a persistent refusal to comply with FOIA's statutory production requirements.

This pattern of obstruction, shifting standards, and ultimate non-production reveals CBP's persistent refusal to comply with statutory requirements, and is consistent with Defendant's broader campaign of retaliation and stonewalling toward Plaintiff and its personnel.

## **STANDARD OF REVIEW**

The plaintiff bears the burden of establishing subject-matter jurisdiction by a preponderance of the evidence. *Norsk Hydro Can., Inc. v. United States*, 472 F.3d 1347, 1355 (Fed. Cir. 2006). When the court's jurisdiction is challenged, "[t]he party seeking to

invoke … jurisdiction bears the burden of proving the requisite jurisdictional facts." *Former Emps. of Sonoco Prods. Co. v. United States*, 27 C.I.T. 812, 814 (2003) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)).

In deciding a motion to dismiss an action for lack of jurisdiction or failure to state a claim, "the Court assumes that 'all well-pled factual allegations are true,' construing 'all reasonable inferences in favor of the nonmovant.'" *United States v. Islip*, 22 C.I.T. 852, 854 (1998) (quoting *Gould, Inc. v. United States*, 935 F.2d 1271, 1274 (Fed. Cir. 1991)); *see also Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995); *Cooper v. Pate*, 378 U.S. 546 (1964). To survive a motion to dismiss, a complaint must plead sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). All other facts are subject to fact-finding by the court. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986).

## <u>REQUEST TO INCORPORATE RECORD FROM *ETEROS I*</u>

As this Court's jurisdiction in this action is directly connected to the administration and enforcement of *Eteros I,* Plaintiff respectfully requests that the Court, pursuant to Federal Rule of Evidence ("FRE") 201, take judicial notice of the complete docket in *Eteros I*, including all pleadings, stipulations, declarations, exhibits, and the final judgment entered therein. Plaintiff further requests that the Court formally incorporate the entirety of that record into the record of the present proceeding, such that all materials filed in *Eteros I* shall be deemed part of the record in this case for all purposes. Incorporation of the prior record is appropriate given the centrality of the *Eteros I* litigation to the claims and defenses at issue here, and will promote judicial economy and consistency in adjudication.

**ARGUMENT**

**I.      The CIT Has Jurisdiction Under 28 U.S.C. § 1581(i)(1)(D) to Prevent CBP From Undermining the Administration and Enforcement of this Court's Prior Judgment in *Eteros I*.**

CBP's extraordinary actions against Eteros and its executives fall squarely within the Court's "residual" jurisdiction in 28 U.S.C. § 1581(i)(1)(D), which confers exclusive jurisdiction on the CIT over any civil action against the United States or its agencies arising out of any law of the United States providing for the "administration and enforcement with respect to the matters referred to in subparagraphs (A) through (C) of this paragraph and subsections (a)–(h) of this section." *Id.* Here, Eteros's challenge arises directly from CBP's "administration and enforcement" of a matter arising under 28 U.S.C. § 1581(a) – this Court's opinion and judgment in *Eteros I.* But for this Court's ruling in *Eteros I*, CBP would have continued its unlawful blanket seizure and exclusion of cannabis-related merchandise imported by persons having the legal right to do so. And but for Eteros's decision to challenge CBP's unlawful conduct in this Court in *Eteros I*, CBP would not have retaliated by branding Eteros's executives as persons allegedly engaged in criminal narcotics trafficking activity in violation of U.S.C. §§ 841 and 1907. The causal link between this Court's judgment and CBP's retaliatory conduct places this case at the very heart of the "administration and enforcement" prong of § 1581(i)(1)(D). CBP's retaliatory measures – taken in the wake of Eteros's courtroom success – are calculated to thwart the administration and enforcement of this Court's binding judgment in *Eteros I* by effectively barring Eteros's principals from engaging in the very operations that the Court affirmed as lawful and exempt from federal prohibition. Accordingly, the present suit lies within § 1581(i)(1)(D)'s broad grant of residual jurisdiction.

The definitions of "administration and enforcement" ordinarily are extremely broad.

"Administration" means "the practical management and direction of the executive department, or of the public machinery or functions, or of the operations of the various organs of the sovereign."[18] "Enforcement" means "making sure a rule or standard or court order or policy is properly followed."[19] According to caselaw, the "administration and enforcement" provision of "Subsection 1581(i) is a "catch-all" provision, allowing the trial court to take jurisdiction over designated causes of action founded on other provisions of law." *Norcal/Crosetti Foods v. United States*, 963 F.2d 356, 359 (Fed. Cir. 1994). As discussed herein, this case involves both "administration" (direction of an executive agency) and "enforcement" (making sure a court order is properly followed).

