**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. GARY. S. KATZMANN**

```
-----------------------------------------------------------------X
ETEROS TECHNOLOGIES USA, INC.,              :
                                            :
        Plaintiff,                          :
                                            :
        v.                                  :   CASE No. 25-cv-36-GSK
                                            :
UNITED STATES OF AMERICA,                   :
                                            :
                                            :
        Defendant.                          :
-----------------------------------------------------------------X
```

## SECOND DECLARATION OF AARON MCKELLAR

I, Aaron McKellar, hereby declare under penalty of perjury under the laws of the United States of America, and pursuant to 28 U.S.C. § 1746, that the following statements are true and correct to the best of my knowledge and belief:

1. My name is Aaron McKellar. I am a Canadian citizen residing British Columbia, Canada. I am the founder and Chief Executive Officer of Eteros Technologies Inc. ("Eteros Canada"), headquartered in Surrey, British Columbia, and have the same title with Plaintiff, Eteros Technologies USA, Inc. ("Eteros USA").

2. I provide this second declaration in support of Plaintiff's response in opposition to Defendant's motion to dismiss and to supplement my earlier declaration, which was filed in support of Plaintiff's Motion for Expedition ("First McKellar Declaration") (ECF 13-2). For the sake of efficiency, I have not repeated matters addressed in my first declaration herein, and instead, address in this declaration certain factual developments that have transpired since my first declaration was filed on January 31, 2025.

3. <u>Vacatur of Prior Removal</u>: U.S. Customs and Border Protection ("CBP") issued a letter to my counsel on April 21, 2025, vacating the expedited removal order that had been entered

against me on October 4, 2024. This letter formally removed the five-year ban that had barred me from entering the United States because of the October 4, 2024 removal. I understood this development to mean that the prior removal order was nullified and that I would no longer be considered inadmissible on the basis of that order.

4.  <u>Appearance at Vancouver Preclearance (April 29, 2025)</u>: In light of the vacatur of the expedited removal, and pursuant to my L-1A visa, I made plans to travel to the United States to resume my normal business activities. On April 29, 2025, I presented myself for U.S. preclearance at Vancouver International Airport in Canada, seeking to board a flight to Las Vegas, Nevada, in order to visit Eteros USA's headquarters and meet with my colleagues there. I carried with me additional materials disclosing my recent immigration and litigation history. I proactively provided this packet of documents to the CBP officers during primary inspection so that they would be fully informed of my situation.

5.  <u>Secondary Inspection and Questioning</u>: Despite my transparency and the documentation I provided, CBP officers directed me to secondary inspection once again. In secondary, the officers subjected me to renewed questioning similar in tone and focus to what I experienced during the October 4, 2024 encounter. The officers' questions centered almost entirely on Eteros's business and its involvement in the cannabis industry. They asked about the nature of Eteros's products and implied connections to illicit trafficking, even though I had furnished evidence of our company's prior legal victories confirming the lawfulness of our cannabis-related equipment and our authorization under 21 U.S.C. § 863(f)(1). I answered all questions truthfully and referenced the packet of materials I had provided.

6.  <u>CBP's Inadmissibility Determination</u>: After reviewing my case and conducting this secondary interview, the CBP officers informed me that they found me inadmissible to the United

States under the controlled substance trafficking provision of the immigration laws. Specifically, the officers stated that, notwithstanding the vacatur of the prior order, they continued to have "reason to believe" that I am or have been involved in illicit drug trafficking (due to my role in Eteros's business), rendering me inadmissible under INA § 212(a)(2)(C). In other words, CBP refused my admission on the exact same grounds that had been cited previously, effectively treating the vacatur letter and supporting documentation as insufficient to alleviate their suspicions.

7. <u>Withdrawal of Application for Admission</u>: Unlike the October 4, 2024 encounter, however, the CBP officers apparently could not have issued a new expedited removal order against me on April 29, 2025, because I remained on Canadian soil at the Vancouver International Airport during the encounter. Instead, I was permitted to withdraw my application for admission pursuant to INA § 235(a)(4). I was not permitted to board my flight to Las Vegas and, after the paperwork was completed, I returned to Canada that same day (April 29, 2025). Because I was allowed to withdraw my application, no new removal order was issued against me during this encounter – but the end result was that I was still excluded from entering the United States.

8. <u>Sworn Statement and Form I-275</u>: During the secondary inspection on April 29, 2025, the CBP officers prepared a written "sworn statement" for me to sign, as well as a Form I-275, Withdrawal of Application for Admission, documenting my withdrawal. I carefully reviewed the sworn statement that the officers had prepared but refused to sign.

