UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. GARY S. KATZMANN, JUDGE

_____
                                             :

ETEROS TECHNOLOGIES USA, INC.,      :
                                             :

                        Plaintiff,      :      Court No. 25-00036
                                             :

               v.                    :

UNITED STATES,                        :
                                             :

                      Defendant.     :
_____:

## DEFENDANT'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS MOTION TO DISMISS

                                BRETT A. SHUMATE
                                Assistant Attorney General
                                Civil Division

                                PATRICIA M. McCARTHY
                                Director

                                JUSTIN R. MILLER
                                Attorney-In-Charge
                                International Trade Field Office

                                AIMEE LEE
                                Assistant Director

                                GUY EDDON
                                Senior Trial Attorney
                                Department of Justice, Civil Division
                                Commercial Litigation Branch
                                26 Federal Plaza, Room 346
                                New York, New York 10278
                                (212) 264-9232 or 9230
                                *Attorneys for Defendant*

Of Counsel:
Alexandra Khrebtukova
Zachary Simmons
Sydney Jackson
Office of the Assistant Chief Counsel
U.S. Customs and Border Protection

## TABLE OF CONTENTS

BACKGROUND ...................................................................................................1

ARGUMENT ......................................................................................................2

THE COURT LACKS JURISDICTION PURSUANT TO 28 U.S.C. § 1581(i)...............2

    A.  Eteros Does Not Challenge The "Administration And Enforcement" Of An Import Transaction Or A Matter of International Trade Law............................3

    B.  Eteros Complains Of Immigration Matters And Is Incorrect As To The Basis For Those Administrative Actions...................................................................7

    C.  The Court Should Reject Eteros's Request To Take Judicial Notice Of The Record Of *Eteros I*................................................................................11

    D.  There Is No Basis For The Court To Reopen *Eteros I* ...................................13

CONCLUSION...................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Arbaugh v. Y&H Corp.*,
546 U.S. 500 (2006) ................................................................................................ 2

*Big Easy Studios, LLC v. United States*,
147 Fed. Cl. 539 (2020) ......................................................................................... 11

*Consolidated Bearings Co. v. United States*,
348 F.3d 997 (Fed. Cir. 2003) ................................................................................. 5

*Di Jub Leasing Corp. v. United States*,
505 F. Supp. 1113 (Ct. Int'l Trade 1980) ............................................................... 4

*Elkem Metals Co. v. United States*,
23 CIT 170, 44 F. Supp. 2d 288 (1999) .................................................................. 3

*Eteros Technologies USA, Inc. v. United States*,
592 F. Supp. 3d 1313 (Ct. Int'l Trade 2022) ................................................. *passim*

*Eteros v. United States,*
Case No.25-181 (W.D. Wash. Jan. 29, 2025) ................................................... 2, 13

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994) ................................................................................................ 2

*Ex Parte McCardle*,
74 U.S. (7 Wall.) 506 (1868) ................................................................................... 2

*McNutt v. Gen. Motors Acceptance Corp.*,
298 U.S. 178 (1936) ................................................................................................ 3

*Myers Investigative and Sec. Servs., Inc. v. United States*,
47 Fed. Cl. 288 (2000) ........................................................................................... 12

*Nat'l Fisheries Inst., Inc. v. United States Bureau of Customs & Border Prot.*,
637 F. Supp. 2d 1270 (Ct. Int'l Tr. 2009) ............................................................... 6

*Ninestar Corp. v. United States*,
666 F. Supp. 3d 1351 (Ct. Int'l Trade 2023) .......................................................... 2

*Osage Tribe of Indians of Ok. v. United States*,
95 Fed. Cl. 469 (2010) ........................................................................................... 11

*Scott Timber Co. v. United States*,
No. 05-708, 2008 WL 4725447 (Fed. Cl. June 19, 2008) ..................................... 12

*Shinyei Corporation of America v. United States*,
355 F.3d 1297 (Fed. Cir. 2004) ..................................................................... 4, 5

*Wally Packaging, Inc. v. United States*,
7 CIT 19, 578 F. Supp. 1408 (1984) .................................................................. 3

