Slip Op. 25-99

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **ETEROS TECHNOLOGIES USA, INC.,**<br><br>Plaintiff,<br><br>v.<br><br>**UNITED STATES,**<br><br>Defendant. | Before: Gary S. Katzmann, Judge<br>Court No. 25-00036 |

## OPINION AND ORDER

[Defendant's Motion to Dismiss is granted.]

Dated: August 6, 2025

Richard F. O'Neill, John M. Peterson, and Patrick B. Klein, Neville Peterson LLP, of Seattle, WA and New York, N.Y., for Plaintiff Eteros Technologies USA, Inc.

Guy R. Eddon, Senior Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, N.Y., for Defendant United States. With him on the brief were Brett A. Shumate, Assistant Attorney General, Civil Division, Yaakov M. Roth, Acting Assistant Attorney General, Patricia M. McCarthy, Director, Justin R. Miller, Attorney in Charge, International Trade Field Office, Aimee Lee, Assistant Director. Of Counsel on the brief Alexandra Khrebtukova and Zachary Simmons, Office of the Assistant Chief Counsel, U.S. Customs and Border Protection, of New York, N.Y.

      Katzmann, Judge:  Plaintiff Eteros Technologies USA, Inc. ("Eteros") imports equipment for the growing of marijuana into the United States. In 2022, Eteros challenged in this court, the U.S. Court of International Trade, a determination by U.S. Customs and Border Protection ("CBP") that barred Eteros's importation of components of a marijuana processing machine called the "Mobius M108S Trimmer." Eteros Techs. USA, Inc. v. United States, 46 CIT __, __, 592 F. Supp. 3d 1313, 1317 (2022) ("Eteros I"). CBP cited a federal provision that makes it unlawful "to import or export drug paraphernalia," 21 U.S.C. § 863(a)(3), and a Customs regulation that

provides that "[i]f otherwise provided by law, detained merchandise may be seized and forfeited," 19 C.F.R. § 151.16(j). The court held that CBP's exclusion of Eteros's merchandise was unlawful. This was because § 863(a)(3) does not apply to "any person authorized by local, State, or Federal law to manufacture, possess, or distribute such items," id. § 863(f)(1), and because the law of Washington State—where Eteros aimed to import the Trimmer components—authorizes the manufacture, possession, and distribution of marijuana-related items. See Eteros I, 46 CIT at __, 592 F. Supp. 3d at 1328–30. The court accordingly "direct[ed] CBP to release Eteros'[s] Subject Merchandise at the Port of Blaine, Washington." Id. at 1332. CBP did so. See Compl. ¶ 12, Jan. 29, 2025, ECF No. 2.

In this follow-on case, Eteros alleges that CBP has barred two of its executives, who are Canadian citizens residing in British Columbia, from entering the United States "in retaliation for [Eteros's] litigation success against CBP" in Eteros I. Id. ¶ 24. Eteros now asks the court to issue a declaratory judgment that (1) "the importation of cannabis-related 'drug paraphernalia' in accordance with the exception provided in 21 U.S.C. § 863(f)(1) does not per se constitute a violation of either 21 U.S.C. § 1907 or 21 U.S.C. § 841," and that (2) CBP will refrain from taking actions that contravene judicial opinions like Eteros I and internal agency rulings. Id. at 16–17. Eteros invokes the court's jurisdiction under 28 U.S.C. § 1581(i)(1)(D).

Defendant the United States ("the Government") moves to dismiss this action for lack of subject matter jurisdiction, arguing that § 1581(i)(1)(D) does not give this court jurisdiction to hear matters of this kind. See Mot. to Dismiss, May 2, 2025, ECF No. 24; see also Pl.'s Resp. in Opp'n to Mot. to Dismiss, June 6, 2025, ECF No. 25 ("Pl.'s Resp."). The court grants the Government's motion for the reasons explained in this opinion.

# BACKGROUND

## I. Factual History

The court draws the following summary of events from Eteros's factual allegations, which the court assumes to be true for the purpose of assessing jurisdiction on a motion to dismiss. See Portland Mint v. United States, 102 F.4th 1371, 1383 (Fed. Cir. 2024).