### A. The CIT's § 1581(i) Residual Jurisdiction Fills the Gap to Review Whether the Defendant has Corrupted the Administration and Enforcement of this Court's Prior § 1581(a) Judgment in *Eteros I*.

CBP's actions against Eteros's executives are not mere immigration decisions divorced from this Court's jurisdiction; they are a direct attempt to enforce (or re-impose) import restrictions that this Court has already struck down as unlawful in *Eteros I*. By accusing Eteros's executives of aiding and abetting narcotics trafficking under 21 U.S.C. §§ 841 and 1907, and summarily removing its CEO under INA § 212 (8 U.S.C. § 1182) on that basis, CBP seeks by other means to end the activity this Court held lawful in *Eteros I*. CBP is pressuring Eteros to fail as a business by denying access to the United States by its top executives. Eteros is directly challenging CBP's "administration and enforcement" of the very law and judicial holding at issue in *Eteros I* and directly challenges the agency's efforts to circumvent this Court's prior final judgment. This is precisely the kind of claim Congress intended to fall within § 1581(i)(1)(D).

---

[18] *See Administration,* Black's Law Dictionary (11th ed. 2019).

[19] *Enforcement*, Black's Law Dictionary (11th ed. 2019).

The Federal Circuit has made clear that when an importer's suit is not attacking an underlying trade ruling *per se* but rather the agency's implementation or enforcement of that ruling, § 1581(i) provides jurisdiction. *Shinyei Corporation of America v. United States*, 355 F.3d 1297 (Fed. Cir. 2004). In *Shinyei*, the plaintiff did not direct its challenge at Commerce's antidumping review results but instead alleged that Commerce's liquidation instructions improperly failed to implement those results. The Federal Circuit reversed a jurisdictional dismissal and held that § 1581(i)(4) (now § 1581(i)(1)(D)), conferred jurisdiction over a claim that Commerce's erroneous instructions had thwarted the proper implementation of an import duty determination. The Court emphasized that a challenge to the manner in which an agency carries out *or refuses to carry out* a trade determination is a challenge to the "administration and enforcement" of that determination, falling well within § 1581(i)'s ambit.

Moreover, in *Nat'l Fisheries Inst., Inc. v. United States Bureau of Customs & Border Prot.*, 637 F. Supp. 2d 1270 (Ct. Int'l Tr. 2009), this Court invoked § 1581(i) jurisdiction to hold that CBP had overstepped its role by requiring 100% bonding in addition to cash deposits, burdening and penalizing shrimp importers with onerous bonds without evidence of higher risk, finding that the bonding rule was an unlawful act of enforcement not reviewable elsewhere. While the enforcement at issue in *Nat'l Fisheries* concerned the antidumping regime itself, this case invokes the CIT's § 1581(i)(1)(D)'s "administration and enforcement" jurisdiction to review another, quite unfortunate, act of unlawful enforcement not reviewable elsewhere—*i.e.,* the retaliation and extrajudicial punishment of Plaintiff for its litigation success in *Eteros I*.

Eteros's claim here fits comfortably within this Court's jurisprudence. CBP's retaliatory use of border enforcement tools is intended to countermand this Court's determination that Eteros's goods are lawfully importable. Just as the improper liquidation instructions in and *Shinyei*

were subject to CIT "administration and enforcement" review under § 1581(i) for failing to adhere to liquidation instructions, CBP's punitive measures here are subject to CIT review because they flout and seek to undo the effect of the CIT's prior judgment and the business benefits it conferred on Plaintiff. In short, Eteros is challenging CBP's unlawful enforcement of the import laws, and misuse of its authority, in a manner calculated to vitiate a prior § 1581(a) ruling of this Court; and such an action "arises out of" laws providing for import restrictions and their enforcement, squarely implicating § 1581(i)(1)(D).

**B.    Eteros Seeks Declaratory Relief to Safeguard the Court's Prior *Eteros I* Ruling – Not to Obtain Immigration Benefits for Individual Employees Retaliated Against by Defendant.**

Eteros is not asking this Court to adjudicate an immigration matter or confer direct immigration relief on its executives; the Complaint does not seek direct relief for Eteros's executives, nor a review of the actions against its CEO, Aaron. McKellar; nor does it ask the Court to admit any individual into the United States over Defendants' objection. Rather, Eteros seeks declaratory relief to extinguish the legal theory underlying CBP's baseless and retaliatory actions, which will directly protect the efficacy of this Court's judgment in *Eteros I*.