9. <u>Ongoing CBP Policy/Pattern</u>: The events of April 29, 2025, make clear that, despite CBP's April 2025 vacatur of the prior removal order, CBP continues to bar my entry on the same INA § 212(a)(2)(C) grounds as before. In other words, even after nullifying the expedited removal order that was previously issued against me, CBP officers persisted in treating me as inadmissible based on an alleged "reason to believe" I am an illicit drug trafficker. This demonstrates that the

unlawful policy or pattern of action challenged in this case – namely, CBP's targeting and exclusion of Eteros's personnel under false accusations of drug trafficking – is ongoing. CBP has effectively reaffirmed the very position that we contend is unlawful, showing a continuing pattern of excluding me (and by extension other Eteros employees) from the United States due to our association with entirely legal cannabis industry activities.

10. <u>NEXUS Denial of Eteros Executive, Ryan Bjergso</u>: In May 2024, Ryan Bjergso, Vice President of Operations at Eteros—one of three Eteros executives holding L-1A work authorization—submitted a NEXUS application and was provisionally approved, receiving an invitation to schedule his interview. However, following adverse actions taken against Eteros's other two L-1A visa holders (myself and Ms. James), Mr. Bjergso has also now found himself in CBP's crosshairs and has received a denial notice from CBP for his NEXUS application, despite no intervening conduct that would justify reversal of his provisional approval.

11. <u>Continuing Exclusion and NEXUS Revocation</u>: As of the date of this declaration, I remain excluded from the United States because CBP officers are apparently still enforcing a *de facto* ban on my travel, and the travel of other Eteros employees. In other words, even after nullifying the expedited removal order that was previously issued against me—and despite Defendants' representations that the removal order vacatur mooted the action filed on behalf of myself and Eteros in the U.S. District Court for the Western District of Washington ("WAWD"), *see Eteros Techs. USA Inc. et al. v. United States of America*, *et al.,* No. 2:25-cv-00181 (W.D. Wash.)—CBP officers have persisted in treating me and my employees as inadmissible based on an alleged "reason to believe" I am an illicit drug trafficker, which the agency only supports with reference to Eteros's prior litigation victory in the CIT. Additionally, my membership in the NEXUS trusted traveler program remains revoked and has not been restored. My NEXUS card

was confiscated by CBP on October 4, 2024, and to date it remains revoked, which further inhibits my ability to travel freely. In sum, I continue to face the same exclusion from the United States that I have since October 2024, and the harm to my business activities and personal liberties is ongoing.

12.     <u>Summary of Current Situation</u>: In summary, the situation is as follows: Eteros is a lawful enterprise that provides agricultural equipment and has a strong record of compliance with U.S. law. Our provision of equipment to our customers is in compliance with 21 U.S.C. § 863(f)(1) and is protected by that statutory exemption and backed by CIT precedent. Neither I, Ms. James, Mr. Bjergso, nor any Eteros employee, is engaged in the trafficking of controlled substances of any kind. Despite this, U.S. border officials have treated us as such, resulting in my expedited removal and ban from entry, and Ms. James's exclusion and banning, which in turn have triggered additional adverse consequences. These actions have caused severe personal and professional harm, and they continue to threaten the viability of our U.S. operations. We have pursued remedies: we filed the motion to vacate the removal with CBP (denied), and we initiated this litigation in the U.S. Court of International Trade, as well as in the U.S. District Court for the Western District of Washington, to seek relief from these wrongful criminal allegations, which the government claims are not judicially reviewable. We simply seek to have our status as law-abiding businesspeople reaffirmed, so that we can travel freely to the United States to conduct our lawful business without the shadow of unfounded accusations. All of the factual matters stated in this declaration are drawn from my personal knowledge, my direct involvement in Eteros's business, and documents and records I have reviewed.

13.     I remain ready and willing to travel to the United States to continue leading Eteros's U.S. operations as soon as I am legally permitted to do so—this would give me the assurance

needed to return to my plan of increasing Eteros's investment in the United States and to seek US citizenship. Eteros's mission is to support agricultural producers with innovative equipment, and we have done so in full compliance with the law. Our company—and my career—depend on being able to operate without being retaliated against and treated as criminals. We have already been cleared by this Court in *Eteros I*, and we respectfully seek the chance to clear our names from these allegations of criminal narcotics trafficking in a court of law, so that we can put these events behind us and get back to growing our business on a level playing field.

14. Further declarant sayeth not.

*     *     *

I declare under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed on this 6th day of June, 2025.

Location: Surrey, British Columbia, Canada

Signature: _____
Aaron McKellar
CEO
Eteros Technologies, Inc.
Eteros Technologies USA, Inc.