**Statutes**

8 U.S.C. § 1101 ................................................................................................... 3

8 U.S.C. § 1182 ................................................................................................. 10

8 U.S.C. § 1182(a)(7)(A)(i)(I) ........................................................................ 4, 9

8 U.S.C. § 1184(b) .............................................................................................. 8

8 U.S.C. § 1225(a)(4) ...................................................................................... 4, 9

8 U.S.C. § 1225(b)(1) ...................................................................................... 4, 9

8 U.S.C. § 1225(b)(2)(A) .................................................................................... 8

21 U.S.C. § 863(a)(3) .......................................................................................... 4

21 U.S.C. §§ 841 ............................................................................................... 10

21 U.S.C. §§1907 .............................................................................................. 10

28 U.S.C. § 1581(i) ..................................................................................... *passim*

28 U.S.C. § 1581(i)(1)(D) .................................................................................. 3

28 U.S.C. § 1651(a) .......................................................................................... 13

Section 1581(a) ................................................................................................. 12

Section 235(b)(1) ................................................................................................ 7

Section 212(a)(2)(C)(i) .................................................................................... 7, 9

Section 212(a)(7) ................................................................................................ 7

Section 212(a)(7)(A)(i)(I) ........................................................................... 7, 8, 9

**Rules**

U.S.C.I.T Rule 12(b)(1) ...................................................................................... 1

Fed. R. Evid. 201 .............................................................................................. 11

**Regulations**

8 C.F.R. § 235.3(b) ................................................................................................ 9

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. GARY S. KATZMANN, JUDGE

| | | |
|---|---|---|
| ETEROS TECHNOLOGIES USA, INC., | : | |
| | : | |
| Plaintiff, | : | Court No. 25-00036 |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |
| | : | |

### DEFENDANT'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS MOTION TO DISMISS

Defendant, the United States (the Government), respectfully submits this reply memorandum in further support of its motion to dismiss the action filed by plaintiff Eteros Technologies USA, Inc. (Eteros), for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Rules of the Court of International Trade (USCIT R.). Eteros brings this action to challenge immigration-related decisions by U.S. Customs and Border Protection (CBP) and U.S. Citizenship and Immigration Services (USCIS). However, this Court's jurisdiction is limited to hearing matters related to import transactions and international trade law. Accordingly, the Court should dismiss plaintiff's action because the Court lacks jurisdiction over the immigration-related issues at the heart of this case.

### BACKGROUND

Eteros commenced this action to challenge various immigration-related determinations by CBP, including issuing "an expedited removal order, denying visas, [and] revoking NEXUS memberships[.]" Compl. ¶ 53. Eteros suggests that these alleged actions "directly conflict with this Court's findings and ruling" (*id.*) in a prior case that involved the importation of marijuana-related drug paraphernalia into

Washington State by Eteros. *Eteros Technologies USA, Inc. v. United States*, 592 F. Supp. 3d 1313 (Ct. Int'l Trade 2022) (*Eteros I*).

The Government's opening brief in support of its motion to dismiss set forth the essential, and essentially undisputed, facts of this case. Since that motion was filed on June 17, 2025, oral argument was held in district court on the Government's motion to dismiss Eteros's parallel immigration lawsuit pending in the Western District of Washington. *Eteros v. United States*, Case No. 25-181 (W.D. Wash. Jan. 29, 2025).

For the reasons set forth in detail in our opening brief and below, the Court lacks jurisdiction over the immigration-related dispute at the heart of this case, and this action should be dismissed.

## ARGUMENT

### THE COURT LACKS JURISDICTION PURSUANT TO 28 U.S.C. § 1581(i)

As outlined in our moving papers, the U.S. Court of International Trade (CIT) is a court of limited jurisdiction. *Ninestar Corp. v. United States*, 666 F. Supp. 3d 1351, 1363 n.11 (Ct. Int'l Trade 2023) (citing and quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). As this Court recognizes, "the CIT is unique in the federal system as an Article III court with subject matter expertise in international trade and customs law." *Id*. at n.11. "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868).

The parties or the Court *sua sponte* may challenge the Court's subject-matter jurisdiction at any time. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006). Here, Eteros has the burden of establishing jurisdiction because, "[w]hen the court's jurisdiction is

challenged, the party asserting jurisdiction has the burden of establishing that jurisdiction exists." *Wally Packaging, Inc. v. United States*, 7 CIT 19, 20, 578 F. Supp. 1408, 1410 (1984); *see also McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 188-89 (1936); *Elkem Metals Co. v. United States*, 23 CIT 170, 175, 44 F. Supp. 2d 288, 292 (1999). Eteros alleges jurisdiction under 28 U.S.C. § 1581(i)(1)(D) for CBP's administration and enforcement regarding matters of importations. Compl. ¶ 5. However, this case is not about Eteros's imports but concerns individual immigration matters related to two of its executives.