Since the court's entry of judgment in Eteros I, two Eteros executives have unsuccessfully tried to enter the United States to conduct business. One of them, Amanda James ("James"), attempted to renew her U.S. work visa in Blaine, Washington on June 11, 2024. Compl. ¶ 20. CBP denied the extension she sought "on the ground that she was engaged in illicit narcotics trafficking under 21 U.S.C. §§ 841 and 1907." Id. ¶ 21. She was further "warned that if she attempted to reenter the United States, she would be arrested and criminally prosecuted." Id. CBP also issued a notice of intent to revoke James's work visa. Third Decl. of A. James, Pl.'s Resp. at Attach. 3 ¶ 4. James has not since attempted to enter the United States. Id. ¶ 6. Eteros has filed an administrative challenge to the notice of intent; that challenge is pending before CBP. Id.

On October 4, 2024, Eteros CEO Aaron McKellar ("McKellar") attempted to drive into the United States to shop for groceries in Washington State. Compl. ¶ 23. CBP officers stopped him at the border, interrogated him, and insinuated that Eteros is engaged in unlawful narcotics trafficking. Decl. of A. McKellar, Mot. to Expedite at Attach. 2 ¶¶ 6–7, Jan. 31, 2025, ECF No. 13-2. McKellar declined to answer the officers' questions and asked to withdraw his application for entry. Id. ¶ 10. The officers denied this request, see McKellar Decl. ¶ 10, and instead issued a removal order under 8 U.S.C. § 1182(a)(7)(A)(i)(I)[1] on the ground that McKellar "refused to

---

[1] This subsection of the Immigration and Nationality Act provides that "any immigrant at the time of application for admission . . . who is not in possession of a valid unexpired immigrant visa,

answer necessary questions in order to determine [his] admissibility," Determination of Inadmissibility, Compl. at Ex. 2, 1, Oct. 4, 2024, ECF No. 2-1. CBP also revoked McKellar's membership in the NEXUS program for U.S.–Canada border crossings, McKellar Decl. ¶ 11, and denied McKellar's subsequent motion for administrative reconsideration, id. ¶ 16.

In a written decision that accompanied the denial of McKellar's motion for reconsideration, CBP explained that Eteros had "stipulated for the purpose of the litigation" in Eteros I that its imported merchandise "satisfies the federal statutory definition of 'drug paraphernalia.'" Mem. from H. Gill, Area Port Dir., Blaine, Wash., re: Request to Reconsider and Vacate ERO of A. McKellar at 2 (Nov. 12, 2024), Compl. at Ex. C, ECF No. 2-1 ("Reconsideration Denial"). CBP reasoned that although the ruling in Eteros I gave Eteros "an exemption from the importation prohibitions in . . . 21 [U.S.C. §] 863[,] . . . [t]his ruling solely addressed the import restrictions associated with marijuana drug paraphernalia" and "has no basis on the federal legality or immigration consequences pertaining to an individual's involvement in the marijuana industry by a noncitizen." Id. CBP contrasted 21 U.S.C. § 863 with 8 U.S.C. § 1182(a)(2)(ii)(C), which denies admissibility to any noncitizen who "is or has been an illicit trafficker in any controlled substance or in any listed chemical . . . or is or has been a knowing aider, abettor, assister, conspirator, or colluder with others in the illicit trafficking in any such controlled or listed substance or chemical, or endeavored to do so." Id.

Eteros and McKellar sued in the U.S. District Court for the Western District of Washington on January 29, 2025, seeking to vacate and enjoin the removal order against McKellar on the basis

---

reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document, . . . . is inadmissible." 8 U.S.C. § 1182(a)(7)(A)(i).

of alleged violations of the Administrative Procedure Act and the Due Process clause of the Fifth Amendment. See Compl. ¶¶ 37–74 and at 21–22, Eteros Techs. USA, Inc. v. United States, No. 2:25-cv-00181 (W.D. Wash. Jan. 29, 2025), ECF No. 1. The Government moved to dismiss that action for lack of subject matter jurisdiction, raising a number of statutory bars to jurisdiction. See Mot. to Dismiss, Eteros Techs. USA, Inc. v. United States, No. 2:25-cv-00181 (W.D. Wash. Apr. 21, 2025), ECF No. 19. That motion remains pending before the district court.