The focus of this action is on CBP's *ultra vires* conduct in administering and enforcing this Court's prior judgment in *Eteros I* – not on the immigration status of any particular person. That distinction is critical. Eteros's claim is fundamentally about the integrity of the CIT, the prior ruling issued in *Eteros I*, and CBP's daring attempt to circumvent it by retaliating against Plaintiff's executives. The Court can grant the requested declaratory relief within its traditional equitable powers, including those under 28 U.S.C. § 2643, and the All Writs Act, without intruding into the typical province of immigration courts.

Indeed, 28 U.S.C. § 1585 confirms that this Court possesses all the remedial powers of a

district court in law and equity, enabling it to fashion appropriate relief to vindicate its jurisdiction. Here, that means the Court can – and should – find jurisdiction to declare CBP's administration and enforcement of § 863(f)(1) to be in violation of this Court's *Eteros I* decision, and hold that § 863(f)(1) conduct alone is not a *per se* violation of 21 U.S.C. §§ 841, 1907, and cannot support CBP's theory that the company is aiding and abetting narcotics trafficking. Only a judgment from this Court can ensure that the *Eteros I* decision is not rendered a dead letter.

To be clear, granting such relief would not usurp the authority of the immigration agencies in their ordinary course; rather, it would prohibit the misuse of immigration measures as a tool to undercut this Court's prior judgment. Eteros's executives are the direct mechanism by which Eteros exercises the import rights that this Court has already confirmed in *Eteros I*. By disapproving of CBP's improper and retaliatory enforcement actions, the Court would merely be restoring the conditions under which its original judgment can operate—*i.e.* allowing Eteros to continue its lawful business without fear of extralegal reprisal by CBP, or efforts to decapitate the leadership who drive the company's success in the U.S. market.[20] This form of relief falls well within the Court's jurisdiction over the "administration and enforcement" of the import laws. Just as the Court may, for example, enjoin Customs from administering a liquidation decision that conflicts with a prior CIT decision, it may review CBP's retaliatory enforcement tactics that conflict with and seek to overturn the effect of *Eteros I*.

In other words, the Court is being asked to protect its own judgment and the statutory

---

[20] CBP's retaliatory efforts to harm Plaintiff's U.S. operations are underscored by comments made by CBP officers during McKellar's October 2024 encounter: while in secondary, one CBP officer asserted that Eteros's customers "should buy from an American company." Mr. McKellar responded that Eteros is an American company, which led the Officer to reply that Eteros's customers "should buy from an American citizen." As Mr. McKellar explained, Eteros is a lawful U.S. company that employs U.S. citizens and pays U.S. taxes. *See* McKellar First Decl. at ¶ 9.

scheme it reviewed, not necessarily to adjudicate anyone's right to enter the country. Viewing the

case in this proper light dispels the Government's jurisdictional objection – the claims are about

trade enforcement, bad faith administration of this Court's prior judgments by a defeated agency,

and the fundamental judicial authority of this Court. These are matters exclusive to this Court's

jurisdiction, and not about immigration relief *per se*.

C.    **Section 1581(i)(1)(D) Is Properly Invoked to Preserve the Judicial Integrity of This Court and Its Prior Judgments, and to Prevent a Chilling Effect on CIT Litigants.**

Section 1581(i) is often described as a "catch-all" or "residual" jurisdiction, to be invoked

when no other subsection of § 1581 provides an adequate avenue for judicial review. It is "a

litigant's port of last resort," available only after other remedies have been exhausted or proven

manifestly inadequate. *Duferco Steel, Inc. v. United States*, 403 F. Supp. 2d 1281, 1285 (Ct. Int'l

Tr. 2005). That is precisely the situation here. There is no other jurisdictional path – under

§ 1581(a) or otherwise – for Eteros to obtain meaningful review of CBP's retaliatory conduct.

Eteros cannot file a customs protest to challenge CBP's twisted administration and enforcement

of the laws previously resolved by this Court. Nor can Eteros (or its executives), according to the

Government, pursue effective relief through the immigration courts, or a habeas action, or in

federal district courts. Indeed, absent this Court's direct intervention, CBP's reprisal would go

unchecked and the Court's prior judgment would be *de facto* nullified.[21] Section 1581(i)(1)(D)

was tailor-made to prevent such a result – it ensures that when no alternative remedy can safeguard

---

[21] As can be easily inferred, the viability of Eteros's U.S. operations depended on a favorable decision from this Court in *Eteros I*. The company could not have continued its US operations if, for instance, the Court had rejected application of § 863(f)(1) and upheld CBP's import prohibition of its cannabis-related merchandise. CBP's retaliation against Eteros's executives is meant to reassert the agency position that the conduct at issue in *Eteros I* is unlawful, and although it cannot exclude Eteros's goods, CBP has chosen a dishonorable path of punishing Eteros's executives to put the company out of business.