For the reasons discussed in our opening brief and below, Eteros cannot establish that the Court has jurisdiction over this action.

## A. Eteros Does Not Challenge The "Administration And Enforcement" Of An Import Transaction Or A Matter of International Trade Law

Eteros asserts jurisdiction under 28 U.S.C. § 1581(i)(1)(D), Compl. ¶ 5, but fails to demonstrate that this action arises out of the administration and enforcement of an import transaction or implicates international trade law. Jurisdiction under subsection 1581(i)(1)(D) does not exist here because CBP's immigration enforcement actions concerning two Eteros executives in no way relate to the importation of merchandise or the exemption to the Controlled Substances Act's import ban on drug paraphernalia examined by the Court in *Eteros I*.

First, subsection 1581(i)(1)(D) on its face does not cover Eteros's action because it does not arise out of an import transaction but rather consists of immigration-related matters for two separate individuals. Immigration law is governed by the Immigration and Nationality Act (INA), and the admissibility of individuals falls squarely under the jurisdiction of immigration courts. *See* 8 U.S.C. § 1101 *et seq.;* 8 U.S.C. § 1252(b)(9)

("Judicial review of all questions of law or fact . . . arising from any action taken or proceeding brought to remove an alien from the United States . . . shall be available only in judicial review of a final order [of removal]...."). Second, even if Eteros's complaint could somehow be construed to cover the importation of goods, any exclusion of those goods would be covered by section 1581(a), as section 1581(i) may not be used to circumvent the requirements of the Court's other jurisdictional provisions.

Though Eteros asserts that this action "'arises out of' a law providing for import restrictions (the federal drug paraphernalia statute, 21 U.S.C. § 863(a)(3))," Pl.'s Resp. Br. at 28, this argument is both factually and legally incorrect – the underlying immigration actions at issue were taken pursuant to immigration statutes, specifically (among others): 8 U.S.C. § 1225(a)(4) (withdrawal of application for admission); 8 U.S.C. § 1225(b)(1) (expedited removal); and 8 U.S.C. § 1182(a)(7)(A)(i)(I) (lack of unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document).

In *Di Jub Leasing Corp. v. United States*, 505 F. Supp. 1113 (Ct. Int'l Trade 1980), the Court considered whether an "action contesting the administrative revocation of a customhouse cartman's license 'arises out of' the 'administration and enforcement' of a law providing for revenue from imports." The court held that "the revocation of a cartman's license pursuant to the customs regulations is so intertwined with and directly related to the administration and enforcement of the laws providing for revenue from imports," as to support residual jurisdiction. *Di Jub Leasing Corp.*, 505 F. Supp. at 1117. Here, by contrast, immigration enforcement issues related to Eteros's employees are

entirely unrelated to the administration and enforcement of the laws providing for revenue for imports.

Eteros cites *Shinyei Corporation of America v. United States*, 355 F.3d 1297 (Fed. Cir. 2004), in support of its contention that section 1581(i) jurisdiction can be found "when an importer's suit is not attacking an underlying trade ruling *per se* but rather the agency's implementation or enforcement of that ruling." Pl.'s Resp. Br. at 22. The factual differences between this case and *Shinyei* could not be starker. *Shinyei* was not an immigration case, but a trade case concerning antifriction bearings imported from Japan that were the subject of an antidumping investigation conducted by the U.S. Department of Commerce (Commerce). *Shinyei*, 355 F.3rd at 1300. After Commerce issued final amended instructions to Customs regarding liquidation of entries of the antifriction ball bearings that failed to include those imported by Shinyei, Shinyei filed suit. *Id.* at 1302-1303.