## II. *Procedural History*

Eteros brought this action in the U.S. Court of International Trade on January 29, 2025, the same day that it brought the Washington action. See Compl. Eteros filed a motion to expedite the scheduling of this matter, see Mot. to Expedite, Jan. 31, 2025, ECF No. 13, which the court denied, see Eteros Techs. USA, Inc. v. United States, 49 CIT __, 774 F. Supp. 3d 1358 (2025). The Government then filed the instant motion in lieu of an answer. See Mot. to Dismiss. Eteros responded, see Pl.'s Resp., and the Government filed a reply, see Def.'s Reply in Further Support of Mot. to Dismiss, July 3, 2025, ECF No. 28.

Meanwhile, in the Washington action, Eteros and McKellar stated to the district court that "[t]he current CIT action seeks declaratory relief only. It does not request the CIT to provide any relief related to any immigration decision or action taken against Eteros, Mr. McKellar, or other affected Eteros executives and employees. Such matters are not encompassed by the CIT's subject matter jurisdiction." Notice of Pendency of Other Action in Another Jurisdiction or Forum, Eteros Techs. USA, Inc. v. United States, No. 2:25-cv-00181 (W.D. Wash. Jan. 31, 2025), ECF No. 7.

## JURISDICTIONAL STANDARD

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may

Court No. 25-00036 Page 6

declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). This provision does not "grant an independent basis for jurisdiction to this [c]ourt," but rather "provide[s] for additional remedies where jurisdiction has already been confirmed by statute." PPG Indus., Inc. v. United States, 12 CIT 763, 769, 696 F. Supp. 650, 655 (1988). The relevant "statute" here is the court's grant of residual jurisdiction:

> [T]he Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for--
>
> (A) revenue from imports or tonnage;
>
> (B) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;
>
> (C) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or
>
> (D) administration and enforcement with respect to the matters referred to in subparagraphs (A) through (C) of this paragraph and subsections (a)-(h) of this section.

28 U.S.C. § 1581(i)(1). As with all provisions that place jurisdiction in the U.S. Court of International Trade, this is an exception from the general mandate that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Id. § 1331; see also K Mart Corp. v. Cartier, Inc., 485 U.S. 176, 182–83 (1988) ("The District Court would be divested of jurisdiction, however, if this action fell within one of several specific grants of exclusive jurisdiction to the Court of International Trade.").

"[T]he plaintiff . . . bears the burden of establishing that the court has subject matter jurisdiction over its claims." Gen. Mills, Inc. v. United States, 957 F.3d 1275, 1284 (Fed. Cir.

2020) (citing McNutt v. Gen. Motors Acceptance Corp. of Ind., 298 U.S. 178, 189 (1936)). "Where jurisdiction is asserted under [§] 1581(i), the court must not accept the allegations at face value but must determine the thrust of the complaint." Montgomery Ward & Co. v. Zenith Radio Corp., 673 F.2d 1254, 1261 (C.C.P.A. 1982).

## DISCUSSION

### I. The Court Lacks Subject-Matter Jurisdiction Over this Action

Eteros argues that this case "arises directly from CBP's 'administration and enforcement'" of the court's judgment in Eteros I, which was "a matter arising under 28 U.S.C. § 1581(a)." Pl.'s Resp. at 20 (quoting id. § 1581(i)(1)(D)).

This argument does not track the language of 28 U.S.C. § 1581(i)(1), which requires a plaintiff to identify a "law of the United States" out of which his action "arises." Any such law must in turn "provid[e] for" one of the items listed in subsections (A) through (D). Id. And a plaintiff that attempts to invoke subsection (D) must further show how the law "provides" for "administration and enforcement with respect to" a given matter. Id. § 1581(i)(1)(D). The implication for this case is that Eteros must explain how its action "arises out of any law of the United States providing for . . . administration and enforcement with respect to" a "civil action commenced to contest the denial of a protest." Id. § 1581(a), (i)(1).