25

the proper administration of the import laws, or the authority of this Court's decisions, the CIT can step in to fill the gap

The Government's motion to dismiss ignores the reality that Eteros had no choice but to invoke § 1581(i). As the Federal Circuit has instructed, the residual jurisdiction is available in those rare cases where the normal paths of review are "manifestly inadequate." *Duferco Steel, Inc. v. United States*, 403 F. Supp. 2d 1281, 1284 (Ct. Int'l Trade 2005); *Miller & Co. v. United States*, 824 F.2d 961, 963 (Fed. Cir. 1987). Here, any purported alternative would be not only inadequate but nonexistent.

The Court would abdicate its role if it declined to hear this case, as no other tribunal can vindicate its judgment in *Eteros I*. In *Shinyei*, for example, the importer's only route to correct Commerce's mistake (after liquidation of entries) was via § 1581(i) – and the Federal Circuit held that the CIT exercises jurisdiction in such circumstances to provide a meaningful remedy. *Shinyei Corp. of Am. v. United States*, 355 F.3d 1297, 1312 (Fed. Cir. 2004). Eteros has also diligently pursued its rights, first by winning a favorable judgment in *Eteros I*, and now by returning to this Court when CBP's retaliatory conduct threatened to eviscerate that hard-won relief. Eteros cannot be faulted for failing to seek redress elsewhere; there simply is no other forum that can address CBP's campaign of retaliation for what it is. Section 1581(i)(1)(D) exists to ensure that CIT litigants are not left remediless in exactly this type of unusual and unforeseeable scenario.

Exercising jurisdiction in this case is not only permitted by the text of 28 U.S.C. § 1581(i)(1)(D), it is institutionally vital for this Court's integrity as an Article III Court. Allowing an executive agency to punish and intimidate a successful litigant through collateral means would set a *dangerous* precedent—effectively chilling future actions invoking this Court's jurisdiction. If importers know that prevailing in the CIT could provoke vindictive reprisals beyond the reach

of judicial review, they will think twice before ever filing suit – undermining the very purpose of the CIT. Congress enacted § 1581(i) in large part to prevent agencies from evading judicial scrutiny in unusual scenarios and to guarantee that trade disputes "will be heard on their merits" in this Court. According to the House Report associated with 28 U.S.C. § 1581(i), the purpose of the CIT's residual jurisdiction was "to eliminate the confusion which currently exists as to the demarcation between the jurisdiction of the district courts and the Court of International Trade." The House Report continues:

> This provision makes it clear that all suits of the type specified are properly commenced only in the Court of International Trade. The Committee has included this provision in the legislation to eliminate much of the difficulty experienced by international trade litigants who in the past commenced suits in the district courts only to have those suits dismissed for want of subject matter jurisdiction. The grant of jurisdiction in subsection (i) will ensure that these suits will be heard on their merits.

H.R. Rep. No. 96-1235, at 33, 47 (1980). While this case may not fit cleanly within the existing precedent of this Court, dismissal here on jurisdictional grounds would defeat that congressional purpose and reward CBP's blatant end-run around this Court's prior judgment in *Eteros I*. By contrast, taking up jurisdiction and addressing the merits will reinforce the principle that no agency is above the law or this Court's authority in matters of international trade, and if this Court issues a ruling concerning international trade matters in favor of a plaintiff, CBP cannot distort the litigation proceedings and outcome to take retaliatory action against that plaintiff. The Court's prior judgment in *Eteros I* upheld the rule of law in the face of agency overreach and refusal to honor Congressional intent; the Court now has jurisdiction – and indeed, a duty – under § 1581(i)(1)(D) to ensure that its prior judgment is not sabotaged by unlawful retaliation.