In *Shinyei*, the Government did not dispute that section 1581(i) jurisdiction was proper at the time the plaintiff filed suit. *Id.* at 1305. Rather, the Government argued that the CIT's jurisdiction over Shinyei's APA cause of action was divested by liquidation of the subject entries. *Id*. The Federal Circuit held that liquidation of the subject entries did not render the action moot and thereby divest the CIT of its section 1581(i) jurisdiction because "an action challenging Commerce's liquidation instructions is not a challenge to the final results, but a challenge to the 'administration and enforcement' of those final results." *Id.*, quoting *Consolidated Bearings Co. v. United States*, 348 F.3d 997, 1002 (Fed. Cir. 2003).

Here, Eteros is not challenging Commerce's liquidation instructions, nor does Eteros allege there are any entries that have been liquidated in a manner adverse to Eteros. To the contrary, Eteros does not dispute that since the *Eteros I* decision, Eteros has been able to import its products without interference. Pl.'s Resp. Br. at 10, 34. Accordingly, a case concerning a challenge to Commerce's liquidation instructions for imported goods does not provide any basis for the Court to find jurisdiction over this matter, where CBP and USCIS have made immigration-related decisions concerning individuals under the INA, and not regarding merchandise pursuant to the trade statutes.

The only other case that Eteros cites in support of its theory that section 1581(i) can bestow the CIT with jurisdiction over an immigration case is *Nat'l Fisheries Inst., Inc. v. United States Bureau of Customs & Border Prot.,* 637 F. Supp. 2d 1270 (Ct. Int'l Tr. 2009). Pl.'s Resp. Br. at 22. *National Fisheries* concerned a Customs bond determination and whether CBP's decision to apply an enhanced bonding requirement to shrimp importers subject to antidumping duty orders was arbitrary and capricious. In that case, the CIT held that "that the enhanced bonding requirement [demanded by CBP] is arbitrary and capricious in imposing greatly increased bond requirements only on importers of shrimp products subject to antidumping duty orders." *Nat'l Fisheries Inst.,* 637 F. Supp. 2d at 1274. The Court further "conclude[d] that Commerce, as the agency to which Congress delegated authority to determine estimated antidumping duty liability, is required by law to set the cash deposit by estimating the final antidumping duty liability as accurately as possible." *Id.* For these reasons, the CIT remanded the matter to CBP for, *inter alia*, "an individual redetermination of the limit of liability on each individual continuous entry bond at issue in this action without application of the

enhanced bonding requirement…" *Id.* at 1305.  Neither the facts nor the law at issue in *Nat'l Fisheries Inst.* are on point or even similar to the facts or the laws implicated here. Most critically, *Nat'l Fisheries Inst.* concerned trade matters, not immigration disputes and laws.

Indeed, having conducted a review of this Court's jurisprudence, the Government has not been able to locate a single immigration-related matter heard by this Court pursuant to section 1581(i), or any other jurisdictional predicate of this Court; Eteros certainly does not cite one.

**B. Eteros Complains of Immigration Matters And Is Incorrect As To The Basis For Those Administrative Actions**

In its opposition brief, Eteros incorrectly claims that "the Port Director's justification for imposing the [Expedited Removal Order (ERO)] and five-year ban [on Aaron McKellar] rested *entirely* on the facts from the *Eteros I* case."  Pl.'s Resp. Br. at 8 (emphasis in original).  However, the ERO was not based on *Eteros I*, but rather Mr. McKellar's refusal to answer questions upon seeking admission.  In fact, the ERO letter stated that "Mr. McKellar presented himself for admission to the United States at the Peace Arch Crossing for the Blaine Port of Entry in Blaine, WA on October 4, 2024. Mr. McKellar was seeking admission as a visitor (a B-1/B-2 nonimmigrant visa).  During secondary examination Mr. McKellar repeatedly refused to answer questions as recorded under I-867A Record of Sworn Statement in Proceedings under Section 235(b)(1) of the Immigration and Naturalization Act (INA)."  Compl. Exh. C (ECF No. 2-1 at 101). Accordingly, Mr. McKellar's refusal to answer questions was a factor that led to the decision to issue an ERO.

Eteros also claims, incorrectly, that "CBP found that McKellar was inadmissible, not under INA § 212(a)(7) (as had been asserted in the October 4, 2024 ERO), but instead, under INA § 212(a)(2)(C)(i) because of 'the involvement of Eteros in the production of marijuana and the proliferation of the marijuana industry.'"  Pl.'s Resp. Br. at 8, n.8.  On October 4, 2024, CBP determined Mr. McKellar to be inadmissible under INA § 212(a)(7)(A)(i)(I) after he repeatedly refused to answer questions during secondary inspection regarding his identity, alienage, or application for admission.