Eteros does not provide this explanation by arguing that its action "arises directly from CBP's 'administration and enforcement' of a matter arising under 28 U.S.C. § 1581(a)—this Court's opinion and judgment in Eteros I." Pl.'s Resp. at 20 (quoting 28 U.S.C. § 1581(i)(1)(D)). It takes more than just the involvement of "administration and enforcement" to establish jurisdiction. A plaintiff's action must specifically arise from a "law of the United States providing

for" such activities. 28 U.S.C. § 1581(i)(1).² Eteros does not identify such a law, suggesting instead that "CBP's unlawful enforcement of the import laws, and misuse of its authority" is the basis of jurisdiction. Pl.'s Resp. at 23. But this reads "law of the United States providing for" out of the statute. This case presents no reason to depart from the principle "that courts should be 'reluctant to treat statutory terms as surplusage in any setting.'" Telecare Corp. v. Leavitt, 409 F.3d 1345, 1353 (Fed. Cir. 2005) (quoting Duncan v. Walker, 533 U.S. 167, 174 (2001)).

To the extent Eteros suggests that Eteros I is itself the relevant "law of the United States," see Pl's Resp. at 20, that suggestion mistakes Eteros I for the law the court applied in that case. "A judicial inquiry investigates, declares, and enforces liabilities as they stand on present or past facts and under laws supposed already to exist. That is its purpose and end." Prentis v. Atl. Coast Line Co., 211 U.S. 210, 226 (1908) (Holmes, J.). If the opinions of the court qualified as "law[s]"

---

² For example, the plaintiff in Consolidated Bearings Co. v. United States "challenge[d] the manner in which Commerce administered the final results" of an administrative review of an antidumping order by "alleg[ing] a violation of 19 U.S.C. § 1675(a)(2)(C)," which provides for an aspect of the administration and enforcement of antidumping determinations. 348 F.3d 997, 1002 (Fed. Cir. 2003). It was for that reason that jurisdiction lay under § 1581(i)(1)(D)'s predecessor provision. Contrary to Eteros's characterization of Consolidated Bearings, the U.S. Court of Appeals for the Federal Circuit ("Federal Circuit") did not confirm, let alone "emphasize[]," the general availability of jurisdiction to hear a "challenge to the manner in which an agency carries out or refuses to carry out a trade determination." Pl.'s Resp. at 22 (emphasis omitted).

Similarly, in Conoco, Inc. v. United States Foreign-Trade Zones Board, the Federal Circuit identified a provision for "administration and enforcement" in the "administrative conditions placed on the grant [of foreign subzone status] to appellants." 18 F.3d 1581, 1588 (Fed. Cir. 1994). See also Shinyei Corp. of Am. v. United States, 355 F.3d 1297, 1306 (Fed. Cir. 2004) (finding jurisdiction under § 1581(i)(1)(D)'s predecessor provision where the plaintiff alleged noncompliance with 19 U.S.C. § 1675(a)(2)(C)'s requirement that liquidation instructions "correctly reflect the final administrative review determination so that the determination is the basis for the assessment at liquidation"); Schaper Mfg. Co. v. Regan, 5 CIT 266, 270, 566 F. Supp. 894, 898 (1983) ("Clearly, the provisions of 19 C.F.R. § 133.43 are an integral part of the 'administration and enforcement' of laws and regulations required in connection with the raising of 'revenue from imports' . . . .").

Court No. 25-00036												Page 9

under the meaning of § 1581(i)(1), subsection (D) would confer jurisdiction to hear all follow-on litigation from any case brought under § 1581, regardless of its subject matter. Section 1581(i)'s scope would cease to be "strictly limited" under such a reading. Norcal/Crosetti Foods, Inc. v. United States, 963 F.2d 356, 359 (Fed. Cir. 1992). It is not unusual, after all, that a person will want the court to expound on the exact scope of a prior ruling. Cf. Moore v. Cent. R.R. Co. of N.J., 185 F.2d 369, 371 (2d Cir. 1950) (Frank, J.) (explaining that the district court "did not have jurisdiction under [28 U.S.C. § 1331] simply because the defendant's assumption of liability grew out of an order of the federal court" because "[o]therwise there would be federal jurisdiction of every kind of liability stemming from that order, regardless of the origin or character of the liability").