Eteros's suit squarely challenges CBP's administration and enforcement of the import laws (and the Court's own ruling under those laws). No other statute forecloses review, and no other

forum offers the type of declaratory relief available from this Court. Upholding jurisdiction here will protect the integrity of the Court's jurisprudence and send a much-needed message that retaliatory tactics aimed at nullifying judicial relief have no place in our system. Taken in the wake of Eteros's courtroom success by the same agency and at the same port of entry as in *Eteros I,* CBP's retaliatory measures seek to thwart the lawful and intended administration and enforcement of that binding judgment by effectively barring Eteros's principals from engaging in the very import operations that the Court affirmed as lawful. Such conduct "arises out of" a law providing for import restrictions (the federal drug paraphernalia statute, 21 U.S.C. § 863(a)(3)) and implicates the enforcement of this Court's ruling in *Eteros I.* Accordingly, the present suit lies within § 1581(i)(1)(D)'s broad grant of jurisdiction. The Government's motion to dismiss for lack of jurisdiction should be denied accordingly.

**D.    The All Writs Act Supports Jurisdiction Under § 1581(i)(1)(D) and Empowers the Court to Protect its Judgment in *Eteros I*.**

**1.    Statutory Authority for Invoking the All Writs Act in this Case.**

The All Writs Act, 28 U.S.C. § 1651(a), authorizes federal courts to issue "all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." This broad mandate codifies the inherent power of courts to safeguard their jurisdiction and the integrity of their judgments. As the Supreme Court has explained, "the purpose and function of the All Writs Act [is] to supply the courts with the instruments needed to perform their duty, as prescribed by the Congress and the Constitution, provided only that such instruments are 'agreeable' to the usages and principles of law," *Harris v. Nelson*, 394 U.S. 286, 300 (1969) (citing *Price v. Johnston*, 334 U.S. 266 (1948)); *see also, Zenith Radio Corp. v. United States,* 518 F. Supp. 1347, 1348 (Ct. Int'l Tr. 1981). Indeed, the Supreme Court:

 … has repeatedly recognized the power of a federal court to issue such commands under the All Writs Act as may be necessary or appropriate to effectuate <u>and prevent</u>

> <u>the frustration of orders it has previously issued</u> in its exercise of jurisdiction otherwise obtained: "This statute has served since its inclusion, in substance, in the original Judiciary Act as a 'legislatively approved source of procedural instruments designed to achieve "the rational ends of law."'" *Harris v. Nelson*, 394 U. S. 286, 299 (1969), quoting *Price v. Johnston*, 334 U.S. 266, 282 (1948). Indeed, "[u]nless appropriately confined by Congress, a federal court may avail itself of all auxiliary writs as aids in the performance of its duties, when the use of such historic aids is calculated in its sound judgment to achieve the ends of justice entrusted to it." *Adams v. United States ex rel. McCann*, 317 U. S. 269, 273 (1942). The Court has consistently applied the Act flexibly in conformity with these principles.

*United States v. N.Y. Tel. Co.*, 434 U.S. 159, 172-73 (1977). Accordingly, when an agency's conduct threatens to frustrate a court's ability to decide a case or enforce its judgment, the All Writs Act applies not only to protect the court's current jurisdiction but also the court's potential or future jurisdiction (*e.g.,* the jurisdiction to enforce its prior orders or to hear a related matter on appeal). *Id.*

Notably, the All Writs Act is a residual source of judicial power that fills procedural gaps; and while it does not confer new or independent jurisdiction, *see Baker Perkins, Inc. v. Werner & Pfleiderer Corp.,* 710 F.2d 1561, 1565 (Fed Cir. 1983), it enables a court to act in aid of an existing jurisdiction or to enforce a prior judgment. *N.Y. Tel. Co.*, 434 U.S. at 172. A district court always retains jurisdiction to enforce the judgments it enters. *Dietzsch v. Huidekoper*, 103 U.S. 494 (1880); *Wood v. Santa Barbara Chamber of Commerce, Inc.*, 705 F.2d 1515, 1524 (9th Cir. 1983). This includes the power to enjoin parties from relitigating final judgments. *In re March*, 988 F.2d 498, 500 (4th Cir. 1993) ("The All Writs Act empowers a federal court to enjoin parties before it from attempting to relitigate decided issues and to prevent collateral attack of its judgments."). Thus, a court may deploy the Act to "issue all writs necessary or appropriate in aid of their respective jurisdictions," such as orders to effectuate its rulings or to prevent conduct that would obstruct the implementation of its decisions. 28 U.S.C. § 1651(a).