Under U.S. immigration law, applicants for admission bear the burden of proving they are clearly and beyond doubt eligible to enter the United States.  8 U.S.C. § 1225(b)(2)(A); *see also* 8 U.S.C. § 1361 ("Whenever any person makes application for a visa or any other document required for entry, or makes application for admission, or otherwise attempts to enter the United States, the burden of proof shall be upon such person to establish that he is eligible to receive such visa or such document, or is not inadmissible under any provision of this chapter, and, if an alien, that he is entitled to the nonimmigrant, immigrant, special immigrant, immediate relative, or refugee status claimed, as the case may be…. [N]or shall such person be admitted to the United States unless he establishes to the satisfaction of the [CBP officer] that he is not inadmissible under any provision of [the Immigration and Nationality Act (INA)].").

Eteros is incorrect that CBP's immigration actions with respect to Mr. McKellar and Ms. James were "calculated to thwart the administration and enforcement of this Court's binding judgment in *Eteros I* by effectively barring Eteros's principals from engaging in the very operations that the Court affirmed as lawful and exempt from federal prohibition."  Pl.'s Resp. Br. at 20.  Eteros asserts that CBP's immigration actions

are "a direct attempt to enforce (or re-impose) import restrictions" and that CBP is "pressuring Eteros to fail as a business..." *Id.* at 21.

Eteros's assertions constitute a misrepresentation of the administrative process below and are unsubstantiated. CBP has implemented the *Eteros I* decision in full, and Eteros's imports of drug paraphernalia into Washington State have been and still are uninterrupted since the CIT's decision, which Eteros does not dispute. In unrelated immigration enforcement actions, CBP issued an ERO against Mr. McKellar when he attempted to enter the United States, on October 4, 2024, because of his non-cooperation during secondary inspection. INA, § 212(a)(7)(A)(i)(I). CBP eventually determined to vacate Mr. McKellar's ERO. On April 29, 2025, after the commencement of this action, Mr. McKellar made a second attempt to enter the United States but was found inadmissible under INA § 212(a)(2)(C)(i) and INA § 212(a)(7)(A)(i)(I) and allowed to withdraw his application for admission.

Ms. James similarly attempted to enter the United States on June 11, 2024, with Eteros's L-1A petition for the renewal of her nonimmigrant classification, but she was found inadmissible under INA § 212(a)(2)(C)(i). CBP forwarded Eteros's L-1A petition for Ms. James to USCIS with the recommendation that it be denied and allowed Ms. James to withdraw her application for admission. On October 25, 2024, Eteros refiled its L-1A petition for Ms. James directly with USCIS, which was approved on February 11, 2025. On March 28, 2025, USCIS issued a notice of intent to revoke Eteros's L-1A petition for Ms. James. Such immigration enforcement actions are unrelated to Eteros's import activities at issue in *Eteros I* and were executed pursuant to statutory and regulatory authorities unrelated to the laws at issue in *Eteros I*. *See, e.g.,*

9

8 U.S.C. § 1225(a)(4) (withdrawal of application for admission); 8 U.S.C. § 1225(b)(1)
(expedited removal); 8 U.S.C. § 1182(a)(7)(A)(i)(I) (lack of unexpired immigrant visa,
reentry permit, border crossing identification card, or other valid entry document); 8
C.F.R. § 235.3(b) (expedited removal procedures). These immigration actions are
entirely independent of Eteros's import transactions and in no way reflect animus or a
motive to engage in reprisal against Eteros's employees following the Court's decision in
*Eteros I*. Because the facts and laws at issue in the present action do not arise out of
United States trade laws, this Court lacks jurisdiction to grant Eteros the immigration
relief it seeks.