Eteros also does not explain how this action involves "administration and enforcement with respect to" a "matter[] referred to in" § 1581(a). Eteros alleges that CBP has undertaken "unlawful and retaliatory conduct" against it by "issuing an expedited removal order, denying visas, revoking NEXUS memberships, and threatening criminal prosecution." Compl. ¶¶ 1, 53. These allegations pertain to CBP's actions with respect to the entry of Eteros's executives into the United States. Wrongful or not, they do not pertain to "the denial of a protest" as to "the exclusion of merchandise from entry." 28 U.S.C. § 1581(a); 19 U.S.C. § 1514(a)(4) (emphasis added). The Supreme Court's reasoning in K Mart applies here: "Since this suit involves no 'protest,' much less a denial of one, it cannot by any stretch of the imagination involve a 'law . . . providing for . . . administration and enforcement' of a protest." 485 U.S. at 190–91 (quoting 28 U.S.C. § 1581(i)(1)(D)). Customs law, at best, is "lurking in the background" of this action. Gully v. First Nat. Bank, 299 U.S. 109, 117 (1936).

The unavailability of jurisdiction in this court does not necessarily mean that Eteros cannot invoke the jurisdiction of another court in an attempt to "extinguish the legal theory underlying CBP's baseless and retaliatory actions." Pl.'s Resp. at 23. If Eteros is correct that this court's ruling in Eteros I renders CBP's alleged actions ultra vires, then that is a legal conclusion that any court with jurisdiction will be competent to reach in the context of a direct challenge to CBP's alleged actions. The U.S. Court of International Trade does not hoard its prior rulings for private use. Eteros I, as a public decision of a United States court, is free to be cited in any forum for whatever authority it may impart in a given case.

## II. This Is Not an Opportunity to Reopen Eteros I

In the alternative, Eteros requests that the court construe this action as a motion to enforce the judgment in a reopened Eteros I. See Pl.'s Resp. at 36. Such a course of action is not unheard-of. "[A]ncillary jurisdiction" is sometimes available "to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 379–80 (1994). But here, Eteros does not establish its entitlement to post-judgment relief.

"The court will grant a motion to enforce a judgment 'when a prevailing plaintiff demonstrates that a defendant has not complied with a judgment entered against it, even if the noncompliance was due to misinterpretation of the judgment.'" GPX Int'l Tire Corp. v. United States, 39 CIT 582, 587–88, 70 F. Supp. 3d 1266, 1272 (2015) (quoting Heartland Hosp. v. Thompson, 328 F. Supp. 2d 8, 11 (D.D.C. 2004)). Eteros does not make this showing. In Eteros I the court "direct[ed] CBP to release Eteros' Subject Merchandise at the Port of Blaine, Washington." 46 CIT at __, 592 F. Supp. 3d at 1332. Eteros does not now allege that CBP failed to comply with this specific directive. Its Complaint instead stipulates that "CBP complied with

Court No. 25-00036                                    Page 11

this Court's judgment order and released Eteros' merchandise for entry into U.S. commerce." Compl. ¶ 12. This action, which all parties agree took place, fully effectuated the Eteros I judgment. Even if the court may sometimes "retain[] jurisdiction to enforce the judgments it enters," Pl.'s Resp. at 29, nothing remains here for the court to enforce.[3]

## CONCLUSION

As the court lacks subject matter jurisdiction to hear this case, it is hereby

**ORDERED** that Defendant's Motion to Dismiss, May 2, 2025, ECF No. 24, is **GRANTED**; and it is further

**ORDERED** that this action is dismissed.

/s/ _Gary S. Katzmann_
Gary S. Katzmann, Judge

Dated: August 6, 2025
New York, New York

---

[3] This means that the All Writs Act does not empower the court to "issue all writs necessary or appropriate in aid of its jurisdiction" in Eteros I. 28 U.S.C. § 1651(a); see Compl. ¶¶ 59–64. The court cannot act "in aid of" jurisdiction that it no longer has.