Under 28 U.S.C. § 1585, the CIT "shall possess all the powers in law and equity of … a

district court of the United States." This includes the power to issue injunctive and declaratory relief as necessary to effectuate its decisions. The CIT's comprehensive remedial powers are further confirmed by 28 U.S.C. § 2643, which allows the Court to order any appropriate relief in a case within its jurisdiction. Read together with the All Writs Act, the CIT is empowered to fashion forward-looking remedies to enforce its judgments and prevent obstruction of its jurisdiction. For example, in *Zenith Elecs. Corp. v. United States,* 884 F.2d 556 (Fed. Cir. 1989), the Federal Circuit affirmed the CIT's use of an All Writs Act injunction to prevent the Department of Commerce from altering antidumping duty results in a way that would "impair the court's jurisdiction" over the case. Additionally, in *Shinyei Corp. of Am. v. United States*, 355 F.3d 1297, 1312 (Fed. Cir. 2004), the Federal Circuit held that the CIT could provide meaningful relief to an importer even after Customs had liquidated the entries at issue, rejecting the notion that a technical bar (the finality of liquidation) could nullify the court's ability to vindicate the importer's rights, and emphasizing that nothing in the law prohibits the court's ability to correct the error.

### 2.     CBP's Retaliatory Actions Threaten the Integrity and Enforceability of this Court's Judgment in *Eteros I.*

The record in this case reveals a disturbing pattern of retaliatory animus directed at Plaintiff by CBP. The undisputed facts show that, after losing in *Eteros I*, CBP at the Port of Blaine, WA, undertook retaliatory enforcement actions against Eteros and its executives to penalize their court victory and deter future reliance on the Court's judgment in *Eteros I*. According to the Complaint—which the Government's filings do not meaningfully refute at this stage—CBP falsely "mischaracterize[d] lawful activities" by Eteros personnel as violations of federal narcotics trafficking laws in order to justify harsh immigration penalties. Compl. at ¶62, ECF 1. Specifically, CBP denied the renewal of visas, issued an expedited removal order against Plaintiff's CEO,

imposed five-year and lifetime[22] bans on entry, revoked NEXUS trusted-traveler memberships, and threatened criminal prosecution and imprisonment for conduct deemed legal by this Court.

These enforcement actions are extraordinary. They do not involve the discovery of any new facts other than those at issue (and resolved) in *Eteros I*; rather, they rest entirely on this Court's decision in *Eteros I* and CBP's characterization of Eteros's lawful business activities as criminal narcotics trafficking. In denying reconsideration of the removal, CBP's Area Port Director for the Port of Blaine bluntly acknowledged the underlying premise: although Eteros had "succeeded at CIT" in establishing the legality of its imports, the CIT "lacks authority to set precedent over U.S. immigration law," and the court's ruling "solely addressed import restrictions" with "no basis on the … immigration consequences" of involvement in the marijuana industry. *See* Compl. Ex. C, ECF 21-1 at 118. In the Port Director's view, *Eteros I* "did not determine that [Eteros's] business was outside the scope of federally illegal marijuana production," so CBP felt free to treat Eteros and its officers as narcotics traffickers despite the CIT's judgment. *Id*. The record leaves little doubt that CBP's campaign was retaliatory: it was explicitly triggered by Eteros's "litigation success against CBP," aimed at maligning Eteros's legitimacy, and calculated to punish the company and its personnel for prevailing in court, and aiming to put them out of business. The practical effects have been severe. Eteros's operations have suffered because key employees cannot travel to the United States. CBP's actions have also created a "realistic apprehension" among other Eteros employees that merely by carrying out the business (in compliance with this Court's decision and state/federal law) they risk being labeled drug traffickers and subjected to arrest, prosecution, or imprisonment if they set foot in the U.S. This kind of fear

---

[22] A finding by CBP that a foreign citizen is a narcotics trafficker under 21 U.S.C. §§ 841 or 1907 results in a lifetime ban from travel to the U.S. under 8 U.S.C. § 1182(a)(2)(C).

is precisely the chilling effect one would expect CBP's retaliation to engender – a warning to Eteros (and by extension, other importers) that success in the CIT can be met with personal, direct and devastating retribution.

CBP's conduct threatens to eviscerate the relief that Eteros won in *Eteros I* and strikes at the CIT's underlying authority. This Court's *Eteros I* judgment was not some abstract pronouncement; it was a hard-earned shield that allowed Eteros's lawful merchandise to enter the United States, thereby enabling Eteros's U.S. business activities to thrive. That judgment assured Eteros that engaging in state-authorized and federally-exempt cannabis-related commerce (as described in *Eteros I*) is lawful and cannot be penalized by CBP under federal laws. CBP's retaliatory measures – by branding those very activities as "illicit" drug trafficking – directly undermine the effect of the Court's decision. Eteros technically may still import its machines (CBP has not excluded/seized Eteros's goods since *Eteros I*), but the company cannot do so with the participation of its leadership or without fear of draconian personal consequences.