Eteros's assertion that the declaratory relief it seeks has nothing to do with
immigration law and the immigration status of Eteros's executives strains credulity. Pl.'s
Resp. Br. at 23-25. Eteros contends that "[t]he focus of this action is on CBP's *ultra
vires* conduct in administering and enforcing this Court's prior judgment in *Eteros I* – not
on the immigration status of any particular person." *Id.* at 23. However, this action is
precisely about the immigration status of Ms. James and Mr. McKellar. The "conduct"
referenced by Eteros – that is, the factual circumstances that underlie the complaint –
inarguably refer to CBP's immigration actions with respect to these two individuals, and
not to a trade action tied to the *Eteros I* decision. Additionally, the immigration-related
legal questions raised by Eteros far exceed the bounds of the trade matters at issue in
*Eteros I*, introducing statutory provisions that plainly were not examined in that case. *See*
Pl.'s Resp. Br. at 21, 24 (citing 8 U.S.C. § 1182, 21 U.S.C. §§ 841, 1907).

Though Eteros goes to great lengths to attempt to convince the Court that this
action simply seeks to "allow[] Eteros to continue its lawful business," *id.* at 24, the relief

sought from this Court, if granted, would directly speak to and impact CBP's

immigration actions.  For the Court to involve itself in this case and grant such relief

would be entirely without precedent and represent a significant departure from the

Court's area of jurisdiction.

### C.  The Court Should Reject Eteros's Request To Take Judicial Notice Of The Record Of *Eteros I*

The Court should reject Eteros's request to "take judicial notice of the complete

docket in *Eteros I*, including all pleadings, stipulations, declarations, exhibits, and the

final judgment entered therein."  Pl.'s Resp. Br. at 19.  Eteros conflates the jurisdictional

predicates of this case brought pursuant to section 1581(i) with the Court's section

1581(a) jurisdiction in *Eteros I* by suggesting that the Court should take judicial notice of

all the pleadings in *Eteros I* and by requesting that the Court reopen *Eteros I* to convert

this action into an enforcement proceeding.  *Id.* at 19 and 34.  Neither step is well-

founded nor appropriate.

Courts have discretion to take judicial notice of materials outside a case when

consistent with the provisions of Federal Rule of Evidence (FRE) 201.[1]  Courts have

---

[1]  Rule 201 states:
> (a) Scope. This rule governs judicial notice of an adjudicative fact only,
> not a legislative fact.
> (b) Kinds of Facts That May Be Judicially Noticed. The court may
> judicially notice a fact that is not subject to reasonable dispute because it:
>> (1) is generally known within the trial court's territorial
>> jurisdiction; or
>> (2) can be accurately and readily determined from sources whose
>> accuracy cannot reasonably be questioned.
> (c) Taking Notice. The court:
>> (1) may take judicial notice on its own; or
>> (2) must take judicial notice if a party requests it and the court is
>> supplied with the necessary information.

Fed. R. Evid. 201.

taken judicial notice of definitions in dictionaries and encyclopedias; the outcome of previous judicial decisions; and addresses of government buildings. *See Big Easy Studios, LLC v. United States*, 147 Fed. Cl. 539, 547-48 (2020) (*citing Osage Tribe of Indians of Ok. v. United States*, 95 Fed. Cl. 469, 473 (2010) (taking judicial notice of various definitions in dictionaries and encyclopedias)); *Scott Timber Co. v. United States*, No. 05-708, 2008 WL 4725447, at *1 (Fed. Cl. June 19, 2008) (finding "the outcome of, rather than particular facts found in, the cited cases" subject to judicial notice); and *Myers Investigative and Sec. Servs., Inc. v. United States*, 47 Fed. Cl. 288, 297 (2000) (taking judicial notice of "[i]nformation concerning all the addresses of [various] federal buildings located in Ohio").

Here, however, the Court must first determine whether it has jurisdiction to hear this matter in the first instance, before considering whether to "take judicial notice of the complete docket in *Eteros I*, including all pleadings, stipulations, declarations, exhibits, and the final judgment entered therein." Pl.'s Resp. Br. at 19. But even if this Court should find that it possesses subject-matter jurisdiction over this case, *Eteros I* was a section 1581(a) case, where the standard was *de novo* review based on the judicial record created before the Court. Under section 1581(i), the jurisdictional predicate pled in this case, the standard of review will be whether the agency's actions as encompassed in the administrative record were arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Defendant has not yet answered the complaint or filed the administrative record. Accordingly, Eteros's request that the Court take judicial notice of the entire record of *Eteros I* is inappropriate, particularly at this stage of the case.