CBP has thus nullified the Court's judgment by making Eteros's victory hollow: the goods may pass, but the people necessary to Eteros's U.S. operations are kept out and banned for life, directly undercutting the enforceability of this Court's judgment. In hollowing out the final judgment in *Eteros I*, CBP seeks to achieve through abusive immigration enforcement measures what it was forbidden from doing in this case; and such conduct, if unchecked, would render the Court's review in *Eteros I* "an idle ceremony," and its final judgment a dead letter. *Zenith Radio Corp. v. United States*, 518 F. Supp. 1347, 1349 (Ct. Int'l Tr. 1981) (quoting *Scripps-Howard Radio, Inc. v. F.C.C.*, 316 U.S. 4, 10 (1942)).

This Court has both the authority and the duty to protect the integrity of its judgments. Just as Article III courts may issue writs to prevent the direct evasion or defiance of their orders, so too

may they act to prevent any indirect frustration of a judgment's intended legal effect—as CBP has sought to do here.

### 3.    The Government's Objections to All Writs Relief Are Unavailing.

The Government mischaracterizes the nature of Eteros's claim by framing it as a purely immigration matter outside the CIT's jurisdiction. In reality, Eteros invokes the All Writs Act and 28 U.S.C. § 1581(i)(1)(D) to enforce this Court's prior judgment in *Eteros I*, not to adjudicate individual immigration benefits. That the retaliatory penalties take the form of immigration actions does not defeat jurisdiction, so long as the requested relief is "in aid of" the Court's original § 1581(a) jurisdiction in *Eteros I*, and the holding which CBP has knowingly disregarded and twisted to retaliate against Plaintiff.

The Government misleads the court and suggests that Eteros's recourse lies exclusively through immigration channels and some future district court action. Eteros's CEO was subjected to expedited removal under 8 U.S.C. § 1225, a process with little opportunity for judicial or administrative review. In the WAWD litigation, the Government has argued that neither the immigration courts nor the district courts have jurisdiction to review the agency's conduct. Only the CIT can provide effective relief because the retaliation at issue directly undermines its judgment in *Eteros I* and the CBP rationale offered to support its theory of narcotics trafficking relies explicitly on this Court's *Eteros I* judgment and related stipulations.

Finally, the Government argues that this Court lacks jurisdiction because no merchandise was physically excluded by CBP. The Government posits that "without an import that has been barred in violation of the court's prior decision, this Court does not have subject matter

jurisdiction" over the case.[23] Govt. Br. at 8. It is true that CBP, careful not to openly defy *Eteros I*

on the import prohibition front, has not seized or excluded Eteros's merchandise at the border. But

the jurisdictional nexus to an import transaction – and to this Court's prior exercise of § 1581(a)

jurisdiction – is nonetheless clear and direct. The adverse immigration actions at issue stem directly

from the importation of cannabis-related merchandise by Plaintiff and this Court's judgment

declaring those imports lawful and ordering CBP at the Port of Blaine to release the lawful goods

into U.S. commerce. CBP invoked *Eteros I* and its record to label Eteros executives as illicit

traffickers, justifying inadmissibility under 21 U.S.C. §§ 841, 1907 and INA § 212(a)(2)(C). *See*

Compl. Ex. C, ECF 21-1 at 118. These actions clearly "arise out of laws providing for" embargoes

and restrictions on imports and constitute the "administration and enforcement" of such laws—

bringing this matter squarely within § 1581(i)(1)(D) and (i)(4). The retaliation is inseparable from

the underlying import transaction in *Eteros I* and is plainly designed to circumvent this Court's

judgment.

## II.    In the Alternative, the Court May Reopen *Eteros I* and Convert this Action to an Enforcement or Contempt Proceeding.

While Plaintiff maintains that jurisdiction is proper under 28 U.S.C. § 1581(i)(1)(D), and

that this action was properly initiated to vindicate Plaintiff's rights and this Court's prior judgment,

---

[23] The Government appears to concede that if CBP had merely disregarded this Court's judgment by prohibiting entry of Eteros's cannabis-related equipment, then this Court would have jurisdiction to entertain that failure in the administration and enforcement of its *Eteros I* judgment. But because CBP instead connived to exclude Eteros's *executives* (instead of its merchandise) by claiming their involvement with ongoing imports of cannabis-related machinery constitutes illicit narcotics trafficking under 21 U.S.C. §§ 841 and 1907, somehow this form of retaliation falls outside this Court's administration and enforcement jurisdiction? This distinction is illusory. A defendant cannot evade this Court's jurisdiction simply by shifting the mode of noncompliance from merchandise to personnel. Where an agency action is designed to nullify or circumvent a prior judgment of this Court, it must remain subject to the Court's enforcement jurisdiction— regardless of the specific mechanism used. The integrity of this Court's judicial authority does not turn on whether the Government's overt defiance targets goods or people.