### D. There Is No Basis For The Court To Reopen *Eteros I*

Likewise, there is no basis for the Court to reopen *Eteros I* and convert this action to an enforcement proceeding. Pl.'s Resp. Br. at 34. As noted previously, *Eteros I* was a case brought under the Court's section 1581(a) jurisdiction that concerned the exclusion of merchandise. Eteros prevailed in that action and, since the judgment in *Eteros I* was entered, Eteros does not allege that its merchandise has been excluded or that it has otherwise encountered difficulty with importing that or similar merchandise.

Here, there are no import transactions at issue, and no implications for the laws of international trade. CBP has not prevented Eteros's merchandise from entering the United States. Instead, Eteros complains of ongoing immigration-related matters concerning two employees. As noted above, there is a separate action filed by Eteros concerning these same immigration issues pending in the United States District Court for the Western District of Washington. *Eteros v. United States*, Case No. 25-181 (W.D. Wash. Jan. 29, 2025). Even assuming the facts outlined in Eteros's brief are correct, which they are not, this is not the appropriate Court to hear immigration matters. As the jurisdictional statute, legislative history, and judicial precedent make clear, this Court is not the forum to challenge an individual's admissibility into the United States, or related proceedings.

Moreover, Eteros's assertion that the Court should invoke the All Writs Act, 28 U.S.C. § 1651(a), to "protect its judgment" in *Eteros I* should be rejected. Pl.'s Resp. Br. at 28-34. As explained in our motion to dismiss, the All Writs Act cannot overcome a court's lack of subject matter jurisdiction. *See* Def.'s Mot. to Dismiss at 13-14. "[T]he All Writs Act authorizes employment of extraordinary writs, [but] it confines the authority to the issuance of process 'in aid of' the issuing court's jurisdiction." *Clinton*

*v. Goldsmith*, 526 U.S. 529, 534 (1999) (quoting § 1651(a)).  Though Eteros acknowledges that courts may deploy the All Writs Act where "necessary and appropriate in aid of their respective jurisdictions," it fails to demonstrate that the CIT has jurisdiction over immigration matters – which it does not.  Pl.'s Resp. Br. at 29.  Eteros's entire legal theory underpinning its jurisdictional argument is that CBP has engaged in a vendetta against Eteros following the decision in *Eteros I* and that CBP's conduct has "eviscerate[d] the relief that Eteros won in *Eteros I*."  *Id.* at 32.

   As explained, however, in the over two years since the issuance of the *Eteros I* decision, Eteros's imports of cannabis paraphernalia products into Washington State have continued uninterrupted, and Eteros does not assert to the contrary ("[i]t is true that CBP … has not seized or excluded Eteros's merchandise at the border").  *Id.* at 34.  Eteros's immigration-related allegations regarding individuals hardly reflect a result that is tantamount to "evisceration" of the relief obtained in *Eteros I*; to the contrary, the Court has before it every indication that the relief granted in *Eteros I* remains in effect.  In sum, Eteros's argument that "[o]nly the CIT can provide effective relief" is incorrect and does not control the applicability of the All Writs Act to this action.  *Id.* at 33.

## **CONCLUSION**

For these reasons, we respectfully request that the Court dismiss this action for lack of subject-matter jurisdiction.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

/s/ Aimee Lee
AIMEE LEE
Assistant Director

/s/ Guy Eddon
GUY EDDON
Senior Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
(212) 264-9232 or 9230
*Attorneys for Defendant*

Of Counsel:
Alexandra Khrebtukova
Zachary Simmons
Sydney Jackson
Office of the Assistant Chief Counsel
U.S. Customs and Border Protection

Dated: July 3, 2025

15

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. GARY S. KATZMANN, JUDGE

| | | |
|---|---|---|
| | : | |
| ETEROS TECHNOLOGIES USA, INC., | : | |
| | : | |
| Plaintiff, | : | Court No. 25-00036 |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## <u>CERTIFICATE OF COMPLIANCE</u>

I, Guy Eddon, a trial attorney in the Office of the Assistant Attorney General,

Civil Division, Commercial Litigation Branch, International Trade Field Office, who is

responsible for the foregoing memorandum, relying upon the word count feature of the

word processing program used to prepare the memorandum, certify that this

memorandum complies with word count limitation under the Court's chambers

procedures, and 3,917 words.


<u>/s/ Guy Eddon</u>