Plaintiff respectfully notes that the Court retains the inherent authority to enforce and protect its judgments through equitable powers, including civil contempt, without requiring a separate civil action. *See Shillitani v. United States*, 384 U.S. 364, 370 (1966) ("There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt."); *Reynolds v. Roberts*, 207 F.3d 1288, 1298 (11th Cir. 2000) ("Consent decrees, like all injunctions, are to be enforced through the trial court's civil contempt power."). When a court renders a final judgment, it retains the authority to ensure that judgment is honored and not undermined, allowing courts to supervise compliance with their decrees and to punish contempt of court.

Accordingly, if the Court determines that the gravamen of this action is better addressed as an enforcement proceeding or motion for contempt in *Eteros I*, rather than as a stand-alone suit, Plaintiff respectfully requests that the Court exercise its discretion to reopen the docket in *Eteros Technologies USA, Inc. v. United States*, Court No. 21-cv-0287, and consolidate the present proceedings thereunder. Such action would be consistent with federal court' practice of reopening original cases to address noncompliance or retaliation undermining prior judgments. *See Nix v. Billington*, 448 F.3d 411, 416 (D.C. Cir. 2006) (district court retained jurisdiction to enforce consent decree despite expiration of monitoring period); *Peacock v. Thomas*, 516 U.S. 349, 356 (1996) (noting proper enforcement of prior judgments generally occurs within the original proceeding); *Wyatt ex rel. Rawlins v. Rogers*, 92 F.3d 1074, 1078 (11th Cir. 1996) (discussing use of an order to show cause why the defendant should not be held in contempt for noncompliance).

This Court's judgment in *Eteros I* is being undermined not by noncompliance with the Court's prior exclusion release order, but by CBP's retaliatory manipulation of that judgment and the factual stipulations made by Eteros in that case to impose extrajudicial penalties and deny

Plaintiff due process of law and the benefits of its success in *Eteros I*. Whether treated as an independent § 1581(i)(1)(D) action, or as an enforcement motion within *Eteros I*, the requested relief is the same: the protection of this Court's authority and the vindication of its final judgment from being twisted into a tool of vigilante agency retaliation.

Plaintiff therefore respectfully requests that, in the event the Court concludes that this matter is more appropriately resolved under the original case's jurisdictional posture, it grant leave to reopen *Eteros I* and adjudicate the allegations herein as part of that enforcement record. Such a conversion would not prejudice Defendant, would serve judicial economy, and would ensure that the Court retains control over the administration and enforcement of its own final judgments.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court issue an order denying the Defendants' Motion to Dismiss the Complaint.

Respectfully submitted,

NEVILLE PETERSON LLP

 /s/ Richard F. O'Neill
Richard F. O'Neill
701 Fifth Ave., Ste. 4200-2159
Seattle, WA 98104-4089
(206) 905-3648
roneill@npwny.com

 /s/ John M. Peterson
John M. Peterson
Patrick B. Klein
One Exchange Plaza at 55 Broadway
New York, NY 10006
(212) 635-2730
jpeterson@npwny.com

*Counsel to Plaintiff, Eteros Technologies USA, Inc.*

Dated: June 6, 2025

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. GARY S. KATZMANN**

-------------------------------------------------------------------X

**ETEROS TECHNOLOGIES USA, INC.,**                              :
                                                            :
     **Plaintiff,**                     :
                                                            :
     *v.*                               :    **Case No. 25-cv-36-GSK**
                                                            :
**UNITED STATES OF AMERICA,**                                   :
                                                            :
                                                            :
     **Defendant.**                     :

-------------------------------------------------------------------X

## <u>CERTIFICATE OF COMPLIANCE</u>

     Pursuant to the U.S. Court of International Trade Standard Chambers Procedures, and in reliance upon the word count feature of the word processing program used to prepare the instant Memorandum, I, Richard F. O'Neill, of Neville Peterson LLP, who is responsible for the instant Memorandum, certify that it contains 12,020 words.

                          Respectfully submitted,

                          /s/ Richard F. O'Neill
                            Richard F. O'Neill